UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY,
MARK E. LAETHEM and
MICHAEL T. LAETHEM ,

                                        CASE NO. 05-CV-10113-BC
           Plaintiffs,           JUDGE DAVID M. LAWSON
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DEERE AND COMPANY,

           Defendant,

_____/

## OPINION AND ORDER GRANTING
## PLAINTIFFS' MOTION TO COMPEL DOCUMENTS FROM CURRIE KENDALL
## (Doc. Ent. 75)

I.    OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Background and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Plaintiffs' Motion to Compel Documents from Currie Kendall . . . . . . . . . . . 3
    C.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    Basically, Currie Kendall objects to the subpoena on the bases of
               privilege, relevance, and improper purpose. . . . . . . . . . . . . . . . . . . . 12
          2.    Currie Kendall has not provided a Rule 45(d)(2)(A) privilege log. . . 14
          3.    Request No. 1: Documents relating to the sale of Gettel & Co.
               exchanged between Currie Kendall and J&D and Currie Kendall and
               Deere. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          4.    Request No. 2: Invoices and billing records . . . . . . . . . . . . . . . . . . . 21
          5.    Deere's objections to plaintiffs' subpoena for documents from Currie
               Kendall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I.     OPINION

## A.     Background and Procedural History

On April 19, 2005, plaintiffs Laethem Equipment Company (LEC), Laethem Farm Service Company (LFSC), Mark E. Laethem and Michael T. Laethem (hereinafter plaintiffs) filed a complaint against defendant Deere and Company.  Plaintiffs' claims include (I) breach of Michigan's Farm and Utility Equipment Act; (II) breach of contract; (III and IV) tortious interference with business relationships; (V) violation of Michigan's Uniform Trade Secrets Act; (VI) aiding and abetting violation of fiduciary duty and (VII) violation of Michigan's Franchise Investment Law [MFIL].  On May 10, 2005, defendant filed its answer.

On August 14, 2007, Judge Lawson entered an opinion and order denying defendant's first and second motions for summary judgment.  Doc. Ent. 163.  In his ruling on the first motion for summary judgment (Doc. Ent. 163 at 14-31), Judge Lawson stated with respect to the tortious interference claims that certain evidence "permits an inference that Deere improperly sought to terminate the franchise with LEC and LFSC and move those companies' customers to a competitor and consolidate its own dealership network[,]" and that "a factual dispute exists . . . on the question whether the defendant improperly interfered with the relationship of Mark and Michael with the family businesses so that Deere could pursue its own interests."  Doc. Ent. 163 at 26-27.

In his ruling on the second motion for summary judgment, Judge Lawson concluded that (A) "[b]ecause there is evidence that Mark and Michael did buy all the family businesses from the family trust in 1994, summary judgment cannot be granted to the defendant based on the defendant's allegation that they misrepresented ownership[,]" (B) "the state court release does

not bar the present action[,]" and (C) "[b]ecause there are factual disputes over Kathryn's authority to execute the Asset Purchase agreement on behalf of LEC, the defendant's argument must be rejected." Doc. Ent. 163 at 31-35.

**B.      Plaintiffs' Motion to Compel Documents from Currie Kendall**

According to plaintiffs, "discovery is showing that . . . this takeover of the dominant market position in the Thumb was something that was put together by Mr. Bormann [a Deere executive] and Mr. [Jeff] Mitchell, and it included the Gettel sale and it included the [LEC] sale." Doc. Ent. 112 at 9. The law firm of Currie Kendall handled the February 2003 sale of LEC and LFSC to Mitchell and the March /April 2003 sale of Gettel Company to Mitchell. Doc. Ent. 112 at 8.

On or about February 17, 2006, plaintiffs served non-party Currie Kendall with a document production request. Doc. Ent. 75-11 at 1. Specifically, plaintiffs seek:

1.      All documents related to the sale of Gettel & Co., or its assets, to J & D Implement, Inc. JD Equipment, Inc. and/or any other entity owned in whole or in part by Jeff Mitchell (hereinafter collectively, J & D) that were *exchanged between any representative of Currie Kendall PLC*, or any representative of Currie Kendall's predecessor, Currie, Kendall, Polasky, Meisel, PLC, including but not limited to, Michael Allen, Peter Jensen and/or Amber Davis-Johnson, (hereinafter, collectively, Currie Kendall), *on one hand, and representatives of J & D, on the other hand* together with all documents *exchanged between Currie Kendall, on one hand, and Deere & Co., on the other hand*.

2.      All invoices or other billing records from Currie Kendall that identify the date(s) that Currie Kendall provided services to Gettel & Co. for services rendered by Currie Kendall between January 1, 2001 and December 31, 2003. Such records may be redacted to exclude any information that is properly classified as protected by the attorney-client privilege.

Doc. Ent. 75-11 at 3 (emphasis added). The subpoena requested that the discovery be delivered by March 10, 2006, at 10 a.m. Doc. Ent. 75-11 at 1.

On or about March 7, 2006, Currie Kendall submitted objections to the notice of taking deposition for documents only to Currie Kendall, PLC by plaintiffs and counsel. Doc. Ent. 75-12 at 1-5. Currie Kendall contends that the subpoena was "presented without any waiver or agreement by Gettel & Co. or its successor in interest to waive any attorney/client or work product privilege that existed between Gettel & Co. and Currie Kendall." Doc. Ent. 75-12 at 2 ¶ 1. Also, Currie Kendall contends that the subpoena is an attempt at "harassment, annoyance, oppression, undue burden and expense[.]" Doc. Ent. 75-12 at 2-4 ¶¶ 2-4.[1]

On March 9, 2006, counsel for J & D Implement (Robert D. Goldstein of Garan Lucow and Miller P.C.) wrote to attorney Peter A. Poznak (Currie Kendall PLC) to register J & D Implement's objections to the notice and subpoena. Doc. Ent. 52-6. On March 16, 2006, Deere filed a concurrence with Currie Kendall's objections to notice of taking deposition for documents only to Currie Kendall, PLC by plaintiffs and counsel. Doc. Ent. 52. On March 27, 2006, plaintiffs' counsel deposed Kent Gettel, the owner of Gettel & Company. Doc. Ent. 90-1 at 5; Doc. Ent. 112 at 17, 21.

On April 24, 2006, plaintiffs filed a motion to compel documents from Currie Kendall. Doc. Ent. 75. Specifically, plaintiffs argue that (A) "[p]laintiffs have not requested any documents subject to the attorney-client privilege[,]" and (B) "[p]laintiffs' subpoena is proper

---

[1]Exhibits to the objections included (A) the February 1, 2006 opinion and order in *LEC v. Currie Kendall P.L.C.*, Case No. 05-55440-NM-3, Saginaw County Circuit Court (Doc. Ent. 90-4); (B & C) Currie Kendall's two March 21, 2005 motions for summary disposition (Doc. Entries 90-5 and 90-6); (D) Currie Kendall's March 21, 2005 motion for partial summary disposition as to certain of LEC and LFSC's claims (Doc. Ent. 90-7), as well as (E) the September 21, 2005 opinion and order granting J&D Implement Inc.'s motion for summary disposition in *LEC v. J & D Implement, Inc.*, Case No. 05-22863-CK, Tuscola County Circuit Court (Doc. Ent. 90-8) and (F) the October 31, 2005 opinion and order denying plaintiff's motion for reconsideration (Doc. Ent. 90-9).

and within the scope of discovery." Doc. Ent. 75-1 at 11-12.[2] Judge Lawson has referred this

motion to me for hearing and determination. Doc. Ent. 81.

