UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY,
MARK E. LAETHEM and
MICHAEL T. LAETHEM ,

                                              CASE NO. 05-CV-10113-BC
              Plaintiffs,          JUDGE DAVID M. LAWSON
                                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DEERE AND COMPANY,

              Defendant,

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF THE COURT'S APRIL 26, 2006 ORDER (Doc. Ent. 216)**

**I.     OPINION**

**A.     Background**

Plaintiffs Laethem Equipment Company (LEC), Laethem Farm Service Company

(LFSC), Mark Laethem and Michael Laethem filed this lawsuit on April 19, 2005, alleging (I)

breach of Michigan's Farm and Utility Equipment Act (MFUEA) (in favor of LEC and LFSC);

(II) breach of contract (in favor of LEC and LFSC); (III) tortious interference with business

relationships (in favor of LEC and LFSC); (IV) tortious interference with business relationships

(in favor of plaintiffs Mark Laethem and Michael Laethem); (V) violation of Michigan's

Uniform Trade Secrets Act (in favor of LEC and LFSC); (VI) aiding and abetting violation of

fiduciary duty (in favor of all plaintiffs); and (VII) violation of Michigan's Franchise Investment

Law (in favor of LEC and LFSC).  Doc. Ent. 1.  Defendant answered the complaint on May 10,

2005.  Doc. Ent. 3.

On December 1, 2005, Thomas J. Schwartzenberger provided an expert report in the instant matter. Doc. Ent. 179-7. On or about January 25, 2006, defendant served its second request for production of documents (request Nos. 50-59) upon plaintiffs. Request for production No. 55 sought "[a]ll documents regarding environmental assessments of property owned or used by LEC and LFSC, including any documents regarding remediation or compliance cost." Doc. Ent. 53-3 at 6.

Schwartzenberger provided another expert report dated February 6, 2006, to reply to the January 6, 2006, report by James G. Finley. Doc. Ent. 179-8. On or about February 27, 2006, plaintiffs served their responses upon defendant, including the following response to request for production No. 55:

> Plaintiffs object for the reason that the documents requested are not relevant to this lawsuit, nor are reasonably likely to lead to the discovery of admissible evidence. Plaintiffs further object on the basis of work-product doctrine. Without waiving those objections, Plaintiffs Mark Laethem and Michael Laethem state in the *Laethem v Laethem* matter, pursuant to MCR 2.302(B)(4)(b), they retained an expert, in preparation for trial, who was not expected to be called as a witness and who was not called as a witness. All documents created by that expert are specifically protected under work-product doctrine and the identity of the expert is, likewise, protected from disclosure. Such documents would have been created in 2003 and 2005 and consist of correspondence between the expert and counsel for Mark Laethem and Michael Laethem regarding potential environmental issues on the property. *Plaintiffs have no documents that contain information regarding remediation or compliance costs*[.]

Doc. Ent. 53-7 at 5 (emphasis added); Doc. Ent. 216-6.

On March 21, 2006, defendants filed a second motion to compel discovery. (Doc. Ent. 53 [Mtn.]). Among other things, defendant argued that "[e]nvironmental assessments of property owned or used by LEC or LFSC are relevant." Doc. Ent. 53 at 8-9. Attached to the motion is an eight-page memo dated August 20, 2001 (LEC-DE 05088-05095). It states, in part,

"LFSC real estate has 4 unregistered buried fuel tanks with petroleum contamination probably making this property unmarketable." Doc. Ent. 53-12;[1] Doc. Ent. 216-5 at 8.[2]

On March 24, 2006, Schwartzenberger was deposed in this case. Doc. Ent. 56-6. On April 7, 2006, plaintiffs filed a response to the second motion to compel. Doc. Ent. 61. On April 14, 2006, defendant filed a reply. Doc. Ent. 67. Attached to the reply is a January 28, 2003, letter from attorney Craig W. Horn to attorney Michael H. Allen [Kathryn Laethem's attorney[3]] which states in part, "As your client is aware, the [LFSC] property is environmentally impaired." [Doc. Ent. 67-4 at 2; Doc. Ent. 216-4 at 9]

