UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY,
MARK E. LAETHEM and
MICHAEL T. LAETHEM ,

                                    CASE NO. 2:05-CV-10113
              Plaintiffs,           JUDGE DAVID M. LAWSON
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DEERE AND COMPANY,

              Defendant,

_____/

**OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL
DEPOSITION OF KIM BROWN CPA, AND BROWN & KENT P.C., OR TO STRIKE
DAMAGES CLAIMS (Doc. Ent. 215) and THIRD PARTY BROWN & KENT, P.C.'S
MOTION FOR ORDER QUASHING SUBPOENA AND/OR GRANTING PROTECTIVE
ORDER (Doc. Ent. 217)**

*Table of Contents*

I.    **OPINION** ........................................................... 2
      A.    **Background** ................................................. 2
      B.    **Requested Documents and Deposition** ........................ 2
      C.    **Instant Motions** ........................................... 5
      D.    **Fed. R. Civ. P. 45 ("Subpoena")** ........................... 10
      E.    **Analysis** .................................................. 10
            1.    **The "gap" documents shall be produced subject to an appropriately
                  drafted protective order.** ............................. 10
            2.    **It appears that the only remaining issues are the scope of Kim
                  Brown's deposition and responses to Request Nos. 4-6 regarding
                  seven (7) named persons/entities.** ..................... 12
            3.    **Request Nos. 4-6 seek information relevant to plaintiffs' damages
                  claims.** ............................................... 13
            4.    **Plaintiffs have waived the accountant-client privilege.** ........... 20

II.   **ORDER** ............................................................ 33

## I.     OPINION

## A.     Background

Plaintiffs Laethem Equipment Company (LEC), Laethem Farm Service Company (LFSC), Mark Laethem and Michael Laethem filed this lawsuit on April 19, 2005. This Court's jurisdiction over the instant case is based upon diversity of citizenship. 28 U.S.C. § 1332(a); Doc. Ent. 1 ¶ 8. Plaintiffs allege (I) breach of Michigan's Farm and Utility Equipment Act (MFUEA) (in favor of LEC and LFSC); (II) breach of contract (in favor of LEC and LFSC); (III) tortious interference with business relationships (in favor of LEC and LFSC); (IV) tortious interference with business relationships (in favor of plaintiffs Mark Laethem and Michael Laethem); (V) violation of Michigan's Uniform Trade Secrets Act (in favor of LEC and LFSC); (VI) aiding and abetting violation of fiduciary duty (in favor of all plaintiffs); and (VII) violation of Michigan's Franchise Investment Law (in favor of LEC and LFSC). Doc. Ent. 1. Defendant answered the complaint on May 10, 2005. Doc. Ent. 3.

Pursuant to Judge Lawson's October 1, 2007, amended case management and scheduling order, discovery in this case was due by January 31, 2007. Doc. Ent. 172. However, on January 11, 2008, Judge Lawson entered an order which in part permitted defendant to re-depose Mark Laethem and Michael Laethem on issues relating to the supplemental damage report filed by the plaintiff's expert witness. Doc. Ent. 205. Furthermore, on February 21, 2008, Judge Lawson entered an order concerning electronically stored information. Doc. Ent. 228. The final pretrial conference in this case is scheduled to take place on April 21, 2008, before Judge Lawson.

## B.     Requested Documents and Deposition

For some years, Brown & Kent, PC, a fact witness in this case, has prepared tax returns for plaintiffs and/or Canusa Equipment Company, Farm Depot LLC, and Laethem Land Company LLC. Doc. Ent. 217-3; Doc. Ent. 217 at 4. Plaintiffs contend that Brown & Kent was retained beginning in 2003; however, the schedule of tax returns prepared by Brown & Kent contains a return dated January 31, 2001. Doc. Ent. 217 at 4; 217-3.

On November 27, 2007, a subpoena for attendance at a deposition (with documents) and notice of deposition for December 27, 2007, were sent to Kim Brown, CPA, and Brown & Kent. Doc. Ent. 215-3. On December 7, 2007, counsel exchanged e-mails regarding Brown's availability for deposition. Doc. Ent. 215-10; Doc. Ent. 224-6.

On December 17, 2007, a subpoena for attendance at a deposition (with documents) and document production request was executed to Brown & Kent, and Kim R. Brown for January 25, 2008. Doc. Ent. 215-11 at 2-3.[1] On January 7, 2008, plaintiffs' counsel confirmed that they were also representing Brown & Kent and that the January 25, 2008, deposition date was acceptable. Doc. Ent. 224-6.

On or about January 15, 2008, defense counsel issued a second amended notice of taking deposition of Brown & Kent on January 25, 2008. Doc. Ent. 215-11 at 4; 217-5 at 9. The following items were to be produced:

1.    Any application, commitment, or extension of credit to any above Named Person or Entity, whether alone or with others, since January 1, 2006. As to Farm Depot, LLC, any such documents since October 1, 2002, and as to Farm Depot, Ltd., any such documents since October 1, 2006.

2.    Any valuation of the assets or stock of any of the above Named Persons and Entities, since January 1, 2006. As to Farm Depot, LLC, any such

---

[1]On or about January 3, 2008, defendant prepared a fourth status report in preparation for the January 9, 2008, status conference before Judge Lawson. Doc. Ent. 245-3.

documents since October 1, 2002, and as to Farm Depot, Ltd., any such documents since October 1, 2006.

3.      As to any of the above Named Persons or Entities, any demand deposit account, checking account, certificate of deposit, fiduciary account, and credit card account, with all transactions and activity (or summaries of same) from January 1, 2003, to the present.  (Ref: DRL 9646)[.]

4.      Any tax report or return prepared (whether or not filed) for any of the above Names Persons or Entities.

5.      All work papers, files, documents and papers regarding any of the above Named Persons or Entities, relating to January 1, 1993 to the present.

6.      The following items or issues, relating to income tax reports for the above Named Persons or Entities, years 2000-present:

The last question is accompanied by a fifteen line item chart.  Doc. Ent. 217-5 at 12-13.

Document DRL 009646 is a chart titled "Projection of Lost Earnings of Michael and Mark Laethem With Assumed Future Mitigation."  Doc. Ent. 217-4.[2]  "Named Person or Entity" is defined as Laethem Equipment Company, Laethem Farm Service Company, Michael T. Laethem, Mark E. Laethem, Francis M. Laethem Trust, CANUSA Equipment Company, Farm Depot, Ltd.; and Farm Depot, LLC.  Doc. Ent. 217-5.[3]

On January 21, 2008, plaintiffs' counsel acknowledged that the Brown deposition was cancelled and stated that plaintiffs would file a motion to quash and/or for protective order on the basis of the accountant-client privilege.  Doc. Ent. 224-6.  On January 21, 2008, defense counsel e-mailed plaintiff's counsel seeking specific objections to the subpoena.  Doc. Ent. 215-12.

Plaintiff's counsel's January 31, 2008, letter to defense counsel offers to delay the depositions scheduled for February 1, 2008, in order to permit defense counsel "an opportunity

---

[2]On January 16, 2008, plaintiffs provided third amended responses to No. 6 of defendant's first set of interrogatories ("Describe in detail all damage calculations claimed by Plaintiffs."), in which Thomas J. Schwartzenberger's November 30, 2007, report is referenced.  Doc. Ent. 215-4.