On May 8, 2006, defendant filed a response in which it argued that "[t]he documents

requested by subpoena are privileged and not discoverable[,]" and "[a]ny produced documents

should be protected from plaintiffs." Doc. Ent. 86 at 15-16.[3] On May 10, 2006, Currie Kendall

filed a response. Doc. Ent. 90. It claims that "[t]he discovery sought by Plaintiffs in their

Motion to Compel is subject to the attorney-client privilege and/or work product privilege, and

Plaintiffs have failed to establish substantial need and undue hardship in obtaining the requested

materials by other means." Doc. Ent. 90-1 at 12 (citing Fed. R. Civ. P. 26(b)(3)). *See also* Doc.

Ent. 90-1 at 6. According to Currie Kendall, "[t]he discovery sought is certainly obtainable from

some other less burdensome, more convenient and less expensive source, namely Deere &

Company, who is a party to the litigation, except perhaps as to the billing invoices of Currie

Kendall." Doc. Ent. 90-1 at 12-13.[4]

On May 18, 2006, plaintiffs filed a reply to defendants' response, to which they attach a

copy of a February 28, 2003, Asset Purchase Agreement listing $50,000 as the purchase price.

---

[2]Aside from the aforementioned subpoena and objections, the attachments to plaintiffs' motion include copies of a January 26, 1994 letter from W. A. Baker/R. L. Carton to Columbus Branch Management regarding the Laethem Organization (Doc. Ent. 75-3) as well as copies of testimony from seven (Monk, Bormann, Anderson, Gettel, Porter, Donahue and Vasold) depositions (Doc. Entries 75-4 - 75-10).

[3]Attached to defendant's response is a copy of portions of the April 19, 2006, deposition of Terry L. Porter. Doc. Ent. 86-2.

[4]In addition to Currie Kendall's objection (Doc. Ent. 90-3) and the exhibits to the objection (Doc. Entries 90-4 - 90-9), the attachments to the response include the Gettel deposition transcript (Doc. Ent. 90-10) and reference to the "CONFIDENTIAL - COURT ONLY" documents (Doc. Ent. 90-11) discussed below.

Doc. Entries 93, 93-4 at 4. Plaintiffs argue that (A) "[d]ocuments related to the sale of business assets or billing records are not protected under work-product doctrine[,]" and (B) "[t]he documents do not contain competitive information." Doc. Ent. 93 at 7-8.[5]

On May 22, 2006, plaintiffs filed a reply to Currie Kendall's response in which they argue that (A) "[d]ocuments related to the sale of business assets or billing records are not protected under work-product doctrine[,]" (B) "[d]ocuments related to the sale of business assets or billing records are not protected under attorney-client privilege[,]" (C) "[t]he documents requested are relevant to the issues presented in this lawsuit; the request is not overly burdensome; nor has it been posed for an improper purpose[,]" and (D) "Currie Kendall's and Deere's diatribes against plaintiffs [are] untrue and wholly irrelevant to the determination of whether Currie Kendall's documents should be produced." Doc. Ent. 94 at 4-8.[6]

On June 2, 2006, defendant filed a sur-reply.[7] Doc. Ent. 101. The hearing on this motion was originally scheduled for June 7, 2006. Doc. Ent. 89. However, it was rescheduled for June 14, 2006. On that date, attorneys Ann L. Andrews (plaintiffs' counsel), John W. Allen (defense

---

[5]The attachments to this reply include excerpts of the Porter depositions, as well as excerpts of the depositions of Allen, Donohue, Gettel, Anderson and Monk. Doc. Entries 93-3, 93-5, 93-7, 93-8, 93-9, 93-10 and 93-12. Also attached are a copy of the February 28, 2003, Asset Purchase Agreement between buyer J & D Implement, Inc. (signed by Mitchell) and seller LEC (signed by Kathryn M. Laethem) (Doc. Ent. 93-4); Currie Kendall's billing statement for LEC (Doc. Ent. 93-6); and a copy of a December 26, 2002 letter from attorney Allen of Currie Kendall to Ron Carton of Deere regarding Francis Laethem (Doc. Ent. 93-11). Exhibit 11 to this filing was filed under seal on May 22, 2006. Doc. Entries 93-13, 95.

[6]The attachments to this reply include a timeline (Doc. Ent. 94-3) and a portion of Michael Laethem's deposition testimony (Doc. Ent. 94-4).

[7]Leave to file this sur-reply was sought by motion (Doc. Ent. 100) and was granted on July 27, 2007 (Doc. Ent. 160).

6

counsel) and Mark Shreve (counsel for Currie Kendall) appeared for a hearing on several

motions.  A transcript of this hearing has been filed with the Court.  Doc. Ent. 112 at 5-47.

**C.     Applicable Law**

**1.**     Of particular relevance to the instant motion are two Federal Rules of Civil Procedure -

Rules 26 and 45.  Fed. R. Civ. P. 26(b), which governs the scope and limits of discovery,

provides in part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant
> to the claim or defense of any party, including the existence, description, nature,
> custody, condition, and location of any books, documents, or other tangible things
> and the identity and location of persons having knowledge of any discoverable
> matter.  For good cause, the court may order discovery of any matter relevant to
> the subject matter involved in the action.  Relevant information need not be
> admissible at the trial if the discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is subject to the limitations
> imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1).  Rule 26(b) further provides in part:

> The frequency or extent of use of the discovery methods otherwise permitted
> under these rules and by any local rule shall be limited by the court if it
> determines that: (i) the discovery sought is unreasonably cumulative or
> duplicative, or is obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has had ample
> opportunity by discovery in the action to obtain the information sought; or (iii)
> the burden or expense of the proposed discovery outweighs its likely benefit,
> taking into account the needs of the case, the amount in controversy, the parties'
> resources, the importance of the issues at stake in the litigation, and the
> importance of the proposed discovery in resolving the issues. The court may act
> upon its own initiative after reasonable notice or pursuant to a motion under Rule
> 26(c).

Fed. R. Civ. P. 26(b)(2)(C).

Also, Fed. R. Civ. P. 26(c), which concerns protective orders, provides that "[u]pon

motion by a party or by the person from whom discovery is sought, . . . and for good cause

shown, the court . . . may make any order which justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way[.]" Fed. R. Civ. P. 26(c)(7). "To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325-326 (10th Cir. 1981) (footnotes and citations omitted).