On April 24, 2006, I heard oral argument regarding defendant's second motion to compel discovery.[4] Two days later, on April 26, 2006, I entered an opinion and order denying defendant's second motion to compel discovery. Doc. Ent. 78. In relevant part, the order stated:

> I conclude that plaintiffs' representation that "none of the claims or defenses in this lawsuit have anything to do with the real property on which LEC and LFSC operate[,]" Doc. Ent. 61 at 6-7, is determinative regarding the relevance of environmental assessment information. This representation bars plaintiffs from seeking damages with regard to this property. Second, at the April 24, 2006 motion hearing, plaintiffs' counsel explained that real property was at issue in *Laethem v. Laethem*, Case No. 03-21644-CZ (Tuscola County Circuit Court).

---

[1]In addition to being attached to defendant's January 31, 2008, motion for reconsideration, this document is attached to the March 21, 2006, motion to compel discovery. Doc. Ent. 53-12. However, the page cited is only attached to the motion for consideration and appears to have been left out of the attachment to the motion to compel.

[2]On March 24, 2006, Judge Lawson referred this motion to me for hearing and determination. (Doc. Ent. 55). On April 5, 2006, this motion was noticed for an April 24, 2006 hearing. (Doc. Ent. 59).

[3]Doc. Ent. 9-18.

[4]Defendant was represented by attorney John W. Allen. Also present on defendant's behalf was attorney Kathryn Denise Soulier. Plaintiffs were represented by attorney Ann L. Andrews. Also present was plaintiff Mark Laethem.

Therefore, the documents are also protected by the work-product privilege. As plaintiff has represented, the aforementioned expert in the state court case was retained pursuant to M.C.R. 2.302(B)(4)(b), which provides: "A party may not discover the identity of and facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except (i) as provided in MCR 2.311, or (ii) where an order has been entered on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." As to subsection (ii), I am not convinced that other means are not available to defendant. For example, defendant might hire its own expert.

Doc. Ent. 78 at 5-6.

## B.      Defendant's Motion for Reconsideration

On November 30, 2007, Schwartzenberger submitted another expert report, which updated and superceded his December 1, 2005, report. Doc. Ent. 185-3. On December 4, 2007, defendant filed a motion to compel plaintiffs' expert deposition. Doc. Ent. 185. On January 11, 2008, Judge Lawson granted in part defendant's motion to compel plaintiffs' expert deposition and required plaintiffs to produce Schwartzenberger for deposition. Doc. Ent. 205. Judge Lawson's order also required plaintiffs to provide defendant with an itemized disclosure on the computation of damages by January 16, 2008. Doc. Ent. 205.

At some point following my April 26, 2006, opinion and order, defendant received document production from plaintiff. Doc. Ent. 216 at 4; Doc. Ent. 216-4 (18662-18665, 18584-18586):

A March 24, 2002, electronic mail from Mike Laethem to Joe Laethem regarding a calculation of the value of LFSC, LEC, Laethem Enterprises and CANUSA. This message mentions, inter alia, "an allowance for environmental cleanup", "estimated cleanup costs[,]" and a negative final total. It also states that "[t]he

4

main store in Fairgrove has buried fuel thanks that leak[,]"[5] and mentions a possible negative liquidation value. It further states that "[i]f Mark and I buy it, we will segregate the real estate to a LLC to avoid personal losses when the pollution is discovered." It additionally mentions that the proposal "best reduces tax and criminal liabilities to all concerned and has the best chance of keeping the IRS out of the loop."

An April 5, 2002, electronic mail from Mike Laethem to Joe Laethem regarding the estimated fair market value of the FML Trust business assets. A spreadsheet reflects, with respect to LFSC, a $350,000 estimate for "EPA clean up, fines, studies, legal fees". With respect to Laethem Enterprises, the spreadsheet reflects a guess of $730,000, for clean up and related charges.