[3]On the same day, defense counsel sought confirmation of the January 29, 2008, deposition of Schwartzenberger.  Doc. Ent. 224-6.

to review any non-privileged documents owned by any of the Plaintiffs." Doc. Ent. 245-5. Still, plaintiffs Mark and Michael Laethem were deposed on February 1, 2008. Doc. Ent. 224-5 (FILED UNDER SEAL), 225-4 (FILED UNDER SEAL), 245-6 (FILED UNDER SEAL), 245-7 (FILED UNDER SEAL). Deposition Exhibit 169 included information labeled "Payments to Brown & Kent" (Doc. Ent. 224-8) (FILED UNDER SEAL); "Changes by Brown & Kent" (Doc. Ent. 224-9) (FILED UNDER SEAL); "'Farm Depot' Commingling with Other Businesses" (Doc. Ent. 224-10) (FILED UNDER SEAL); "'Farm Depot L' Commingling with Other Businesses, (Brown & Kent - BK - Entries)" (Doc. Ent. 224-11) (FILED UNDER SEAL); and "Unexplained Voided/Deleted Transactions" (Doc. Ent. 224-12) (FILED UNDER SEAL). These have been filed with the Court under seal.[4]

## C.    Instant Motions

On January 31, 2008, Deere filed a motion to compel deposition of Kim Brown CPA, and Brown & Kent, or to strike damages claims. Doc. Ent. 215. Defendant asserts that "[a]s evidence for their damage claims, Plaintiffs rely upon Income Tax Returns prepared by Kim Brown CPA and Brown [&] Kent[;]" and "[b]oth Michigan and federal law do not permit the accountant privilege to be used[.]" Defendant also mentions the "[c]rime-fraud exception[;]" and "Plaintiffs' discovery misconduct." Defendant contends that "[e]ither the damage claims must

---

[4]During the April 22, 2008, hearing, defense counsel contended that there were 63 objections to his questions. In an attachment to another motion, defendant claims that there were thirty-six (36) directions not to answer during Mark Laethem's February 1, 2008, deposition and twenty-six (26) directions not to answer during Michael Laethem's February 1, 2008, deposition. *See* Doc. Ent. 223-19 (FILED UNDER SEAL). Plaintiffs' counsel contended that the objections were raised, because the scope of the deposition went beyond that set forth in Judge Lawson's order.

be stricken, or the deposition and production of the tax return preparers must go forward as noticed. A proposed Order has been submitted. Costs should be assessed." Doc. Ent. 215 at 7.

On the same day, third party Brown & Kent, filed a motion for order quashing the December 17, 2007, subpoena and/or granting protective order. Doc. Ent. 217. Pursuant to Fed. R. Civ. P. 45(c)(2)(B)(iii), Brown & Kent "seeks to limit Mr. Kim Brown's testimony and its production of documents to matters that do not infringe upon the Accountant-Client Privilege." Doc .Ent. 217 at 9.

On February 1, 2008, Judge Lawson referred these motions to me for hearing and determination. Doc. Ent. 218. On February 6, 2008, a hearing on these motions was noticed for February 28, 2008. Doc. Ent. 220.

On February 19, 2008, Deere filed a response. Doc. Ent. 224. It asserts the following:

A.   Refer to the Deere Motion to Compel.
B.   The "M&M disks" and "missing" Jeff Moore disk issues should be decided first.
***C.   The cases cited by plaintiffs are inapplicable and stale.***
***D.   The tax returns are relevant, but untested.***
***E.   There is ample independent evidence that the tax returns are wrong.***
***F.   Deere's quest for the truth; plaintiffs' "cover-up."***
G.   Plaintiffs always hold the key.
H.   Plaintiffs' co-representation with Brown & Kent is an impermissible obstruction of evidence.[5]
I.   Plaintiffs' privilege log is defective, and keeps changing; admittedly non-privileged material improperly withheld.

---

[5]Within this argument, Deere relies upon *United States v. Blaszak*, 349 F.3d 881 (6th Cir. 2003); *Ex parte Savin*, 131 U.S. 267, 275 (1889); *In re Disciplinary Proceedings Against Bonet*, 144 Wash.2d 502, 514, 29 P.3d 1242, 1248 (2001); and *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991). This order does not address defendant's co-representation/obstruction of evidence argument.

J.      Pattern of misconduct - previously undisclosed conflict and dual representation of expert witness.[6]

K.      Deposition exhibit 169: further proofs of Brown & Kent relevance.

Doc. Ent. 224 (emphasis added).

On the same day, Brown & Kent, filed a response in which it states that "Deere has previously received all Plaintiffs' tax returns, financial statements, and other business documents from Plaintiffs in their responses to Deere's discovery requests. Deere also has in its possession every document relied upon by Plaintiffs' damage expert, Mr. Tom Schwartzenberger." Doc. Ent. 225 at 3. Brown & Kent argues that "[p]laintiffs and Brown & Kent have not waived the accountant-client privilege in this matter[,]" and "[t]he crime-fraud exception is inapplicable in this matter." Doc. Ent. 225 at 3-10.[7]

On February 27, 2008, a hearing on these motions was noticed for March 5, 2008. Doc. Ent. 239. On February 28, 2008, Brown & Kent, filed a reply in which it cites Fed. R. Civ. P. 26(b)(5)(B).[8] Doc. Ent. 245. It notes that Deere's response "quotes from Plaintiffs' documents

---

[6]Within this argument, Deere refers to a February 12, 2008, letter from attorney Herschel P. Fink of Honigman Miller Schwartz and Cohn LLP to defense counsel [Doc. Ent. 224-14]. Deere also refers to AICPA Ethics Standards regarding Conflict Disclosure; plaintiffs' April 17, 2006, response (Doc. Ent. 69) to Deere's March 30, 2006, motion to strike Schwartzenberger's testimony (Doc. Ent. 56); and Schwartzenberger's April 17, 2006, declaration [Doc. Ent. 224-15]. See Doc. Ent. 224 at 13-15.

[7]Attached to the response is an amended privilege log for Kim Brown documents, dated February 19, 2008. It is ninety-five (95) pages in length. Doc. Ent. 225-3 (FILED UNDER SEAL).

[8]Fed. R. Civ. P. 26(b)(5)(B) provides: "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

that it knows are protected by attorney-client privilege, which Plaintiffs inadvertently produced during a recent document inspection[,]" and suggests that Deere should be sanctioned and its motion denied.  Doc. Ent. 245 at 2.[9]  Brown & Kent contends that "Deere has all of the tax returns and documents relied upon by Plaintiffs' expert, Thomas Schwartzenberger, that he used to make his opinions concerning damages in this case."  Doc. Ent. 245 at 4.  Brown & Kent concludes that "Deere possesses all of the financial information relied upon by Plaintiffs' Expert, and also had ample opportunity to test the accuracy of that information."  Doc. Ent. 245 at 5-6.  In its opinion, "[n]ow that discovery has run its course, Deere makes specious arguments, the bases of which come[] from privileged information, which it blatantly takes out of context."  Doc. Ent. 245 at 6.

On March 1, 2008, Deere filed a reply.  Doc. Ent. 253.  To begin, Deere seeks "[c]onsolidated consideration of all pending discovery motions."  Next, Deere argues that "[p]laintiffs' brief . . . in regard to their own motion to quash regarding the CPA records . . . is filled with untrue allegations."  In support of this argument, Deere states:

A.   The "take no prisoners" charge against Deere is false; Deere has been victimized by Plaintiffs' intentionally hiding evidence.
B.   The earlier award of sanctions against Deere should be reconsidered and reversed.
C.   Plaintiffs admit the tax returns are wrong.
D.   No materials were "surreptitiously" obtained by Deere.
E.   The documents in dispute are not "privileged on their face," and are not privileged at all.