**2.**     Fed. R. Civ. P. 45 governs subpoenas. As an initial matter, "[t]he reach of a subpoena issued pursuant to Fed.R.Civ.P. 45 is subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1)." *Syposs v. United States*, 181 F. R. D. 224, 226 (W. D. N. Y. 1998) (citing cases). *See also Laborers Pension Trust Fund-Detroit and Vicinity v. CRS Poured Concrete Walls, Inc.*, No. 04-CV-74714-DT, 2006 WL 3804912, *3 (E. D. Mich. Dec. 22, 2006) (Komives, M. J.) (quoting *Syposs*, 181 F.R.D. at 226).

Fed. R. Civ. P. 45(c) addresses the protection of persons subject to subpoenas. In part, this rule provides:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this

duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1).  An order to compel production "shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded."  Rule 45(c)(2)(B).

Rule 45(c)(3)(A) sets forth ways in which the Court may quash or modify the subpoena. In pertinent part it provides, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies, or . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).  "Clause (c)(3)(A)(iv) requires the court to protect all persons from undue burden imposed by the use of the subpoena power."  *Builders Association of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 552 (N. D. Ill. 2003).

Furthermore, "[i]f a subpoena . . . requires disclosure of a trade secret or other confidential research, development, or commercial information, . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions."  Fed. R. Civ. P. 45(c)(3)(B)(i).

Also, with regard to responding to a subpoena, Rule 45 provides in part that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not

produced that is sufficient to enable the demanding party to contest the claim."  Fed. R. Civ. P. 45(d)(2)(A).

**3.**     Also of relevance to the instant motion are two oft-raised bases for objections to requests for information - the attorney-client privilege and the work-product doctrine.  "The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents.  The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice.  Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication."  *Leibel v. General Motors Corp.*, 250 Mich.App. 229, 236, 646 N.W.2d 179, 183 (2002) (citing *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich.App. 614, 618-619, 576 N.W.2d 709 (1998)).  "[C]lients and their agents must disclose on request any relevant fact within their knowledge even if it incorporated a statement of that fact into a communication to the attorney."  *Reed Dairy Farm*, 227 Mich.App. at 619-620, 576 N.W.2d at 712 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981)).  "The burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it."  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

"The attorney-client privilege is waived if the confidential communication has been disclosed to a third party, unless made to attorneys for co-parties in order to further a joint or common interest (known as the common interest rule or the joint defense privilege)[.]"  *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 711-712 (5th Cir. 2001) (citations omitted).  "The

attorney-client privilege is personal to the client, and only the client can waive it." *Leibel*, 250

Mich.App. at 240 (citing *Ravary v. Reed*, 163 Mich.App. 447, 453, 415 N.W.2d 240 (1987)).

**4.**     Fed. R. Civ. P. 26(b)(3) governs the scope and limits of discovery as it relates to trial

preparation materials:

> **(3) Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4)
> of this rule, a party may obtain discovery of documents and tangible things
> otherwise discoverable under subdivision (b)(1) of this rule and prepared in
> anticipation of litigation or for trial by or for another party or by or for that other
> party's representative (including the other party's attorney, consultant, surety,
> indemnitor, insurer, or agent) only upon a showing that the party seeking
> discovery has substantial need of the materials in the preparation of the party's
> case and that the party is unable without undue hardship to obtain the substantial
> equivalent of the materials by other means. In ordering discovery of such
> materials when the required showing has been made, the court shall protect
> against disclosure of the mental impressions, conclusions, opinions, or legal
> theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

"[T]he work-product doctrine is distinct from and broader than the attorney-client

privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  It includes "any document

prepared in anticipation of litigation by or for the attorney." *In re Columbia/HCA Healthcare

Corp. Billing Practices Litigation*, 293 F.3d 289, 304 (6th Cir. 2002) (citation and quotation

marks omitted).  "The doctrine is designed to allow an attorney to 'assemble information, sift

what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan

his strategy without undue and needless interference ... to promote justice and to protect [his]

clients' interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d

at 294 (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

"'[T]he standard for waiving the work-product doctrine should be no more stringent than

the standard for waiving the attorney-client privilege'-once the privilege is waived, waiver is

complete and final." *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293

F.3d 289, 307 (6th Cir. 2002) (citing *Westinghouse Electric Corporation v. Republic of*

*Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991)) (internal footnote omitted).

**D.    Analysis**

**1.    Basically, Currie Kendall objects to the subpoena on the bases of privilege, relevance, and improper purpose.**

**a.**    Relying upon Federal Rules of Civil Procedure 26(b)(1) and 45, plaintiffs argue that

Currie Kendall should be required "to produce non-privileged documents related to the sale

between the Gettel dealerships and Mitchell's dealership, when the Gettel sale is part and parcel

of Deere's plan to install Mitchell as the dominant dealer within the Michigan's thumb[.]" Doc.

Ent. 75-1 at 4-5; Doc. Ent. 94 at 2-3.  With respect to the propriety and scope of their subpoena,

plaintiffs claim the information requested is obviously relevant and argue that they "have a right

to know the details of the plan that Deere concocted to run them out of business.  It is obvious

that the sale of the Gettels' dealerships were a part of that plan."  Doc. Ent. 75-1 at 11-12.

Currie Kendall contends that Gettel's March 27, 2006 deposition "established that there

was absolutely nothing that had any relevance to the *Laethem v Deere* action[,]" and confirmed

that "Gettel & Company did not even consider selling its business until the end of March or

perhaps early April of 2003."  Doc. Ent. 90-1 at 5, 7.  Currie Kendall argues that plaintiffs'

subpoena is a "backdoor attempt[] at improper discovery and harassment against Currie Kendall,

where Plaintiffs have been precluded discovery in the Circuit Court for the County of Saginaw

by way of the Court's [February 1, 2006] granting of defendant Currie Kendall's motion for

summary disposition."  Doc. Ent. 90-1 at 5-6; Doc. Ent. 112 at 21.  Currie Kendall argues that

the subpoena requests are not narrowly drawn.  Doc. Ent. 90-1 at 6.

Plaintiffs reply that "the documents requested are relevant to the circumstances under which Plaintiff [LEC's] and Plaintiff [LFSC's] assets were sold to Jeff Mitchell." Plaintiffs also state that "the LEC & LFSC/Mitchell sale was intertwined with the sale of Gettel & Co.'s (Gettel's) assets to Mitchell." With respect to Currie Kendall's assertion of the work-product doctrine, plaintiffs contend that "[n]one of the requested documents were 'prepared in anticipation of litigation.'" Plaintiffs claim that, to the extent Currie Kendall contends the requested documents fall under Rule 45(b), the law firm should have provided a privilege log as set forth in Rule 45(d)(2)(A). Doc. Ent. 94 at 4. With respect to Currie Kendall's assertion of the attorney-client privilege, plaintiffs again note the absence of a privilege log. Doc. Ent. 94 at 5. With respect to the relevance of the requested documents, plaintiffs allege in part that on January 15, 2003, (1) Deere representatives advised the Gettels in person that they should sell to Mitchell; (2) Deere representatives met with Kathryn Laethem to plan a takeover of LEC; (3) Deere entered LEC headquarters and told Mark and Michael Laethem that Deere "would no longer do business with them[,]" and (4) the Laethem brothers' employment was terminated. Doc. Ent. 94 at 6, 94-3 at 3. Plaintiffs argue that "the two sales are intertwined and relevant to one another." As to Currie Kendall's assertion that the requests are burdensome or posed for an unlawful purpose, plaintiffs state that "[i]t does not appear that the number of responsive documents are particularly voluminous[,]" and "given the intertwined nature of the Gettels/Mitchell sale and LEC & LFSC/Mitchell sale, it is apparent that Plaintiffs have not imposed the request for some personal vendetta against Currie Kendall." Doc. Ent. 94 at 7.