Doc. Ent. 216-4 at 6-8 (LEC-DE 18584-18586), 2-5 (LEC-DE 18662-18665). The spreadsheet

attached to the April 5, 2002, electronic mail estimates the value of LEC at -928,705; the

liquidation value of LFSC at $446,453; the net value of Canusa at $38,624; and the total value of

Laethem Enterprises at $505,000. Doc. Ent. 216-4 at 3-5. It follows that the total estimated

value of these four entities would be $61,372.[6]

On January 29, 2008, defendant conducted the Fed. R. Civ. P. 30(b)(6) deposition of

Schwartzenberger. Doc. Ent. 216-3. He testified that it may or may not be true "that at some

point you can reach a level, a monetary value of contingent liability for environmental

remediation expense which would obstruct or impair the ability to sell these businesses as going

concerns[.]" Doc. Ent. 216-3 at 4. He agreed that, as a hypothetical, "there is a point at which

potential environmental remediation expense could serve to make a business unmarketable[.]"

Doc. Ent. 216-3 at 5. He stated that he had not reached a conclusion "as to the amount of the

---

[5]As stated in the complaint, LFSC's principal place of business is in Fairgrove, Michigan. Doc. Ent. 1 at 2 ¶ 2. According to the e-mail, oil used to be changed in the yard and drained into the ground. Doc. Ent. 216-4 at 7.

[6]The total estimated value on the spreadsheet is listed as -$55,628. Doc. Ent. 216-4 at 5. The reason for this apparent $5,744, discrepancy is not evident from the chart.

contingent liability[.]" Doc. Ent. 216-3 at 5-6.  When asked whether "another person looking, if

they had all the evidence of what the environmental contamination is, might reach a conclusion

which could be that the marketability of these entities as going concerns is materially obstructed

or impaired[,]" Schwartzenberger stated, "I don't know how to answer that question."  Doc. Ent.

216-3 at 6.

During the deposition, defense counsel presumably referred to the August 20, 2001,

memo (LEC-DE 05088-05095), which stated in part, "The LFSC real estate has 4 unregistered

buried fuel tanks with petroleum contamination, probably making this property unmarketable."

Doc. Ent. 216-3 at 7-8; Doc. Ent. 216-5 at 8.  When asked "[i]s that one of the contingent

liabilities for environmental remediation expense that can interfere with the business having a

going business value or franchise value[,]" Schwartzenberger replied, "it certainly has to do with

the remediation potentially."  Doc. Ent. 216-3 at 8.

Defense counsel also referred to Exhibit 59 (DRL 196),[7] entitled: "Honor thy father and

mother."  Doc. Ent. 216-3 at 11.  It stated in part, "Mark, Mike, Kathy and mom could go to

jail."  Doc. Ent. 216-3 at 11, 13.  Schwartzenberger testified that "the way [he] calculated the

damages, [he was] looking at assets that [were] in place as of January 2003."  Doc. Ent. 216-3 at

14-15.  Schwartzenberger did not recall having Exhibit 59 when he prepared Exhibit 152

(presumably the December 1, 2005, report).  Doc. Ent. 216-3 at 15.  Schwartzenberger did not

know if Exhibit 59 made him "want to go back and ask some more questions about the work [he]

did on Exhibit 152[.]"  He further agreed that "one of the assumptions in [his] Exhibit 152 report

---

[7]DRL 0000196 was the subject of January 25, 2006, request for production of documents No.
54.  Doc. Ent. 216-6 at 2; Doc. Ent. 53-3 at 5.

[was] that there are and w[ere] in . . . 2003 other buyers for the assets of LEC and LFSC aside from the ones who bought them[.] In other words, there was a market for those assets[.]" Doc. Ent. 216-3 at 16.