Furthermore, Deere argues that "[a]ll earlier discovery in this case has been a waste of time.  It must be done over.  Also, it argues that "[p]laintiffs may not restrict the examination of relevant

---

[9]To the extent Brown & Kent's suggestion that sanctions be imposed is based upon Fed. R. Civ. P. 11 (Doc. 245 at 2), it is denied.  *See* Fed. R. Civ. P. 11(c)(2).

materials only to the 'filed' tax returns." Finally, it asserts that "[t]he crime fraud exception does apply."[10]

On March 4, 2008, the Court cancelled the March 5th hearing. On March 11, 2008, a status conference was noticed for March 25, 2008. Doc. Ent. 259. On March 14, 2008, my courtroom deputy docketed an amended notice regarding the March 25, 2008, status conference. Doc. Ent. 261. On March 25, 2008, the Court conducted a telephonic status conference with counsel, during which I agreed to set the above-described motions for hearing. On March 31, 2008, a hearing on these motions was noticed for April 22, 2008. Doc. Ent. 270.[11]

On April 22, 2008, the date set for hearing, attorneys John W. Allen and Eric J. Guerin appeared for the defendant. Plaintiff Mark Laethem, plaintiffs'/Brown & Kent's attorney Francis J. O'Donnell, and Kathy LaForge also appeared.[12] In addition to the cases relied upon in

---

[10]On February 29, 2008, John W. Allen filed his second declaration regarding withheld and "missing" evidence and in response to professional responsibility allegations. Doc. Ent. 252. It appears that this declaration was filed in relation to defendant's February 14, 2008, emergency motion to secure withheld and "missing" evidence, suspend CMO, and other relief. Doc. Ent. 223.

[11]On April 16, 2008, plaintiffs and others filed objections to defendant's subpoenas served on April 3, 2008, and third parties Brown & Kent, and Kim Brown filed objections to defendant's subpoenas served on April 4, 2008. Doc. Ent. 270 and 280. On April 17, 2008, the Clerk of the Court struck these items as discovery. Doc. Ent. 280.

[12]During oral argument, defense counsel requested that the Court consider the declaration of John W. Allen filed on February 29, 2008 (Doc. Ent. 252); the declaration of John W. Allen filed on March 24, 2008 (Doc. Ent. 266); the declaration of Deere Expert Witness Richard Reahm filed on April 9, 2008 (Doc. Ent. 275); and the declaration of Finley filed on April 18, 2008 (Doc. Ent. 282) in deciding this motion.

Each of the instant motions was filed on January 31, 2008. Responses were filed on February 19, 2008. The replies were filed on February 28, 2008, and March 1, 2008. Pursuant to E. D. Mich. LR 7.1(d)(2)(B), "[a] response to a nondispositive motion must be filed within 14 days after service of the motion." Also, pursuant to E. D. Mich. LR 7.1(d)(2)(C), "If filed, a reply brief supporting a nondispositive motion must be filed within 7 days after service of the response, but not less than 3 days before oral argument." Therefore, with the exception of John W. Allen's declaration filed on February 29, 2008, the referenced declarations were filed well outside of the

its brief, defense counsel cited *United States v. St. Pierre*, 132 F.2d 837 (2d Cir. 1942) (Hand, J.), wherein the Court stated: "It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. . . . The result of using this, like any other privilege, is to deprive people of evidence which would be otherwise available; at best a disastrous necessity, for disputes ought to be settled so far as they can be by resort to the whole truth; and when the only excuse for darkness ceases, it is shocking to shut out the light." *St. Pierre*, 132 F.2d at 840.

**D.    Fed. R. Civ. P. 45 ("Subpoena")**

Fed. R. Civ. P. 45, which governs subpoenas, provides in part that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]"  Fed. R. Civ. P. 45(c)(3)(a)(iii).  It further provides that "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:  (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Fed. R. Civ. P. 45(d)(2)(a)(ii).

**E.    Analysis**

**1.    The "gap" documents shall be produced subject to an appropriately drafted protective order.**

_____

briefing period set forth in E. D. Mich. LR 7.1(D)(2).

As a matter of housekeeping, there is the issue of the "gap" documents to which plaintiffs are not asserting privilege but over which they seek a protective order. Specifically, defendant claims that the January 31, 2008, privilege log contains gaps of 2,985 pages (or 45% of 6,490 pages). Doc. Ent. 217-6 (FILED UNDER SEAL). On Friday, February 15, 2008, defense counsel e-mailed plaintiffs' counsel, in part regarding missing BK documents and Gaps. Doc. Ent. 224-7; Doc. Ent. 224-16. On Saturday, February 16, 2008, plaintiffs' counsel represented that an amended privilege log for Brown & Kent documents would be filed and noting that "although some documents may not be privileged, they are nevertheless confidential, and will not be produced until [defense counsel] concur[s] to a protective order." Doc. Ent. 224-16. On Sunday, February 17, 2008, defense counsel objected "to this discovery misconduct." Doc. Ent. 224-16. Defendant claims that the February 19, 2008, privilege log added six (6) numbers, resulting in 6,496 pages (or a gap of 2,979 pages) and is without ESI (electronically stored information)[13] or metadata. Doc. Ent. 225-3 (FILED UNDER SEAL).

Brown & Kent seeks an individual protective order governing the production of these nearly 3,000 pages of documents. Specifically, Brown & Kent seeks a protective order regarding the non-privileged documents which is applicable to Deere and which contains a damage provision for misuse. It is defendant's position that such production may be made subject to the third amended protective order.[14] As stated during the hearing, I am not inclined to

---

[13]*See* Doc. Ent. 280 at 2 ¶ 3.

[14]The original protective order in this case was entered on August 2, 2005. Doc. Ent. 6. The First Amended Protective Order (FAPO) was filed on April 21, 2006. Doc. Ent. 71. At the June 14, 2006, hearing, defense counsel mentioned a Second Amended Protective Order (SAPO) entered into between plaintiffs and the Brown Kegler law firm. Doc. Ent. 112-2 at 33-35.
On October 11, 2007, I signed a stipulated order for the withdrawal of plaintiffs' motion to compel documents improperly designated "CCO". Doc. Ent. 175. Exhibit A to that order is a

include a damage provision in such a protective order.  That being said, if the parties are unable to agree upon the terms of a protective order, Brown & Kent's counsel shall submit the terms of a proposed order to the Court.[15]  Defendant will then have an opportunity to object to the proposed terms before I enter a further protective order.[16]

2.      **It appears that the only remaining issues are the scope of Kim Brown's deposition and responses to Request Nos. 4-6 regarding seven (7) named persons/entities.**

Another housekeeping matter concerns questions to which Brown & Kent claims it does not have responsive documents.  First, Brown & Kent notes that it "has not represented or prepared documents for "Named Person or Entity" No. 5, the Francis M. Laethem Trust." Therefore, it "does not have any documents responsive to the Deere Requests in its possession or control."  Second, it claims that, with respect to Request Nos. 1, 2 & 3, it "does not have any documents in its possession or control that are responsive[,]" explaining that "Brown & Kent has only provided tax return preparation for Plaintiffs and the Laethem Entities."  Doc. Ent. 217 at 8. If these representations are accurate, they should be made by way of a declaration in response to this order.

Accordingly, it appears that the document requests which need to be addressed by the Court are responses to Request Nos. 4, 5 and 6 as to named persons or entities Laethem Equipment Company, Laethem Farm Service Company, Michael T. Laethem, Mark E. Laethem,

---

stipulated third amended protective order.

[15]Brown & Kent's counsel submitted a proposed protective order to the Court via electronic mail on April 25, 2008.

[16]The Court assumes that production made pursuant to this protective order will include Brown & Kent's production of "documents . . . responsible to Deere's Request No. 6, items 1, 2 and 11."  Doc. Ent. 217 at 9 n.2.

CANUSA Equipment Company, Farm Depot, Ltd.; and Farm Depot, LLC. Doc. Ent. 217-5.[17]

This is consistent with Brown & Kent's statement that "[i]t is really only communications between Plaintiffs and Brown & Kent, unfiled and unsigned drafts of income tax returns, and the documentation and/or notes underlying those income tax returns actually filed that is the subject of the dispute between the parties." Doc. Ent. 225 at 3.