**b.** During the hearing, plaintiffs claimed that the documents they request "are clearly related to the ascendancy of Mitchell into the Thumb of Michigan." Doc. Ent. 112 at 12. Counsel for

Currie Kendall argued that the subpoena is based upon plaintiffs' incorrect characterization of Gettel's deposition testimony regarding the sale, as exemplified in pages one through four of plaintiffs' brief. Doc. Ent. 112 at 18-19. Counsel for Currie Kendall requested that any information ordered to be produced not be publicly disclosed. Doc. Ent. 112 at 27. Although he thought the requested information was irrelevant, he would produce the information subject to certain restrictions, such as redaction of financial information, notice to J&D Implement, and prevention from public disclosure. Doc. Ent. 112 at 27-28.

**2.  Currie Kendall has not provided a Rule 45(d)(2)(A) privilege log.**

As an initial matter, the Court notes that in neither its March 7, 2006 objections (Doc. Ent. 75-12) nor its May 10, 2006 motion response (Doc. Ent. 90) has Currie Kendall provided a privilege log as discussed in Fed. R. Civ. P. 45(d)(2)(A). During the hearing, plaintiffs noted the absence of a privilege log. Doc. Ent. 112 at 14-15. If Currie Kendall is invoking privilege as a defense to production of these documents, plaintiffs request a Rule 45(d)(2)(A) privilege log. Doc. Ent. 112 at 15.

The Court has examined the materials supplied by Currie Kendall. Given the absence of a privilege log and in accordance with Rule 45(d)(2)(A), the Court offers the following descriptions of the documents submitted in confidence to the Court:

> **(A)** an April 15, 2003, three-page e-mail from Mary Brenning (of Kegler Brown - the firm which represented Mitchell and his businesses [Doc. Ent. 112 at 33]) to Mike Allen (of Currie Kendall) with the initial document information request for the J&D / Gettel Transaction;
> **(B)** a April 29, 2003, three-page facsimile from Deborah R. Mocny, CLA, of Currie Kendall to Brenning with responses to document information request Nos. 1 and 2;
> **(C)** a one-page May 2, 2003, letter from Mocny to Brenning, to which was attached a six-page search request on Gettel & Co. - Bad Axe from the Michigan Department of State Uniform Commercial Code Section dated May 1, 2003;

(**D**) an e-mail from Brenning to Allen regarding J & D / Gettel dated May 13, 2003;
(**E**) a three-page facsimile from Currie Kendall to Brenning including a copy of Mich. Comp. Laws § 205.27a;
(**F**) a four-page memorandum from Brenning to Allen dated May 8, 2003 regarding the J & D Implement / Gettel & Company Asset Purchase Agreement;
(**G**) a May 15, 2003 one-page e-mail from John Thomas (Kegler Brown) to Allen (Currie Kendall), to which is attached Kegler Brown's unsigned, purported May 30, 2003 four-page "legal opinion [to Gettel & Co.] as required by the Asset Purchase Agreement[;]"
(**H**) a 47-page "Asset Purchase Agreement" dated June 12, 2003 and signed by buyer Mitchell (President J&D Implement, Inc.), shareholders Kent A. Gettel and Mark H. Gettel, and the representative of sellers Gettel & Company - Bad Axe and Gettel & Company - Sebewaing; and
(**I**) eight pages of statements for professional services rendered from Currie Kendall to Gettel Implements for the period spanning April 9, 2003 - September 12, 2003.

Doc. Ent. 90-11.

Counsel for Currie Kendall argues that nothing should be produced. However, he argued that "if anything should be produced . . . it should be limited to [those documents in the package] with certain other items." Doc. Ent. 112 at 16.

Although the Court appreciates Currie Kendall's efforts in submitting to the Court for in camera review those documents which it believes to be arguably responsive to the subpoena, the following sections of this opinion define the scope of the documents Currie Kendall will be required to produce.

**3.     Request No. 1: Documents relating to the sale of Gettel & Co. exchanged between Currie Kendall and J&D and Currie Kendall and Deere.**

**a.**     With regard to Request No. 1, plaintiffs contend that "Currie Kendall did not represent Mitchell and J & D in the sale transaction. As such, any documents exchanged between Currie Kendall and Mitchell could not be subject to the attorney-client privilege. Likewise, Currie

Kendall did not represent Deere.  Accordingly any documents exchanged between Currie Kendall and Deere are not subject to the attorney-client privilege." Doc. Ent. 75-1 at 11.

Both Currie Kendall and Gettel & Co. are non-parties to this action.  After discussing LEC's Saginaw County case against Currie Kendall and LEC's Tuscola County case against J & D Implement, Inc., Currie Kendall claims that plaintiffs have had the opportunity to obtain the documents sought by Request No. 1 "from not only J & D Implement, but also Deere & Co., should there be any documents." Doc. Ent. 90-1 at 2-5.  Currie Kendall states that it "may have, in its representative capacity on behalf of its client, exchanged documents with J & D Implement and Deere & Company as it relates to the sale of Gettel & Company to J & D Implement." Doc. Ent. 90-1 at 6.  However, citing Fed. R. Civ. P. 26(b)(2)(C)(i), Currie Kendall argues that "a request for documents relating to Deere & Company is more appropriately and more readily available through a discovery request to Deere & Company as a party to Plaintiffs' present action, as opposed to an improper attempt to try and develop a cause of action against Currie Kendall that has already been dismissed in the State Court." Doc. Ent. 90-1 at 6-7.  Currie Kendall contends that "[a]s it relates to Gettel & Company, the only relevant, unprivileged document would be the purchase agreement between Gettel & Company and J & D Implement[.]" Doc. Ent. 90-1 at 9-10.

In reply, plaintiffs contend that Request No. 1 "is restricted to documents exchanged between Currie Kendall and Mitchell and Currie Kendall and Deere.  Currie Kendall does not – and cannot – claim that it has ever represented Mitchell or Deere." Doc. Ent. 94 at 5.