On January 31, 2008, the discovery cut-off date,[8] defendant filed a motion for reconsideration of my April 26, 2006, order denying environmental assessment and remediation expense evidence. Doc. Ent. 216. Defendant claims that it acquired new evidence "through the testimony of Plaintiff's expert, []Schwartzenberger, that evidence of assessment and remediation expense is relevant to the issue of whether the assets of the Plaintiffs' businesses were saleable to other persons in or about February and March, 2003. Therefore, the same evidence is relevant to the issue of damages, as claimed by Plaintiffs against Deere." Doc. Ent. 216 at 1. Pursuant to Fed. R. Civ. P. 37, defendant "requests reconsideration of the Order[,] and a further order requiring the Plaintiffs [to] produce all evidence in their possession, custody or control of environmental assessments and remediation expense relating to any property of or actions by Plaintiffs, Plaintiffs' businesses, [LEC] and [LFSC], Laethem Enterprises, Laethem Land Company, LLC, CANUSA Equipment Company, Farm Depot LLC or Farm Depot Ltd." Doc. Ent. 216 at 1-2.

On February 1, 2008, Judge Lawson referred this motion to me for hearing and determination. Doc. Ent. 218. On March 11, 2008, the final pretrial conference was reset for April 21, 2008.

C.    **Analysis**

---

[8]Pursuant to Judge Lawson's October 1, 2007, amended case management and scheduling order, the discovery cutoff is January 31, 2008. Doc. Ent. 172.

**1.**     Motions for reconsideration in this district are governed by E. D. Mich. LR 7.1(g).  To

begin, defendant's January 31, 2008, motion for reconsideration is untimely, because "[a] motion

for rehearing or reconsideration must be filed within 10 days after entry of the judgment or

order."  E. D. Mich. LR 7.1(g)(1).  *Geller v. Washtenaw County*, No. 04-CV-72947, 2006 WL

2946672, *1 (E. D. Mich. Oct. 16, 2006) (Borman, J.) (on a motion for reconsideration of an

order granting summary judgment, "Under Local Rule 7.1(g)(1) and FRCP 59(e), a party has ten

(10) days to file a motion for reconsideration after the entry of a judgment or order. . . . This

Court is not permitted by its jurisdiction to enlarge the time period to file that motion.") (citing

*Allen v. Hemingway*, 24 Fed. Appx. 346, 347 (6th Cir.2001) (unpublished)); *Air Products and

Controls, Inc. v. Safetech Intern., Inc.*, No. 05-73031, 2006 WL 1420831, *1 (E. D. Mich. May

22, 2006) (Cook, J.) (on a motion for reconsideration of an order granting defendants motion to

dismiss, "the filing of this motion falls outside the requisite ten day period, as delineated by our

Local Rules. Therefore, this Court is without jurisdiction to evaluate the merit of Air Products'

motion.").

Next, although my February 6, 2008 (Doc. Ent. 220) and February 27, 2008 (Doc. Ent.

239) notices of hearing have scheduled the motion for reconsideration for hearing, I have further

considered this matter and elect to address the motion for reconsideration on the papers.  "No

response to the motion and no oral argument are permitted unless the court orders otherwise."  E.

D. Mich. LR 7.1(g)(2).

Finally, E. D. Mich. LR 7.1(g)(3) provides that "[g]enerally, and without restricting the

court's discretion, the court will not grant motions for rehearing or reconsideration that merely

present the same issues ruled upon by the court, either expressly or by reasonable implication."

It further provides that "[t]he movant must not only demonstrate a palpable defect by which the court and the parties have been mislead but also show that correcting the defect will result in a different disposition of the case." E. D. Mich. LR 7.1(g)(3). *Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis Group*, No. 03-74474, 2007 WL 2463238, *1 (E. D. Mich. Aug. 28, 2007) (Edmunds, J.) ("the Court sees no new information that would warrant reconsidering its earlier decision to grant summary judgment in LexisNexis's favor on this claim under Local Rule 7.1(g)(3)."); *Carter v. Robinson*, 211 F.R.D. 549, 550 (E. D. Mich. 2003) (Tarnow, J.) ("Defendants have not demonstrated a palpable defect, introduced new evidence, pointed to changes in controlling law, or demonstrated clear error or manifest injustice.") (citing E. D. Mich. LR 7.1(g)(3); *NL Industries, Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 324 n.8 (3d Cir. 1995)). In light of my conclusion that defendant's motion is untimely to the extent it requests reconsideration of my order, I need not address defendant's claims that it is in possession of "new evidence" to the extent this is a motion for reconsideration.