With respect to the designation of a Rule 30(b)(6) witness, Brown & Kent has designated Kim Brown, but it "has objected to Deere and given notice that it will not allow Mr. Kim Brown to testify about any matters that would require disclosure of information protected by MCL 339.723[.]" With respect to Request No. 4, Brown & Kent claims that it "will produce tax returns which LEC, LFSC, Michael T. Laethem, Mark E. Laethem, CANUSA, Farm Depot, Ltd., and Farm Depot, LLC have filed with the Internal Revenue Service ("IRS") and the State of Michigan ("SOM")," subject to a protective order. However, Brown & Kent, objects "to producing tax returns that have not been filed with the IRS or the SOM based on Accountant-Client Privilege." Doc. Ent. 217 at 8. Furthermore, it "objects to producing documents pursuant to Deere Requests No[s]. 5 and 6 based on Accountant-Client Privilege." Doc. Ent. 217 at 8-9.[18]

**3.      Request Nos. 4-6 seek information relevant to plaintiffs' damages claims.**

**a.**      As an initial matter, I consider whether defendant has requested relevant information.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

---

[17]As previously noted, Brown & Kent "will produce documents, subject to a protective order, responsible to Deere's Request No. 6, items 1, 2 and 11." Doc. Ent. 217 at 9 n.2.

[18]As previously noted, plaintiffs' January 31, 2008, privilege log has been filed under seal. It is seventy-seven (77) pages in length. Doc. Ent. 217-6, Doc. Ent. 222 (FILED UNDER SEAL). In a January 31, 2008, affidavit, CPA Kim R. Brown states that he has "not been authorized by any of [his] clients . . . to give testimony or produce documents that are protected by the accountant-client privilege[.]" Doc. Ent. 217-7 ¶ 6.

claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).[19]

Looking to the complaint, plaintiffs' claim of tortious interference with business relationships (Count III) alleges "LEC and LFSC have been damaged as a result of Deere's tortious interference[,]" Doc. Ent. 1 at 9 ¶ 52; and plaintiffs' claim of violation of Michigan's Franchise Investment Law (Count VII) alleges "LEC and LFSC have suffered damages as a result of Deere's wrongful termination[,]" Doc. Ent. 1 at 12 ¶ 74. Other claims as to LEC and LFSC (Counts I, II & V) allege substantial harm. *See* Doc. Ent. 1 at 7 ¶¶ 38 & 43, 10 ¶ 62. Furthermore, the counts of tortious interference with business relationships (Count IV) and aiding and abetting violation of fiduciary duty (Count VI), brought at least in part on behalf of Mark and Michael Laethem, allege substantial harm and damages as a result of Deere's actions. Each of these claims seeks entry of judgment in excess of $75,000. Doc. Ent. 1 at 9 ¶ 57, 11 ¶ 67.

**Request No. 4** seeks "[a]ny tax report or return prepared (whether or not filed) for any of the above Named Persons or Entities." Doc. Ent. 217-5 at 12. Brown & Kent claims that the

---

[19]"Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship." *Moses v. Providence Hosp. and Medical Centers, Inc.*, No. 04-CV-74889-DT, 2007 WL 1806376, 2 (E.D. Mich. June 22, 2007) (citing *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644 (D.Colo., 2004); *Everitt v. Brezzel*, 750 F.Supp. 1063, 1065 (D.Colo.1990)).

filed tax returns "are the only documents that bear directly on the issue of damages, as these filed tax returns and other business documents already in the possession of Deere (by way of Plaintiffs' discovery responses) are the only documents that Plaintiffs' Expert, Mr. Schwartzenberger, used in formulating his opinions." In support of this statement, Brown & Kent cites *United States v. Windfelder*, 790 F.2d 576, 581-582 (7th Cir. 1986), wherein the Court stated, "the IRS experts' conclusions were based on their evaluation of evidence (the tax returns and related financial documents) that was within the area of their special expertise." Doc. Ent. 225 at 6. Defendant argues that "[p]laintiffs may not restrict the examination of relevant materials only to the 'filed' tax returns." In support of this argument, defendant refers to the "Relevancy Analysis" attached to his February 29, 2008, declaration (Doc. Ent. 252). Doc. Ent. 253 at 5-6.

**Request No. 5** seeks "[a]ll work papers, files, documents and papers regarding any of the above Named Persons or Entities, relating to January 1, 1993 to the present." **Request No. 6** seeks "[t]he following items or issues, relating to income tax reports for the above Named Persons or Entities, years 2000-present[,]" and is followed by a fifteen line item chart. Doc. Ent. 217-5 at 12-13. In response to defendant's motion, Brown & Kent claims that "[t]o the extent Deere alleges that Plaintiffs' expert should have considered such information, such an allegation goes to the expert's credibility, but not its reliability." Doc. Ent. 225 at 6 (citing *Groobert v. President and Directors of Georgetown College*, 219 F.Supp.2d 1, 13 (D.D.C. 2002) ("Dr. Lurito's choice not to weigh Mrs. Groobert's tax returns, containing a record of her past income, goes to the credibility of the expert rather than his reliability.")). Deere cites Deposition Exhibit

164 (FILED UNDER SEAL as 214-4) to Schwartzenberger's January 29, 2008, deposition (Doc. Ent. 224 at 4), claiming that "[p]laintiffs admit the tax returns are 'wrong.'" Doc. Ent. 253 at 3.

**b.**     Most lawsuits seeks damages.  However, the relevance of the accounting information to this case comes into view through the reports and testimony of Thomas J. Schwartzenberger, plaintiffs' damages expert.  As defendant claims, "[p]laintiffs rely heavily on their Business' Tax Returns for their damages claims[.]" Doc. Ent. 215 at 3.  On December 1, 2005, Schwartzenberger provided an expert report in the instant matter regarding "the economic losses related to the allegations stated against [Deere][.]"  Doc. Ent. 179-7.  The document index for this report includes various tax returns.  Doc. Ent. 179-7 at 55-57.  Schwartzenberger provided another expert report dated February 6, 2006, to reply to the January 6, 2006, report by James G. Finley, Deere's accounting expert.  This document mentions tax returns.  Doc. Ent. 179-8; Doc. Ent. 282.  On March 24, 2006, Schwartzenberger was deposed in this case.  Doc. Ent. 56-6.  On November 30, 2007, Schwartzenberger submitted another expert report, which updated and superceded his December 1, 2005, report.  Doc. Ent. 185-3.  On the same day, Schwartzenberger issued a revised report.  Doc. Ent. 215-5; 224-13 (FILED UNDER SEAL).  The document index for this report includes tax returns.  Doc. Ent. 215-5 at 46-48.

**c.**     Furthermore, several items present in this particular case bring the accuracy of the tax returns into issue.  Looking to defendant's response, defendant argues that "[t]he tax returns are relevant, but untested."  Doc. Ent. 224 at 3-4.  The accuracy of the tax returns came into question during the January 29, 2008, Schwartzenberger Rule 30(b)(6) deposition.  Doc. Ent. 215-6; Doc. Ent. 245-4 (FILED UNDER SEAL).  During this deposition, Schwartzenberger testified that he did not conduct tests on the information within the income tax returns and that he would not

have had the tax return preparation work papers to look at. He believed the tax preparer (Brown or his firm) would have the work papers used to prepare the tax returns. Doc. Ent. 215-6 at 8. Also, during the deposition, defense counsel apparently referred to Exhibit 59 (DRL 196),[20] entitled: "Honor thy father and mother." Doc. Ent. 216-3 at 11 (p. 132); Doc. Ent. 215-6 at 27 (p. 134). It stated in part, "Mark, Mike, Kathy and Mom could go to jail." Doc. Ent. 215-6 at 26. *See also* Doc. Ent. 216-3 at 11 (p. 132), 13 (p. 134).

Also, the accuracy of the tax returns is questioned by defendant's contention that "plaintiffs' Business are a controlled group of corporations composed of Laethem Land Company LLC, Laethem Equipment Company, Laethem Farm Service Company, Canusa Equipment Company, and Farm Depot LLC[,]"[21] and the recently formed Farm Depot Ltd. Doc. Ent. 215 at 3-4. Citing a chart it labels, "Circle of Money," LEC-DE 04045, defendant claims the operations of these companies are "inextricably tied together." Doc. Ent. 215 at 4; Doc. Ent. 215-8. Also, an August 20, 2001, memorandum notes that "[w]e have independent accounting records, but the businesses are not operated independently." Doc. Ent. 215-13 at 6. Defendant also notes that Weed agreed, "the records provided to [him] by LEC and LFSC were not adequate for Plante and Moran to be willing to prepare those income tax returns for those companies[.]" Doc. Ent. 215-14; Doc. Ent. 224-4.