**b.**     During the hearing, plaintiffs counsel stated that Request No. 1 was limited "to information that was exchanged between the Gettels and Deere related to the sale, information

that was exchanged between the Gettels and Mitchell that were related to the sale." Doc. Ent. 112 at 9. According to plaintiffs, Currie Kendall only represented the Gettels - not Deere and not Mitchell. Therefore, they argue, "anything that was exchanged between those parties would not be privileged." Doc. Ent. 112 at 10. Plaintiffs' counsel argued that "[d]ocuments surrounding a sale are not prepared in anticipation of litigation." Doc. Ent. 112 at 11. As to Currie Kendall's offer to produce the sale document with the prices redacted, plaintiffs' counsel wants to compare Mitchell's payment of $50,000 for an $17 million ongoing business with "a concomitant sale that was structured at approximately the same time[.]" Doc. Ent. 112 at 12-13.

Counsel for Currie Kendall contended that the Gettel transaction is entirely collateral to the instant lawsuit. Doc. Ent. 112 at 16, 25. Currie Kendall's counsel also stated that "in the very document that I provided to you, the transaction between Gettel and J&D Implement, there is a confidentiality provision that [Currie Kendall] must honor as being part of that transaction[,]" as must Gettel and J&D. Doc. Ent. 112 at 20. At the hearing, counsel for Currie Kendall reasserted his willingness to produce the "Asset Purchase Agreement," closed in June 2003, with the financial transactions redacted. Doc. Ent. 112 at 23-24. Counsel also mentioned that it would have an obligation to J & D, pursuant to the "Asset Purchase Agreement," to notify it of any such disclosure. Doc. Ent. 112 at 24. Also, counsel for Currie Kendall thought disclosure of the purchase price was irrelevant, because there are other factors to consider, such as debt, accounts receivable, etc., when comparing the sales of two businesses. Doc. Ent. 112 at 24-25. Counsel specifically requested that if Currie Kendall is ordered to provide this document 'the finances of the Gettel transaction be excised[,]" and that "appropriate notification then is

given to J&D Implement so that they have a right to step in and assert their contractual privilege in regard to their rights under the transaction."  Doc. Ent. 112 at 27.

On rebuttal, plaintiffs' counsel pointed out that the February 1, 2006, Saginaw County Circuit Court opinion and order was based in part on a conclusion that "the facts alleged in Plaintiffs' Complaint . . . present[ed] a case exclusively within the jurisdiction of the Probate Court."  Doc. Ent. 112 at 37; Doc. Ent. 90-4 at 9.  Plaintiffs' counsel further stated that she was not aware of the timing.  Doc. Ent. 112 at 37.  Relying upon Gettel's deposition testimony, it is plaintiffs' position that "the Gettel transaction did not begin in April or March."  In so doing, plaintiffs' counsel specifically mentioned Thanksgiving 2002 and January 15, 2003.  Doc. Ent. 112 at 38-39.  Relying upon Porter's representation, plaintiffs claim that "Mitchell said he didn't want to buy the Gettel's unless he got [LEC] and [LFSC]."  Doc. Ent. 112 at 39.  It is plaintiffs' position that Currie Kendall's argument that the price of the Gettel & Co. sale is irrelevant to the instant case "goes to the weight and not the admissibility, and certainly not the discoverability."  Doc. Ent. 112 at 40.  Plaintiffs contend that, if the Gettels got a better deal, it "would support [plaintiffs'] contention that what was going on here was a sham transaction."  According to plaintiffs, "[i]t was a made-up deal concocted by Deere because of a very cozy relationship between Mr. Bormann and Mr. Mitchell."  Doc. Ent. 112 at 41.

**c.**     I conclude that the documents responsive to Request No. 1 are discoverable and should be disclosed to plaintiffs.  In addition to the Thanksgiving 2002 and January 15, 2003 dates mentioned above, plaintiffs have offered (in reply to Deere's brief), a copy of a December 26, 2002 letter from attorney Allen (Currie Kendall) to Ron Carton (Deere) regarding Francis Laethem (Doc. Ent. 93-11) by which Allen sought Carton's confidential assistance "in seeking a

buyer for the dealerships and related real estate." Doc. Ent. 93-11. Although counsel for Currie Kendall considers the Gettel & Co. sale "collateral" to the instant case, the documents sought by No. 1 are relevant under Rule 26 to the "inference that Deere improperly sought to terminate the franchise with LEC and LFSC and move those companies' customers to a competitor and consolidate its own dealership network." Doc. Ent. 163 at 26 (Lawson, J., SJ Order 8/14/2007).

To the extent Currie Kendall asserts that this request should have been posed to J & D and/or Deere pursuant to Rule 26(b)(2)(C)(i), I am not convinced that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

**d.**     I have examined the aforementioned documents (A) - (G) which purport to respond to the subpoena's Request No. 1. Having examined these documents, I conclude that, even assuming they were privileged, any such privilege has been waived by virtue of the exchange between counsel (here, Currie Kendall for Gettel & Co.) and non-clients (here, the law firm of Kegler Brown for J & D Implement, Inc.). In the event that the documents produced to the Court were limited in nature, it bears noting that not only should these submitted documents be produced, but so should any other documents in Currie Kendall's possession which are responsive to this request, whether the documents were exchanged with a representative of Mitchell/J&D or a representative of Deere. For example, to the extent Currie Kendall has exchanged documents with non-client Deere with regard to the Gettel & Co. sale, those too should be produced.[8]

_____

[8]Relying upon Gettel's deposition testimony, Deere contends that it had nothing to do with the Gettel sale to Mitchell. Doc. Ent. 86-1 at 14. According to defense counsel, "Deere wasn't even informed about the sale until after the sales agreement had been completed between Mr. Gettel and Mr. Mitchell's businesses." Doc. Ent. 112 at 30, Doc. Ent. 86-1 at 14. Furthermore, defense counsel stated that Deere has "no authority to tell people not to buy." Doc. Ent. 112 at 30. As

**e.**     I have also examined (H) - the forty-seven (47) page "Asset Purchase Agreement" dated June 12, 2003, and signed by buyer Mitchell (President J&D Implement, Inc.), shareholders Kent A. Gettel and Mark H. Gettel, and the representative of sellers Gettel & Company - Bad Axe and Gettel & Company - Sebewaing.  Although the Court notes the agreement's requirement that Gettel & Co. agrees to keep confidential J&D Implement, Inc.'s monthly financial statements (¶ 2.4), it is not clear to which confidentiality provision Currie Kendall's counsel was referring during the hearing.

Therefore, assuming Currie Kendall is redacting the dollar amounts in the "Asset Purchase Agreement," such as those set forth in ¶ 2.4 (Consideration) and ¶ 2.8 (Closing Obligations), they must either produce a privilege log indicating the basis for withholding such information - such as the particular confidentiality clause upon which the assertion of privilege exists, or they must disclose these dollar amounts.  Any notice required to be given to J & D as a result of such production will remain the responsibility of the party required to do so by the contractual confidentiality provision referenced above.