**2.** Perhaps these constraints are why defendant's motion for reconsideration of my April 26, 2006, order seeks relief pursuant to Fed. R. Civ. P. 37. To the extent defendant is bringing a renewed motion to compel discovery pursuant to Fed. R. Civ. P. 37, I will consider it's claims that it is in possession of "new evidence".

Defendant claims that "[e]vidence newly-discovered and only recently acquired from Plaintiffs' expert witness shows a different and more powerful relevance for documents and information concerning environmental contamination and remediation expense." Doc. Ent. 216 at 3. Defendant asserts that "[p]laintiffs' damages are based, in part, upon the net loss of value of business assets sold to J&D Implement Company and to the public at auction in February and

March, 2003.  Plaintiffs claim that they are entitled to a 'replacement value' for these assets

since they would have been of a higher value if sold to others.  The underlying assumption is that

the assets were saleable to other persons at a higher price."  Doc. Ent. 216 at 3-4.  Defendant

contends that "this newly-discover[ed] evidence is proof that documents and information

regarding environmental contamination and remediation expense of the property of the

Plaintiffs' businesses is, indeed, relevant, and should be subject to discovery.  Therefore, its

production should be ordered by the Court."  Doc. Ent. 216 at 4.

Specifically, defendants argue that "evidence in the hands of Plaintiffs relating to

environmental impairment and remediation is relevant to their damage theories (apart from the

real estate), because it forms the basis for one of the underlying assumptions fundamental to the

analysis used by the Plaintiffs' expert to formulate his conclusions as to their damage claims."  It

is defendant's position that "[b]ecause of its high value and relevance, Plaintiffs have gone to

extraordinary lengths to secret evidence of environmental contamination and remediation."  Doc.

Ent. 216 at 5.  Defendant points out that plaintiffs responded they had no documents; however, it

was later revealed that they "had done some specific calculations of environmental remediation

expense[.]" Doc. Ent. 216 at 5.  Defendant concludes that "[b]ecause the evidence of

environmental assessment and remediation is now relevant to the damage expert's analysis, that

evidence must be produced."  Doc. Ent. 216 at 6.

Notwithstanding defendant's arguments, my April 26, 2006, order interpreted plaintiffs'

representation that "none of the claims or defenses in this lawsuit have anything to do with the

real property on which LEC and LFSC operate[,]" Doc. Ent. 61 at 6-7, as determinative

regarding the relevance of environmental assessment information.  In fact, I stated that plaintiff's

representation bars plaintiffs from seeking damages with regard to this property.  Doc. Ent. 78 at 5.

This interpretation is consistent with plaintiff's complaint's general allegation that this case "arises from breaches of Deere's statutory duties to LEC and LFSC as Deere dealers and franchisees, Deere's breaches of the Deere dealership agreements with LEC and LFSC, Deere's tortious interference with the business relationships of LEC and LFSC and with the business relationships of Mark and Michael with LEC and LFSC and from Deere's misappropriation of LEC's and LFSC's trade secrets."  Doc. Ent. 1 at 2 ¶ 6.  To be sure, plaintiffs' general allegations also speak of the purchase of LEC's and LFSC's assets to J & D Implement, Inc. for "well below market value".  Doc. Ent. 1 at 5 ¶¶ 23-24.  Furthermore, within their claim for aiding and abetting violation of fiduciary duty, plaintiffs mention Kathryn Laethem's "desire to transfer corporate assets at prices well-below market to J & D[.]" Doc. Ent. 1 at 10-11 ¶ 65.  However, in conjunction with plaintiffs' previous representation, the Court does not construe the assets mentioned as including real estate.

## II.    ORDER

In accordance with the foregoing, defendant's January 31, 2008, motion (Doc. Ent. 216) for reconsideration of the Court's April 26, 2006 order (Doc. Ent. 78) denying environmental assessment and remediation expense evidence is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Paul J. Komives
                               PAUL J. KOMIVES
Dated: 3/25/08                 UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on March 25, 2008.

                              s/Eddrey Butts
                              Case Manager