---

[20]DRL 0000196 was the subject of defendant's January 25, 2006, (second) request for production of documents No. 54. Doc. Ent. 216-6 at 2; Doc. Ent. 53-3 at 5. A copy of this page was provided to the Court at the April 22, 2008, hearing and appears to be Exhibit 59 to the April 21, 2006, deposition of Mark Laethem. *See* 223-19 ("Privilege Assertions and Directions Not to Answer" chart FILED UNDER SEAL).

[21]In support of this statement, Deere cites Farm Depot's SBT Tax Return. Doc. Ent. 215-7 (FILED UNDER SEAL).

Furthermore, defendant argues that "[t]here is ample independent evidence that the tax returns are wrong." Doc. Ent. 224 at 4-6. Within this argument, defendant refers to Deposition Exhibit 164 (FILED UNDER SEAL as 214-4) to Schwartzenberger's January 29, 2008, deposition. Doc. Ent. 224 at 4. This exhibit is allegedly comprised of ESI in printed format. Doc. Ent. 214 at 3. According to defendant, the information contained in this exhibit "raises serious and material questions about the reliability of the income tax, and the Brown & Kent information is essential to that inquiry." Doc. Ent. 224 at 4.[22]

Deere also refers to electronic mail between Joseph A. Laethem and Mike Laethem. Deere claims that "[t]he reliability of information in the tax returns is also raised by" electronic mail exchanges between Joseph A. Laethem and Mike Laethem. Doc. Ent. 224 at 4-5. For example, in a December 10, 2001, electronic mail to Joe, Mike stated, "In order to avoid the losses incurred by not having a JD contract, we had to say that Mark and Mike owned the LEC stock." On December 15, 2001, Mike electronically mailed Joe a letter that stated in part, "In order to preserve the business, and because we agreed that Mark and I were going to buy the business based on the formula, we made the decision to tell the IRS, Deere and everyone else

---

[22]Brown & Kent claims that "Deere surreptitiously obtained these documents from Plaintiffs during an agreed upon [January 18, 2008] document inspection." Brown & Kent argues that "[t]hese documents (referred to in Defendant's Response, Doc. No. 224, on p. 4) are privileged, as they contain communications from Plaintiffs seeking advice rom Attorney Couzens about his knowledge of tax, trust, and probate law, along with his expertise in drafting proposed settlement papers to resolve a family dispute concerning the purchase of LEC and LFSC." According to Brown & Kent, "on January 31, 2008, Plaintiffs demanded return of the information in Exhibit 164 and advised Defense Counsel of his ethical obligations with respect to privileged or confidential documents inadvertently disclosed." Doc .Ent. 245 at 3. The aforementioned January 31, 2008, letter from plaintiffs' counsel to defense counsel states, "[u]nless all copies of the hard drives you obtained illegally are returned to us by Monday, February 4, 2008, we will have no choice but to pursue appropriate legal action." Doc. Ent. 245-5 at 1-2.

that Mark and I owned LEC." In a March 24, 2002, electronic mail to Joe, Mike stated, "[t]his proposal best reduces tax and criminal liabilities to all concerned and has the bet chance of keeping the IRS out of the loop." In a June 11, 2002, electronic mail to Joe, Mike stated, "Mom said I lied when I repeatedly told, filled out papers[,] filed tax forms and did all legal work saying th[at] Mark and I owned LEC." In a July 31, 2002, electronic mail to Joe, Mike stated, "Mike Allen knows and understands the tremendous legal problem potential we have if we do not get this settled." In an August 14, 2002, electronic mail to Joe, Mike stated, "no one would be fined, penalized or jailed for any tax or other offense." Doc. Ent. 224-3.

Additionally, Deere refers to the testimony of Tim Weed of Plante Moran. Doc. Ent. 224 at 5-6. On January 22, 2008, Tim Weed of Plante Moran was deposed. He agreed that "the records provided to [him] by LEC and LFSC were not adequate for Plante and Moran to be willing to prepare those income tax returns for those companies[.]" Doc. Ent. 215-14 at 5. He also testified that, as directed in a 2004 "Order Dismissing Case With Prejudice and Without Cost to Any Party," Plante and Moran (the court appointed receiver) released "all the records, equipment documents, materials of the Laethem businesses[.]" Doc. Ent. 224-4 (pp.33-34).

**d.**     Considering the above-illustrated potential for inaccuracy in the tax returns, I find persuasive defendant's following statement:

> Plaintiffs put forth a remarkable proposition: that they may provide false materials
> to a CPA for the purpose of preparing fraudulent tax returns. They may then
> provide those tax returns, as completed by the CPA, to an expert witness in
> federal court litigation, who (with no testing or verification) uses the tax returns
> to present damages evidence to a federal court and jury. All the while, the
> opposing party (Deere) is not able to discover or test the false materials which
> were used to create the fraudulent returns in the first place. That cannot be right.

Doc. Ent. 253 at 6.

I disagree with Brown & Kent's argument that "[t]here is simply no need for the revelation of the privileged notes and information exchanged between Plaintiffs and Brown & Kent that underlie the stated values on the filed tax returns." Doc. Ent. 225 at 6. Without rendering an opinion as to defendant's accusation that the materials provided to the accountant were "false", I am persuaded that if plaintiffs' damages claim(s) is(are) based upon the tax returns, then Deere should be able to test their veracity - especially where there is evidence that the nature of the accounting practices for the businesses at issue is questionable. Therefore, to the extent plaintiffs' claims are supported by tax returns, tax returns are relevant to the damages claim and defendant is entitled to test their veracity by examining the underlying financial data. In other words, defendant is entitled to explore the accuracy of the documents on which plaintiffs are basing their claim for damages. Therefore, I conclude that the information sought by Request Nos. 4-6 is relevant to plaintiffs' damages claims.

**4.      Plaintiffs have waived the accountant-client privilege.**

**a.**      Having concluded that defendant has requested relevant information, I must now consider the issue of privilege. As at least one Court has recognized, "the mere relevance of the information is not sufficient grounds to override [the accountant-client] privilege." *Choice Restaurant Acquisition Ltd. v. Whitley, Inc.*, 816 So.2d 1165, 1168 (Fla.App. 4 Dist. 2002). *See also Coates v. Akerman, Senterfitt & Eidson*, P.A., 940 So.2d 504, 509 (Fla.App. 2 Dist. 2006).

Public accounting in Michigan is governed by Mich. Comp. Laws §§ 339.720-339.736. With regard to "Confidentiality of information; disclosure," Section 339.732 provides, "[e]xcept by written permission of the client or the heir, successor, or personal representative of the client to whom the information pertains, a licensee, or a person employed by a licensee, shall not

disclose or divulge and shall not be required to disclose or divulge information relative to and in connection with an examination or audit of, or report on, books, records, or accounts that the licensee or a person employed by the licensee was employed to make.  Except as otherwise provided in this section, *the information derived from or as the result of professional service rendered by a certified public accountant is confidential and privileged*."  Mich. Comp. Laws § 339.732(1) (emphasis added).[23]  "'Because this accountant-client privilege is in derogation of the common law, it is strictly construed, and the scope of the privilege is subject to a number of limitations and restrictions.'" *Riley v. Ameritech Corp., Inc.*, 147 F.Supp.2d 762 (E.D. Mich. 2001) (Roberts, J.) (quoting *People v. Simon*, 174 Mich.App. 649, 658, 436 N.W.2d 695 (1989)(referring to M.C.L. § 339.713, which was superseded by § 339.732 )).