**f.**     Having concluded that Currie Kendall must produce documents responsive to request No. 1 of the subpoena, as well as an unredacted copy of the June 12, 2003, Asset Purchase Agreement, or must delineate the withheld information/documents by submitting a privilege log, I nonetheless acknowledge Currie Kendall's request for the entry of a Fed. R. Civ. P. 26(c) protective order.  Doc. Ent. 90-1 at 13.  Production of these documents may be made subject to a

---

previously noted, the "Asset Purchase Agreement" which Currie Kendall confidentially provided to the Court is dated June 12, 2003.

mutually agreed upon protective order, perhaps like the one which defendant alleges plaintiffs entered into with the Brown Kegler law firm (which represented Mitchell's/J&D).

4.      **Request No. 2:  Invoices and billing records**

a.      Request No. 2 seeks invoices and billing records.  With regard to Request No. 2, plaintiffs contend that "nothing in that request could possibly be construed as requesting information that is protected by the attorney-client privilege."  Doc. Ent. 75-1 at 11.

Currie Kendall claims that the documents sought by request No. 2 are privileged in nature, and "the request is overly burdensome and irrelevant to the cause of action against Deere and Company and the request is not reasonably calculated to lead to admissible evidence[,]" as well as overly broad.  Doc. Ent. 90-1 at 6, 10.  It also claims it is precluded from producing "client file materials and/or client billings relating to client communications."  Doc. Ent. 90-1 at 6.  Even assuming these documents were relevant, Currie Kendall argues, "they would be limited to the time frame to which Mr. Gettel has testified that he was even considering the sale of Gettel & Company, and then would represent privileged communications between Currie Kendall and its client."  It considers the instant motion "an attempt to circumvent what is an improper discovery demand, which has been previously precluded in State Court actions that the Plaintiffs have lost."  Doc. Ent. 90-1 at 10.

In a cooperative effort, Currie Kendall attaches the Purchase and Sale Agreement and "the invoices sent to Gettel and Company with appropriate redactions for any communications between Currie Kendall and its client, leaving only a record of those communications, only between Currie Kendall and non-clients as confidential production in this confidential submission to the Court."  Doc. Ent. 90-1 at 10-11.  If these documents are ordered to be

produced, Currie Kendall requests that such production take place under seal and in a confidential manner.  Doc. Ent. 90-1 at 11.

Although it contends that billing invoices are not relevant and are privileged, Currie Kendall contends that "those dealing with the time period referenced by Mr. Gettel and reflecting communications with non-clients, as well as eliminating corresponding time and rates are enclosed in the confidential package listed as Exhibit 3 for this Court's review and labeled as "CONFIDENTIAL - COURT ONLY."  Doc. Ent. 90-1 at 13.  In this confidential submission, Currie Kendall provided the Court with eight pages of invoices from Currie Kendall to Gettel Implements for the period spanning April 9, 2003 - September 12, 2003.

In reply, plaintiffs contend that Request No. 2 does not "encroach on the attorney-client privilege."  According to plaintiffs, "the request expressly asks Currie Kendall to redact any portion of the billing statements that contain privileged information."  Doc. Ent. 94 at 5.

**b.**     During the June 14, 2006 hearing, plaintiffs' counsel explained that it sought these documents to "get a handle on . . . when Currie Kendall was actually brought in[.]"  Plaintiffs' counsel agreed to scale back this request to July 2002, because that was the time around which Mitchell had his first conversation Bormann "about moving into Michigan or a neighboring state[.]"  Doc. Ent. 112 at 10.  Plaintiffs' counsel argued that "invoices or billing records certainly weren't prepared in anticipation of litigation[.]" Doc. Ent. 112 at 11.  As far as Currie Kendall's offer to provide the date on which it began talking to Mitchell about the deal, plaintiffs' counsel argued that plaintiffs are entitled to "information that would lend some veracity to whether or not that was the date."  Doc. Ent. 112 at 14.

Defense counsel stated that Request No. 2 was not limited to the Gettel J& D transaction and he was "willing to provide those [documents] that [he had] provided to the Court if the Court feels that that is relevant." Doc. Ent. 112 at 23, 26. Counsel for Currie Kendall stated that the billing records confidentially provided to the Court have been privilege-redacted. He also stated that April 9, 2003, was the first time Gettel contacted Allen about the sale, and the billing records are consistent with Gettel's testimony. Doc. Ent. 112 at 25, 26.

Plaintiffs' counsel stated that she "would like to see the billing records for the period beginning in July 2002 and extending through the date that the sale closed. [She] would like to know when he was in contact with Mr. Allen." Doc. Ent. 112 at 41. Plaintiffs' counsel stated that Request No. 2 "was intended to be specific to the Gettel transaction." Doc. Ent. 112 at 46.

**c.**     For the same reasons stated in Section I.D.3.c, I conclude that the documents responsive to Request No. 2 as amended (July 1, 2002 - December 31, 2003 and limited to the Gettel transaction) are discoverable and should be disclosed to plaintiffs. Furthermore, I conclude that fulfilling such a request will not be too burdensome, as billing records regarding a particular client and a particular period of time are likely accessed by generating a computer report.

In the event Currie Kendall's submission of billing documents to the Court was limited to what it believes to be the relevant period, I conclude that Currie Kendall's production of documents responsive to the subpoena's request No. 2 shall not be limited to a time period referenced by Gettel in his deposition. As plaintiffs' counsel stated, she is not "required to take Mr. Gettel's memory" of "when he was in contact with Mr. Allen." Doc. Ent. 112 at 41. Instead, Currie Kendall shall respond to request No. 2 with the timeframe referenced by plaintiffs at oral argument on this motion. During the hearing, plaintiffs' counsel stated she did

not need information before July 2002, because that was the "approximate date that Mitchell had his first conversation with the folks over at – with Rickey Joe Bormann about moving into Michigan or a neighboring state[.]" Doc. Ent. 112 at 10-11.  If, in fact, April 9, 2003, was the first time Gettel contacted Allen about the sale of Gettel & Co. to Mitchell and/or his company, then Currie Kendall's document production will reflect that claim.

Furthermore, I conclude that these documents are not privileged.  As plaintiffs note in their reply, "[t]ypically, the attorney-client privilege does not extend to billing records and expense reports." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999); Doc. Ent. 94 at 5. "[T]he billing records [are] discoverable because of the general nature of the information provided therein, e.g., information on the identity of the client, the case name for which payment was made, and the amount of the fee." *Chaudhry*, 174 F.3d at 402 (citing *Clarke v. American Commerce National Bank*, 974 F.2d 127 (9th Cir. 1992).  However, the privilege applies where "the legal bills reveal[] the identity of the federal statutes researched. . . . the records would divulge confidential information regarding legal advice[.]" *Chaudhry*, 174 F.3d at 403.  As another Court has noted, "[t]he statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed. Our previous decisions have held that this type of information is not privileged." *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992).

**d.**     Notwithstanding my conclusion that Currie Kendall must produce documents responsive to the subpoena's request No. 2, I am mindful of Currie Kendall's (the objector to the subpoena at issue in this case) request for the entry of a Fed. R. Civ. P. 26(c) protective order.  Doc. Ent. 90-1 at 13.  I am also mindful of defense counsel's argument that Currie Kendall "should be

permitted to use that CCO designation in the second amended protective order." Doc. Ent. 112 at 35.[9] As was the case with my ruling regarding the subpoena's request No. 1, Currie Kendall may make production of documents responsive to request No. 2 pursuant to a Fed. R. Civ. P. 26(c) protective order, the terms of which should be agreed upon between Currie Kendall and plaintiffs.