There is not a wealth of state court cases interpreting Mich. Comp. Laws § 339.732, which became effective on May 16, 1997.[24]  The only Michigan case to specifically cite Mich. Comp. Laws § 339.732 is *In re Estate of Martin*, No. 204854, 1998 WL 1988880 (Mich. App. Nov. 17, 1998).  It concludes that the probate court did not obtain a waiver of privilege from the appropriate person.  *In re Estate of Martin*, 1998 WL 1988880 at *3.  Therefore, it offers little assistance on what is required to waive the privilege set forth in Section 339.732.  However, I glean direction from a case which interprets its predecessor, Section 339.713.  Although made in

---

[23]"[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."  Fed. R. Evid. 501.  *See also Peterson v. Chesapeake & Ohio Ry. Co.*, 112 F.R.D. 360, 362 (W.D. Mich. 1986) ("with respect to an element of a claim or a defense as to which state law supplies the rule of decision, privileges are determined in accordance with State law.") (citing Fed. R. Evid. 501).

[24]Mich. Comp. Laws § 339.713 was repealed effective May 16, 1997.  P. A. 1997, No. 10, § 1.

the context of the application of the crime-fraud exception, the Court of Appeals has stated, "the purpose behind the accountant-client privilege must cease to operate when the advice sought by the client refers to ongoing or future wrongdoing." *People v. Paasche*, 207 Mich.App. 698, 706; 525 N.W.2d 914, 918 (1994).

Furthermore, I glean direction from the Supreme Court of Michigan's decision in *Howe v. Detroit Free Press, Inc.*, 440 Mich. 203, 487 N.W.2d 374 (1992). There, in the context of a defamation lawsuit where waiver of the privilege provided by Mich. Comp. Laws § 791.229 was at issue, the Supreme Court of Michigan noted that "there is authority for the proposition that a privilege can be waived through conduct that would make it unfair for the holder to insist on the privilege thereafter." *Howe*, 440 Mich. at 214, 487 N.W.2d at 379. *See also Betts v. Fletcher*, No. 266613, 2006 WL 1751823, *3 (Mich. App. June 27, 2006) (citing *Howe*). In *Howe*, "the party asserting the statutory privilege [wa]s one of the plaintiffs in this civil suit." *Howe*, 440 Mich. at 217; 487 N.W.2d at 380. Although it concerned Mich. Comp. Laws § 791.229, the Supreme Court of Michigan stated that "[b]y commencing this defamation action, Virgil Howe ha[d] put the contents of the probation report at issue." *Id.* at 217-218, 487 N.W.2d at 380. Furthermore, the court recognized that "[t]he federal courts have utilized three approaches in ruling on testimonial or evidentiary privileges asserted by plaintiffs in civil litigation[:]

> The "automatic waiver" rule requires that a plaintiff seeking relief waive whatever privilege he possesses. A second theory finds that a privilege will be waived if (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. The third theory balances the need for discovery against the need for protecting secrecy.

*Howe*, 440 Mich. at 218; 487 N.W.2d at 380-381.

**b.**     In support of its argument that "Michigan and federal law do not permit the accountant privilege to be used[,]" Doc. Ent. 215 at 4, Deere relies upon *Detroit Coke Corp. v. NKK Chemical USA, Inc.*, No. 92-MISC.CV-81E, 1993 WL 367060 (W.D.N.Y. Sept. 13, 1993), wherein the court granted a defendant's motion for an order directing plaintiff's accountant to comply with a subpoena.[25]  With respect to plaintiff's accountants' argument that the documents requested fell within the accountant-client privilege, the court stated:

> Detroit-the beneficiary of the instant privilege-has placed its financial, environmental and operation information in issue by commencing this suit in which it claims that the defendants' alleged breach had caused its financial, environmental and operational damages, which in turn had caused the cessation of its business. *The accountant-client privilege is designed to encourage full divulgence to the accountant; it should not be used offensively to prevent a sued party's access to relevant and potentially vital information in challenging claims made against such party by the accountant's client.*

*Detroit Coke Corp.*, 1993 WL 367060 at *2 (emphasis added).[26]

In its motion, Brown & Kent, primarily relies upon two cases.  *Berdon v. McDuff*, 15 F.R.D. 29 (E.D. Mich. 1953) "stem[med] from an agreement between plaintiffs and defendant McDuff for the purchase by plaintiffs of the majority of issued and outstanding common stock of Grinnell Brothers, Inc., at $65 a share."  *Berdon*, 15 F.R.D. at 30.  Plaintiffs' motions for

---

[25]The court considered that "New York does not recognize an accountant-client privilege. Pennsylvania and Michigan do- see 63 P.S. § 9.11a and M.C.L.A. 339.713[.]" *Detroit Coke Corp.*, 1993 WL 367060 at *2.

[26]In its response, Brown & Kent cites *Continental Motors Corp. v. Muskegon Township*, 365 Mich. 191, 194; 112 N.W.2d 429, 431 (1961) ("when a federal court, even the Supreme Court, construes a state statute, the courts of that state are not bound to follow the federal Court's construction.") (citing cases), and argues that "it is extremely doubtful that an unpublished opinion from a District Court in New York would carry any weight with a Michigan court in the proper interpretation of Michigan statutory privilege."  Doc. Ent. 225 at 4.

production of documents and to compel answers to questions on depositions were denied.

*Berdon*, 15 F.R.D. at 32.  Therein, Judge Koscinski stated:

> The documents and information which are the subject-matter of the two motions before the court fall within the category of the privileged matter protected by the state statute [§ 338.523].  It is confidential information under such statute, as between the accountants employed by the Grinnell Brothers, Inc., and that Company, represented by [defendant] as one of its officers.  Cases cited by plaintiffs in which the courts admitted evidence in federal courts, which would otherwise be deemed inadmissible under the state privilege statutes, involved circumstances in which it would have been unconscionable to recognize the privilege.  No such circumstances are disclosed by the pleadings now on file in this case.

*Berdon*, 15 F.R.D. at 32.

*Armco, Inc. v. Burns & McDonnell, Inc.*, 809 F.Supp. 43 (S.D. Ohio 1992), the "litigation ar[ose] out of the sale by Armco, Inc. ('Armco') of one of its subsidiaries, Burns & McDonnell, Inc. ('Burns & McDonnell') via an Employee Stock Ownership Plan ('ESOP')."  *Armco, Inc.*, 809 F.Supp. at 44.  The court denied plaintiff's motion to bar testimony and strike evidence. *Armco, Inc.*, 809 F.Supp. at 46. The court concluded that the accounting firm partner's "testimony may not be based upon any privileged materials. Any testimony by [him] based upon evidence which [plaintiff] could not obtain in discovery because of the Missouri accountant-client privilege will immediately be stricken from the record."  *Armco, Inc.*, 809 F.Supp. at 45.

**c.**     In reliance upon *Berdon* and *Armco*, Brown & Kent contends, "it is clear that [Mich. Comp. Laws §] 339.732 precludes Brown & Kent from producing tax returns that were not filed, as requested by Deere Request No. 4.  It also precludes Brown & Kent from producing the information sought by Deere Requests No. 5 and No. 6 (excepting items 1, 2 and 11 of Deere Request No. 6[]).  Brown & Kent's witness designated pursuant to Fed.R.Civ.P. 30(b)(6), Mr.

Kim Brown, is similarly precluded from giving any testimony about privileged matters." Doc. Ent. 217 at 11-12.[27] Brown & Kent claims that, as was the case in *Berdon* and *Armco*, "[p]laintiffs and the Laethem Entities have not authorized [Kim Brown] to waive Michigan's accountant-client privilege, and release documents or give testimony protected by MCL 339.732." Doc. Ent. 217 at 12.