**5.     Deere's objections to plaintiffs' subpoena for documents from Currie Kendall**

**a.**     As previously noted, Deere has filed a response to plaintiff's motion, in which it argues that "[p]laintiffs should be denied access to non-discoverable documents in the possession of Gettel & Co.'s attorneys, Currie Kendall, [because] the information is not relevant (or likely to lead to the discovery of admissible evidence) and is protected by the attorney-client privilege and the work product doctrine." Doc. Ent. 86-1 at 2. Defendant claims that plaintiffs' discovery requests are designed "to obtain data of competitive value to Plaintiffs' new business, which competes with Deere and those other dealers[.]" Doc. Ent. 86-1 at 5.

Deere's consolidation strategy involves "assisting the dealers in recognizing which were more likely to enjoy future success, and assisting their growth[,]" as well as "assisting the others in sales of their businesses, if they chose to do so." Doc. Ent. 86-1 at 10. According to defendant, it supported plaintiffs "[u]ntil Deere discovered that their Dealer Agreements had been procured through fraud by [p]laintiffs[.]" Doc. Ent. 86-1 at 14. Citing Porter's explanation, Deere points out that it discussed a consolidation strategy with the Laethems. Doc. Ent. 86-1 at

---

[9]The original protective order in this case was entered on August 2, 2005. Doc. Ent. 6. The First Amended Protective Order (FAPO) was filed on April 21, 2006. Doc. Ent. 71. At the June 14, 2006, hearing, defense counsel mentioned a Second Amended Protective Order (SAPO) entered into between plaintiffs and the Brown Kegler law firm. Doc. Ent. 112 at 33-35.

14.  Plaintiffs contend that "[m]ischaracterizations and 'half truths' about Messrs. Bormann, Donohue and Gettel in Plaintiffs' [motion brief] reveal why Plaintiffs should not be 'trusted' with commercially sensitive information."  Doc. Ent. 86-1 at 15.

In its response, as well as in its surreply, Deere argues that "[d]ocuments requested are privileged and not discoverable."  Doc. Ent. 86-1 at 15-16, Doc. Ent. 101 at 5-6.  Furthermore, defendants contend that "[a]ny produced documents should be protected from plaintiffs[;]" any such documents deserve CCO protection; and Currie Kendall should be permitted to use the CCO designation in the FAPO.  Doc. Ent. 86-1 at 16.

In reply, plaintiffs contends that "[a]ny reasonable juror is likely to conclude that th[e] ["kickback"] arrangement between Bormann and Mitchell has quite a bit to do with Deere's January 15, 2003 ouster of Mark and Michael Laethem, the paltry $50,000 purchase price for LEC's and LFSC's assets, and the illegal turnover of the dealership to Mitchell."  Doc. Ent. 93 at 5.  First, plaintiffs argue that "[d]ocuments related to the sale of business assets or billing records are not protected under work-product doctrine."  Doc. Ent. 93 at 7-8.  Plaintiffs claim that Deere has not explained "why documents related to a sale of a business or its assets would have been" or "why Currie Kendall's billing records were" "prepared in anticipation of litigation."  Plaintiffs also point out that neither Currie Kendall nor Deere provided a Fed. R. Civ. P. 45(b) privilege log.  Doc. Ent. 93 at 7.

Second, plaintiffs argue that "[t]he documents do not contain competitive information." Doc. Ent. 93 at 8.  Specifically, they allege that "Deere offers no information about what, if any, 'competitive' information would be contained in Currie Kendall's billing records, or in an Asset

Purchase agreement executed three years ago and correspondence exchanged between the parties related thereto." Doc. Ent. 93 at 8.

In its June 2, 2006, sur-reply, defendant first contends that "Deere did not 'engineer' the sale of LEC and LFSC to Mitchell or 'turn the LEC and LFSC dealerships' over to Mitchell. The sale (by Kathryn) was not for $50,000."[10] Within this argument, defendant maintains that it "did not 'fire' Mark and Mike Laethem or engineer the sale of corporate plaintiffs to Mr. Mitchell." Defendants contend that Kathryn was responsible for the terminations of employment, the termination of the dealership agreements, and the orchestration of the LEC/LFSC sale to Mitchell. Furthermore, defendant notes, "Deere's 30(b)(6) witness [Porter] was not 'astonished' by the LEC price." Instead, defendant claims, Porter's testimony supports the position that $50,000 was not an accurate reflection of the purchase cost. Doc. Ent. 101 at 3. Defendant points to Porter's May 26, 2006, supplementation of his April 19, 2006 testimony, providing that "the real proceeds of the sale exceeded $5,000,000, according to the numbers principally derived from Michael Laethem's own calculations[.]" Doc. Entries 101 at 3, 101-3. Additionally, defendant states that "[t]he LEC sale was not completed for only $50,000." Doc. Entries 101 at 3.

In addition to the foregoing, defendant contends that "[t]he snowblower incentive program was not the 'kickback scheme' described by Plaintiffs[,]" and maintains that "[a]ll of the money obtained by Mr. Bormann was passed along to salesmen as incentives; there is no

---

[10]According to defense counsel, plaintiffs received $5 million. Doc. Ent. 86-1 at 10, Doc. Ent. 112 at 44.

evidence otherwise."[11]  Doc. Ent. 101 at 4.  Defendants also contend that "[t]he 'Gettel' sale was

not related to the LEC/LFSC sale and was not consolidation forced by Deere."  Here, defendant

explains that it "suggested" the Gettels negotiate a sale and that Mitchell was suggested as the

buyer, because "he was the only one who had expressed an interest in that particular dealership."

Defendant contends that it "encouraged the sale of one of Gettel's other dealerships **to the**

**Laethems.**"  Doc. Ent. 101 at 4-5.  Finally, defendants contend that "[d]ocuments requested are

privileged and not discoverable."  Defendant claims it has provided detailed descriptions of the

documents provided to plaintiffs and the necessity of the CCO designation.[12]  Citing two of its

previous filings in this case (one predating the instant motion and one post-dating it), defendant

claims that the CCO designation is appropriate and required "to prevent abuses of the discovery

process and of competitive information."  Doc. Ent. 101 at 5-6.[13]  For example, in its May 4,

2006, opposition to plaintiff's objections to my April 5, 2006, order, defendant states that it

proposed "CCO protection only for data regarding other Deere dealers, Deere's Business

---

[11]According to defense counsel, the cash payments made to promote snowblower sales "had absolutely nothing to do with the Laethems and it has nothing to do with this case."  Doc. Ent. 112 at 31.

[12]In support of this statement, defendant cites to its January 24, 2006 motion for protective order (Doc. Ent. 30); its February 17, 2006 reply regarding its motion to compel inspection of Honigman document depository (Doc. Ent. 44); its February 17, 2006 reply regarding its motion for protective order (Doc. Ent. 45) and its May 4, 2006 opposition to plaintiff's objections regarding my April 5, 2006 order (Doc. Ent. 84).