Specifically, Brown & Kent argues that "Deere Request No. 4, seeking production of unsigned tax returns, is similar to the request made in [*Berdon*] for the preliminary audit report in the possession of defendants' accountant. The [*Berdon*]Court found the preliminary audit report was protected by privilege, and did not require its production." Brown & Kent further argues that "Deere Request No. 5 is identical to the requests made by the plaintiffs in [*Berdon*] and *Armco* for work papers and other documents, which were similarly held to be protected by privilege." Brown & Kent also argues that "Deere Request No. 6, which seeks production of Mr. Brown's records regarding treatment of various expenses found on Plaintiff and Laethem Entities' tax returns is identical to the requests that the *Armco* Court found to be privileged." Finally, Brown & Kent argues that "Deere has the ability to review the tax returns that Plaintiff will disclose, subject to protective order, with all of the Plaintiffs and Laethem Entities, including the financial statements and tax returns previously produced by them during discovery." Doc. Ent. 217 at 12.

Defendant contends that "[t]he cases cited by plaintiffs are inapplicable and stale." Doc. Ent. 224 at 2-3. Within this argument, Deere relies upon *Howe* and *In re Subpoena To Testify*

---

[27]Brown & Kent states it has "agreed to produce someone to testify as to the foundational facts for preparation and filing of those returns." Doc. Ent. 225 at 6.

*Before Grand Jury*, 787 F.Supp. 722, n.1 (E.D. Mich. 1992) (Gadola, J.) ("In [*Berdon*], the court relied upon Fed. R. Civ. P. 43(a) as it then existed.").

d.      I conclude that plaintiffs have waived their claim to the accountant-client privilege under two of the three theories discussed in *Howe*.  The second theory (implied waiver) directs that "where three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct:

> '(1) Assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
> (2) Through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
> (3) Application of the privilege would have denied the opposing party access to information vital to his defense.'

*Howe*, 440 Mich. at 220; 487 N.W.2d at 381-382 (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E. D. Wash. 1975))

Here, it can be said that plaintiffs, via Brown & Kent, (1) "invoked the privilege in furtherance of [a claim for damages] they asserted for their own benefit[;]" (2) by the assertion of a claim for damages, plaintiffs "placed the protected information at issue," because "the [accounting information] is germane to" their claim for damages - indeed the damages expert relied upon tax return information; and (3) "one result of asserting the privilege [will be] to deprive [defendant] of information necessary to 'defend' against [plaintiffs'] [claim for damages] for the protected information is also germane to [plaintiffs'] burden of proving [damages]." *Howe*, 440 Mich. at 220; 487 N.W.2d at 381-382.  As *Betts* described *Howe*, "the plaintiff started the suit, then attempted to deprive defendants of evidence essential to their defense by asserting his privilege." *Betts*, 2006 WL 1751823 at *3 n.3 (characterizing *Howe*).  *See also*

*Baker v. Oakwood Hosp. Corp.*, 239 Mich. App. 461, 477, 608 N.W.2d 823, 831 (2000) ("In *Howe*, the privilege was deemed waived by the nature of the plaintiff's defamation lawsuit[.]").

Plaintiffs have also waived the accountant-client privilege under the third theory (the balancing theory), which directs, "[f]irst, defendants should demonstrate that the material to be discovered is relevant to their case. . . . Secondly, defendants should demonstrate why it would be unreasonably difficult for them to obtain the information elsewhere or that redundant evidence will be helpful to their case." *Howe*, 440 Mich. at 222, 487 N.W.2d at 382-383 (quoting *Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire*, 838 F.2d 13, 22 (1st Cir. 1988).

Deere has met its "burden of establishing a waiver under the balancing approach[.]" *Howe*, 440 Mich. at 223, 487 N.W.2d at 383. As to the first prong, Section I.E.3 discusses in detail the relevance of the requested information to plaintiffs' claim(s) for damages. As stated in Section II.E.3.c, plaintiffs' damages expert has relied upon tax returns. Therefore, plaintiffs' claims for damages, even if only in part, are based upon the tax returns used by their damages expert. Furthermore, as discussed in Section II.E.3.d, the accuracy of those returns has been called into question. Here, there is little question that plaintiffs have placed the value of LEC and LFSC and financial damage to Mark and Michael Laethem (substantiated at least in part by the tax returns) in issue. I agree that plaintiffs' "'civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.'" *Howe*, 440 Mich. at 225, 487 N.W.2d at 383-384 (quoting *Greater Newburyport Clamshell Alliance*, 838 F.2d at 20).

As to the second prong, I conclude that defendant has demonstrated a need for the requested information. Brown & Kent asserts that "Deere has not satisfied its burden to overcome the presumption of privilege. It does not explain how or why it is entitled to discovery of notes and information that Plaintiffs' expert never viewed or considered in its opinion." Doc. Ent. 225 at 6. Brown & Kent disputes Deere's need for this information to test the accuracy of the tax returns by pointing to Schwartzenberger's testimony that if he "had wanted to test the information in those tax returns," he would probably have contacted Michael. Doc. Ent. 215-6 at 17, Doc. Ent. 225 at 6-7. Brown & Kent further suggests that the underlying bases for plaintiffs' tax returns and for Schwartzenberger's opinions could have been explored during depositions. Doc. Ent. 225 at 7-9. In its reply, Brown & Kent contends that Deere "simply failed to examine Michael about the purported deficiencies associated with Plaintiffs' tax returns." Doc. Ent. 245 at 4.

However, like *Howe*, where defendants "maintain[ed] that information contained in the report [wa]s not only relevant, but essential to their defense[,]" *Howe*, 440 Mich. at 218; 487 N.W.2d at 380, Deere claims that "the Brown & Kent information is essential" to inquire about the reliability of the income tax returns. Doc. Ent. 224 at 4. Ultimately, the *Howe* court concluded, "[a]lthough the statute provides a privilege, . . . under the circumstances presented here, the privilege was waived with respect to portions of the report that are relevant to issues raised in the defamation suit filed by plaintiffs." *Id*. at 206, 487 N.W.2d at 375.

As previously noted, Brown & Kent claims that the filed tax returns "are the only documents that bear directly on the issue of damages, as these filed tax returns and other business documents already in the possession of Deere (by way of Plaintiffs' discovery

responses) are the only documents that Plaintiffs' Expert, Mr. Schwartzenberger, used in formulating his opinions."  Doc. Ent. 225 at 6.  However, defendant illustrated that the accuracy of these tax returns is questionable (by the aforementioned electronic mails from Mike to Joe), and defendant is entitled to explore their veracity.  Also, it would be unreasonably difficult to objectively evaluate plaintiffs' claim(s) for damages by relying upon a document request to plaintiffs or their further deposition.  Additionally, even if the information sought was redundant to documentation which plaintiffs have provided to defendant during discovery, it may be useful for Deere to compare that information with the records of Brown & Kent.  It seems that defendant's "ability to defend by proving that [plaintiffs damages claim is inaccurate] is seriously undermined by plaintiffs' assertion of privilege."  *Howe*, 440 Mich. at 226, 487 N.W.2d at 384.

In the end, without rendering an opinion as to defendant's argument about plaintiffs' intentions, I find persuasive the following argument by Deere:

> Plaintiffs propose a uniquely wrong proposition: that they may furnish fraudulent and incorrect materials to a CPA, to produce fraudulent tax returns (with admissions that they are 'wrong' and 'will incur 'preparer penalties''), then use the fraudulent tax returns to give to an 'expert' witness (who does not test them or verify anything in them).  Plaintiffs then offer that expert witness's opinion to support millions of dollars in damages, with Deere having no opportunity to examine what was, in the first instance, the bases of the fraudulent returns.  This cannot be consistent with the 'eliciting truth, obtaining justice and checking counsel in any effort to obtain an unfair advantage,' which the Plaintiffs, themselves, cite in *Armco*, 809 F.Supp. 43, 45.

Doc. Ent. 224 at 6.