[13]Attachments to this filing include a May 26, 2006, letter from Richard D. Fries (Varnum Riddering Schmidt Howlett LLP) to Kathy Cathel, RPR (Higgins & Associates) to which supplementation sheets on the April 18, 2006, Anderson deposition and April 19, 2006, Porter deposition are attached and to which an errata sheet on the April 18, 2006 Donohue deposition is attached (Doc. Ent. 101-3); a copy of an undated and unsigned Escrow Agreement between buyer J&D Implement, Inc. (Mitchell), seller LEC (Kathryn M. Laethem), escrow agent The Park National Bank and Trustee Kathryn M. Laethem (Doc. Ent. 101-4) and a portion of the March 27, 2006, deposition of Kent Gettel (Doc. Ent. 101-5).

Strategy and Practices documents, and certain privacy items such as personnel files, none of which concern the Laethem businesses." Doc. Ent. 84 at 7-8.

**b.**     To begin, the Court should consider defendant's standing to object to a subpoena for documents from a non-party. "A motion to quash should be made by the person or entity from whom or from which the documents or things are requested. Generally, a party to litigation has no standing to move to quash a third-party subpoena *duces tecum* unless the movant claims some personal right or privilege to the documents sought." *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E. D. Va. 2004) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); 9A Wright & Miller, Federal Practice and Procedure, Civ.2d 2459 (1995)).

        As another court has stated, "'[a] motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.'" *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999) (citing *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995)). The person subject to the subpoena "is the only one entitled to challenge the subpoena under Fed. R. Civ. P. 45(c)(3), 'unless a showing is made that [another person objecting] has a personal right to be protected or that the documents are subject to a privilege.'" *Hertenstein*, 189 F.R.D. at 635 (citing *Midland Brake, Inc.*, 162 F.R.D. at 685). *See also Liberty Mutual Fire Insurance Company v. Ravannack*, No. CIV.A. 00-1209, 2002 WL 1770936, *2 (E.D. La. Aug. 1, 2002) (citing *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186705, *4 (E. D. La. Apr. 17, 1998)) ("a party, although not the person to whom a subpoena is directed and not in

possession or control of the requested materials, does have such standing if he has a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it."); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 (N.D. Ga. 2001) (citing cases) ("it appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'"); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 695 (D. Nev. 1994) ("Because Diamond State was not the recipient of the subpoenas, it has standing to challenge them only where its challenge asserts that the information is privileged or protected to itself."); *Bush Development Corp. v. Harbour Place Associates*, 632 F. Supp. 1359, 1364 (E.D. Va. 1986) (citing *Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D.Md.1980); *Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo.1957)) ("Since the documents involved are the business records of Home Federal Bank, the defendants have no standing to challenge the subpoena issued to the bank.").

Therefore, defendant may only object to plaintiffs' subpoena upon Currie Kendall on the basis of a personal right or privilege regarding the information requested.

**c.**     During the June 14, 2006, motion hearing, defense counsel argued that "the discovery in these cases is being used by [plaintiffs] to obtain information that is confidential and a very important competitive value to them in terms of the value of businesses, capital investment, pricing, and a host of other information.  That is the reason this Court in its April 21 order permitted the confidential counsel-only designation."  Deere asserts a personal right or privilege in the requested material, because Mitchell is one of defendant's dealers and is the buyer of the Deere dealer transaction at issue.  Doc. Ent. 112 at 32.  Deere requests that Currie Kendall be

given the option of producing documents responsive to the subpoena under the protection of the CCO designation.  Doc. Ent. 112 at 32-33.  Defense counsel argued that plaintiff(s) should not be permitted to have the responsive material, because "once those two gentlemen see that information, there will be no way for [defendant] to be able to prevent them from using it in a competitive way against Deere and against Deere dealers."  According to defense counsel, "[p]laintiffs have agreed that the confidential counsel-only designation should be extended to non-parties." Doc. Ent. 112 at 33.  Deere asserts that any attorney for any Deere dealer required to produce documents "at least be permitted to be able to use that designation themselves[,]" and that, to the extent Currie Kendall is required to produce documents, it be permitted to use the CCO designation set forth in the second amended protective order.  Doc. Ent. 112 at 34, 35.

With respect to the argument that plaintiffs are seeking this information for competitive reasons, plaintiffs' counsel stated that she had "yet to have anyone explain to [her] what use Mark and Mike Laethem could make of these sales documents."  Doc. Ent. 112 at 42.  Plaintiffs' counsel responded that "if Currie Kendall believes that there are documents that should be restricted to counsels' eyes only, that they be required to assign a reason for it."  Plaintiffs' counsel was "very much opposed to having Currie Kendall documents being willy-nilly assigned to counsel eyes only."  Doc. Ent. 112 at 45.

**d.**      Upon consideration, I reject defendant's assertion of a personal right or privilege to the requested documents.  To the extent, if at all, Deere is objecting to the production of documents responsive to request No. 2, Section I.D.4 of this opinion discusses how the billing records are not privileged.  Also, it is difficult to imagine that Currie Kendall's billing records to Gettel & Co. would contain information competitively sensitive to Deere.

Furthermore, in light of defendant's assertion that it did not know about the Gettel & Co. sale until after it was completed, it does not appear that there will be documents responsive to request No. 1 which were exchanged between Currie Kendall and Deere with respect to the Gettel & Co. sale. However, assuming such documents exist, defendant has not offered an example of the type of information he is concerned about protecting - such as an example of a document that Currie Kendall exchanged with Deere regarding the Gettel & Co. sale that would be responsive to the subpoena's request No. 1, along with a justification of the personal right or privilege Deere has in that document. In the absence of such information, I conclude that defendant has not asserted a personal right or privilege in the information requested by the subpoena at issue. The same is true of any documents exchanged between Currie Kendall and J & D - Deere has not given an example of a document related to the sale of a Deere dealership and which was exchanged between two Deere dealerships (here via Gettel & Co.'s attorneys, Currie Kendall, and J & D's attorneys, Kegler Brown) that contains competitive information. Finally, it is not clear to me that Deere has a competitive interest in keeping confidential the price of Gettel & Co.'s sale to J & D.

**e.**     Consistent with my conclusions in Sections I.D.3.e and I.D.4.d of this opinion, the terms of any protective order governing the production required by this order may be resolved between plaintiffs and Currie Kendall.

## II.     ORDER

In accordance with the foregoing opinion, plaintiffs' motion to compel documents from Currie Kendall (Doc. Ent. 75) is GRANTED. Any further responses which are required by this order shall be provided within fourteen (14) days of the filing date of this order and shall be

subject to a protective order agreed upon by Currie Kendall and plaintiffs. Currie Kendall's request for costs, fees and other sanctions (Doc. Ent. 90-1 at 13) is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
Dated: 9/24/07                    UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 24, 2007.

s/Eddrey Butts
Case Manager

33