I am mindful of the Supreme Court of Michigan's direction to begin the balancing analysis with a presumption that the assertion of privilege be upheld; to narrowly limit any permitted discovery, "to those portions of the privileged material that bear directly on the issues

at hand[;]" and to observe that "the need to pierce the veil of confidentiality 'does not mean that defendants should receive wholesale access to the confidential records of others.'" *Howe*, 440 Mich. at 223-224; 487 N.W.2d at 383 (citing *Greater Newburyport Clamshell Alliance*, 838 F.2d at 20 and quoting *People v. Rohn*, 98 Mich.App. 593, 600; 296 N.W.2d 315 (1980)[28]). However, the in camera review of the nearly 3,000 pages of Brown & Kent documents, as the Court did with the probation report in *Howe*, is not practical, primarily the parties are in the best position to determine the relevancy of any particular document to the claims for damages or the defense thereof. *Id*. at 227, 487 N.W.2d at 385.

For the foregoing reasons, I conclude that plaintiffs have waived the accountant-client privilege. As to the deposition of Kim Brown, it is worth noting that "[t]estimony concerning the accounting firm's general procedures, identification of the accountant's signature and the firm's stamp does not violate the statutory privilege." *People v. Safiedine*, 163 Mich.App. 25, 31, 414 N.W.2d 143, 146 (1987) (Mich. Comp. Laws § 339.713). However, in light of my conclusion that plaintiffs have waived the accountant-client privilege, defendant may depose Kim Brown consistent with this ruling.[29]

---

[28]*People v. Rohn*, 98 Mich.App. 593 (1980), was overruled on other grounds. *See People v. Perry*, 460 Mich. 55, 64-65; 594 N.W.2d 477 (1999).

[29]In support of its argument that "[t]he crime-fraud exception also prohibits use of the Michigan Account Privilege[,]" Doc. Ent. 215 at 5, defendant cites *People v. Paasche*, 207 Mich.App. 698; 525 N.W.2d 914 (1994), wherein defendant appealed "as of right her conviction of failing to file a Michigan income tax return for 1988 with intent to evade taxes." *Paasche*, 207 Mich.App. at 700, 525 N.W.2d at 915.

Brown & Kent argued that "[t]he crime-fraud exception is inapplicable in this matter." Doc. Ent. 225 at 10. Also, in its reply, Brown & Kent stated that "[b]ecause Deere has not alleged or made a showing that the advice sought by Plaintiffs of Brown & Kent referred to an ongoing or future wrongdoing, the crime-fraud exception is inapplicable." Doc. Ent. 245 at 5.

However, having concluded that plaintiffs have placed their financial affairs in issue, I need not address the applicability of the crime-fraud exception.

**d.**     My conclusion is not changed by the argument in Brown & Kent's response that this case is distinguishable from *Howe*.  Doc. Ent. 225 at 5-10.  Brown & Kent points out that in *Betts v. Fletcher*, No. 266613, 2006 WL 1751823, *3 n.3 (Mich. App. June 27, 2006), the court stated that "the Supreme Court [in *Howe*] limited its holding to the particular facts and circumstances of the case."  Doc. Ent. 225 at 5.  According to Brown & Kent, "[p]laintiffs and Brown & Kent are not using Michigan's statutory Accountant-Client Privilege as a 'shield' to preclude evidence of their damages."  Doc. Ent. 225 at 5.  Furthermore, Brown & Kent contends that "Plaintiffs in this case have not placed the notes or information underlying their filed tax returns at issue in this case because Plaintiffs have not based their claim on the notes and information underlying the tax returns that they assert a privilege over, they base a part of their damage claim on their **filed tax returns**, which were also given to their Expert, and which they voluntarily produced to Deere.  Deere's only allegation to this Court is that it needs such notes and information in defense of its claim[.]"  Doc. Ent. 225 at 9 (emphasis in original); Doc. Ent. 245 at 4-5.

In support of the argument that "Plaintiffs and Brown & Kent have not waived their statutory Accountant-Client Privilege in this matter[,]" Brown & Kent cites *Choice Restaurant Acquisition Ltd. v. Whitley, Inc.*, 816 So.2d 1165 (Fla.App. 4 Dist. 2002).  Doc. Ent. 225 at 9-10.  In *Choice Restaurant Acquisition Ltd.*, the Court considered Fla. Stat. § 90.5055 ("Accountant-client privilege"), which provides in part, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client. This privilege includes other confidential information obtained by the accountant from the client for the purpose of rendering accounting

advice." Fla. Stat. § 90.5055(2). The court quashed "a discovery order granting respondents' motion to compel answers to certain deposition questions which Choice asserts are protected by the accountant/client privilege." *Choice Restaurant Acquisition Ltd.*, 816 So.2d at 1166. In so doing, it stated that "a court cannot justify finding waiver of the privilege merely because the information sought is needed by the opposing party to provide information helpful to cross examination or for the defense of a cause of action." *Id.* at 1167. *See also Coates v. Akerman, Senterfitt & Eidson*, P.A., 940 So.2d 504, 509 (Fla.App. 2 Dist. 2006). Furthermore, the court stated:

> In this lawsuit, Choice [purchaser] alleged that the agreement at issue contained representations and warranties which were false and that it sustained damages as a result. Respondents [sellers] sought the requested answers to deposition questions of Mitchell Less [accounting firm manager] not to prove Choice's claim of fraud, but rather to defend against it by gathering evidence they hoped would support a defense to the fraud claim, i.e. Choice did not rely on the representations of respondents based on what Choice learned from the incomplete due diligence efforts of Grant, Thornton [accounting firm retained by purchaser's principals to conduct limited due diligence prior to purchase]. This is not grounds for the discovery of otherwise privileged information.

*Choice Restaurant Acquisition Ltd.*, 816 So.2d at 1167. Whatever similarity this case may bear to the one at bar, it is not binding upon this Court.

In support of the same argument, Brown & Kent cites *Deloitte, Haskins and Sells v. Southern Financial Holding Corp.*, 566 So.2d 906 (Fla.App. 4 Dist. 1990). Doc. Ent. 225 at 10 n.6. In *Deloitte*, the court quashed an "order which require[d] discovery of financial records and working papers in petitioner's possession on behalf of its client Central Savings and Loan Association[.]" *Deloitte*, 566 So.2d at 906. In so doing, it stated, "[t]o obtain access to these materials, respondent must make out a prima facie case that Central used the accountant-client relationship to promote intended or actual fraud or demonstrate that Central has waived its

privilege." *Id.*  The Court also quashed an "order which grant[ed] discovery of petitioner's records on behalf of its client First Venice Savings and Loan Association[.]" *Id.*  In so doing, it stated, "[s]uch records may not be discovered unless First Venice is shown to have waived its accountant-client privilege or there is presented prima facie evidence that First Venice used its relationship with the petitioner to promote an intended or actual fraud." *Id.*  However, assuming the court was considering Fla. Stat. § 90.5055, that statute provides, in part: "There is no accountant-client privilege under this section when:  (a) The services of the accountant were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or should have known was a crime or fraud." Fla. Stat. § 90.5055(4)(a).  Here, I have concluded that the accountant-client privilege has been waived.

## II.    ORDER

In accordance with the foregoing, defendant's January 31, 2008, motion to compel deposition of Kim Brown CPA, and Brown & Kent, or to strike damages claims (Doc. Ent. 215) is GRANTED to the extent it seeks an order (1) compelling responses to the "documents to be produced" attached to the January 15, 2008, second amended notice of taking deposition of Brown & Kent, P.C., and (2) compelling the deposition of Kim Brown, CPA.  However, defendant's request for an assessment of costs (Doc. Ent. 215 at 7) is DENIED, as is plaintiffs' suggestion that sanctions be imposed (Doc. Ent. 245 at 2).

Additionally, Brown & Kent's January 31, 2008, motion for order quashing subpoena and/or granting protective order (Doc. Ent. 217) is GRANTED to the extent it seeks a protective order.  As previously noted, if the parties are unable to agree upon the terms of a protective order, Brown & Kent's counsel shall submit the terms of a proposed order to the Court.

Defendant will then have an opportunity to object to the proposed terms before I enter any further protective order.

       IT IS SO ORDERED.

       The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).


                              s/Paul J. Komives
                              PAUL J. KOMIVES
Dated: 5/5/08                 UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on May 5, 2008.

             s/Eddrey Butts
             Case Manager