UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY,
MARK E. LAETHEM and
MICHAEL T. LAETHEM,

                                           CASE NO. 2:05-CV-10113
              Plaintiffs,                  JUDGE DAVID M. LAWSON
                                           MAGISTRATE JUDGE PAUL J. KOMIVES

v.


DEERE AND COMPANY,

              Defendant,

_____/


## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE FOR PLAINTIFFS' DISCOVERY MISCONDUCT AND FOR OTHER RELIEF (Doc. Ent. 214) and PLAINTIFF'S COUNTER-MOTION FOR SEALING ALL PAPERS DEERE FILED WITH THE COURT WHEREIN DEFENSE COUNSEL QUOTES PRIVILEGED MATERIAL AND FOR SANCTIONS (Doc. Ent. 235)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
        A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
        B.    Motion Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
        C.    Defendant's January 31, 2008 Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
        D.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
              1.    Fed. R. Civ. P. 37(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
              2.    Dismissal as a sanction for failure to cooperate in discovery . . . . . . . . . . . . . . . . .  9
              3.    Fed. R. Civ. P. 41(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
        E.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
              1.    Deere's Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
              2.    Plaintiff's Response/Counter-Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
              3.    Deere's Reply/Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
              4.    The Court should deny defendant's motion to the extent it seeks dismissal of
                    plaintiffs' complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
              5.    The Court should hold in abeyance defendant's motion to the extent it requests a
                    Court inquiry and examination, the appointment of a special master, and the
                    assessment of expenses against plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
              6.    The Court should hold in abeyance plaintiffs' counter-motion. . . . . . . . . . . . . . . .  36


III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

I.    **RECOMMENDATION:**  The Court should deny defendant's motion to dismiss with prejudice for plaintiffs' discovery misconduct and for other relief to the extent it seeks dismissal of plaintiff's lawsuit and should hold it in abeyance to the extent it seeks other relief.  Doc. Ent. 214.  Also, the Court should hold in abeyance plaintiff's counter-motion for sealing all papers Deere filed with the Court wherein defense counsel allegedly quotes privileged material and for sanctions.  Doc. Ent. 235.

II.   **REPORT:**

A.    **Background**

Plaintiffs Laethem Equipment Company (LEC), Laethem Farm Service Company (LFSC), Mark Laethem and Michael Laethem filed this lawsuit on April 19, 2005.  This Court's jurisdiction over the instant case is based upon diversity of citizenship.  28 U.S.C. § 1332(a); Doc. Ent. 1 ¶ 8.  Plaintiffs allege (I) breach of Michigan's Farm and Utility Equipment Act (MFUEA) (in favor of LEC and LFSC); (II) breach of contract (in favor of LEC and LFSC); (III) tortious interference with business relationships (in favor of LEC and LFSC); (IV) tortious interference with business relationships (in favor of plaintiffs Mark Laethem and Michael Laethem); (V) violation of Michigan's Uniform Trade Secrets Act (in favor of LEC and LFSC); (VI) aiding and abetting violation of fiduciary duty (in favor of all plaintiffs); and (VII) violation of Michigan's Franchise Investment Law (in favor of LEC and LFSC).  Doc. Ent. 1.  Defendant answered the complaint on May 10, 2005.  Doc. Ent. 3.

On September 28, 2005, defendant filed a motion for dismissal and summary judgment.  Doc. Ent. 9.  On March 31, 2006, defendant filed a second motion for dismissal and summary

judgment.  Doc. Ent. 58.  On August 14, 2007, Judge Lawson entered an opinion and order denying defendant's first and second motions for summary judgment.  Doc. Ent. 163.

On December 27, 2007, Deere filed a motion to join required parties and dismissal for no subject matter jurisdiction.  Doc. Ent. 194.  On February 27, 2008, Judge Lawson entered an order denying defendant's motion to join required parties and dismiss.  Doc. Ent. 240.

**B.      Motion Practice**

The motion practice in this case has been voluminous.  Of the thirty-two (32) arguably substantive motions filed in this case,[1] nine (9) have been filed by plaintiffs.  Doc. Entries 75, 82, 118, 161, 217, 226, 287, 297, and 298.  Twenty-three (23) have been filed by defendant.  Doc. Entries 9, 27, 28, 29, 30, 53, 54, 56, 57, 58, 179, 185, 188, 189, 194, 214, 215, 216 (reconsideration), 223, 256, 257, 274, 301.  Fourteen (14) of these were docketed as motions to compel - three (3) of which were filed by plaintiffs.  Doc. Entries 28, 29, 53, 54, 57, 75 (II), 82 (II), 118 (II), 179, 185, 188, 189, 215, 274.

Pursuant to the October 1, 2007, amended case management and scheduling order, the discovery cutoff was January 31, 2008.  Doc. Ent. 172.  A status conference before Judge Lawson has been noticed for September 4, 2008.

**C.      Defendant's January 31, 2008 Motion to Dismiss**

---

[1]Forty (40) motions have been filed in this case, of which (8) are motions for leave to file. Doc. Entries 8, 17, 18, 100, 102, 106, 113 and 116.

This case, threatening to take on Dickensian proportions,[2] is once again before the Court on a dispositive motion.  By way of background, a document inspection took place at plaintiffs' counsel's office on February 6, 2006.  Doc. Ent. 214 at 8, Doc. Ent. 235 at 8, Doc. Ent. 250 at 1 ¶ 2.  An inventory of items present at the inspection was generated.  It was provided to plaintiff's counsel on February 23, 2006, including annotations as to items of which Deere sought copies.  Additionally, defendant requested that "all items not at the inspection be located and produced."  Doc. Ent. 250 at 2 ¶ 9.  Defense counsel's paralegal contends that no computer disks or media containing ESI were present at this inspection.  Doc. Ent. 250 ¶¶ 4, 10.

Another document inspection took place at plaintiffs' counsel's office on January 18, 2008.  Doc. Ent. 214 at 3, Doc. Ent. 235 at 4, Doc. Ent. 250 at 3 ¶ 13.  The production included two computer disks - "Mike's Documents/Records" and "Mark's Documents/Records."  Neither were indicated to be privileged or confidential.  Doc. Ent. 250 at 3 ¶ 13.  John P. O'Connor, the paralegal and IT person at defense counsel's office who has "managed all the documents and

---

[2]In the opening chapter to his novel <u>Bleak House</u>, Dickens sardonically describes

some score members of the High Court of Chancery bar . . . mistily engaged in one of the ten thousand stages of an endless cause, tripping one another up on slippery precedents, groping knee-deep in technicalities, running their goat-hair and horsehair warded heads against walls of word . . . [with] various solicitors in the cause . . . ranged in a line . . . with bills, cross-bills, answers, rejoinders, injunctions, affidavits, issues, references to masters, masters' reports, mountains of costly nonsense, piled before them . . . [engaged in a cause] which so exhausts finances, patience, courage, hope; so overthrows the brain and breaks the heart; that there is not an honourable man among its practitioners who would not give--who does not often give--the warning, "Suffer any wrong that can be done you, rather than come here!"

CHARLES DICKENS, BLEAK HOUSE 50-51 (Norman Page, ed., Penguin Books 1971) (1853); <u>see also</u>, <u>Kruse v. Village of Chagrin Falls, Ohio</u>, 74 F.3d 694, 701 (6th Cir. 1996) (quoting portions of the above passages).

evidence for this matter since its inception at [the] firm[,]" Doc. Ent. 250 at 1 ¶ 1, represents, "[f]earing that they might become 'missing' or 'lost', some of the ESI and metadata on the disks was downloaded to the hard-drive to [his] laptop computer." Doc. Ent. 250 at 4 ¶ 14. Among the documents of which defendant sought copies were "two disks of electronically stored information (ESI), respectively titled 'Mike's Records' and 'Mark's Records,' which had not been produced earlier." Defendant contends that, "[b]ecause of its massive quantity, only some of the ESI was downloaded at the time of the document inspection." Doc. Ent. 214 at 3. According to O'Connor, "[b]efore leaving the second document inspection on January 18, 2008, we notified those present that the disks were present by designating the 'Mike's Documents/Records' computer disk to be copied in full and delivered to [them]." Doc. Ent. 250 at 4 ¶ 17.

Certain items identified at the January 18th inspection were received by defense counsel on January 29, 2008, but the Mike disk was missing from that production. Doc. Ent. 250 at 5 ¶ 18. That day was also the day of the Schwartzenberger deposition. Doc. Ent. 214 at 3. During the deposition, plaintiffs asserted privilege regarding some of the ESI. Doc. Ent. 214 at 3. That same day, plaintiffs "represented that they would promptly provide a privilege log compliant with the Federal Court Rules, and that the Plaintiffs would move for protection of those documents[.]" Doc. Ent. 214 at 4.

On January 30, 2008, defense counsel's paralegal informed plaintiff's counsel's paralegal that the "Mike's Documents/Records" disk was missing. At this time, defendant requested a copy of the Mark disk. Doc. Ent. 250 at 5 ¶ 19.

**On January 31, 2008, defendant filed a motion to dismiss with prejudice for plaintiffs' discovery misconduct and for other relief. Doc. Ent. 214.** Specifically, defendant requests that the Court enter an order dismissing this case with prejudice as a result of plaintiff's discovery misconduct. Doc. Ent. 214 at 1. Attached to defendant's motion are Exhibits A-I. Doc. Entries 214-3 - 214-12.[3]

Plaintiffs Mark Laethem and Michael Laethem were deposed on February 1, 2008. Doc. Ent. 235 at 5. On February 18, 2008, plaintiffs produced a privilege log that contained "only 143 allegedly privileged items out of tens of thousands of items on the two disks." Doc. Ent. 254 at 4. *See also* Doc. Ent. 235-7. On February 20, 2008, Judge Lawson conducted a status conference. Defense counsel received the "missing" Jeff Moore Disk on February 22, 2008 from plaintiffs. Doc. Ent. 284 at 3 ¶ 4.

**On February 25, 2008, plaintiffs filed a response, as well as a counter-motion for sealing all papers Deere filed with the Court wherein defense counsel quotes privileged material and for sanctions. Doc. Ent. 235.**[4] Plaintiffs suggest that the Court "sanction defense counsel for his unethical conduct of surreptitiously taking disks from a document production, purposefully searching for inadvertently produced privileged documents, quoting from

---

[3]Judge Lawson referred this motion to me on February 1, 2008. Doc. Ent. 218. A hearing on the motion was noticed for February 28, 2008. Doc. Ent. 220. It was renoticed for March 5, 2008. Doc. Ent. 239. On March 4, 2008, the hearing was cancelled. On March 25, 2008, I conducted a telephonic status conference regarding pending motions.

[4]The cover page of plaintiff's February 25, 2008, filing requests oral argument. I choose not to schedule oral argument at this time. With respect to a motion to dismiss, my authority is limited to entry of a report and recommendation. 28 U.S.C. § 636(b)(1)(B). With respect to the counter-motion, the request is denied pursuant to E.D. Mich. LR 7.1(e)(2) ("Oral hearings on all other motions will be held unless the judge at any time prior to the hearing orders their submission and determination without oral hearing on the briefs filed as required by this rule.").

privileged material in his pleadings with the Court, using privileged material during depositions, and refusing to return privileged material upon Plaintiffs' counsel's request[,]" and "deny defense counsel's motion because it [is] not supported by the facts or relevant law and because it was brought in bad faith[.]"  Doc. Ent. 235 at 2.  Attached to plaintiffs' motion are Exhibits 1-23.  Doc. Entries 235-3 - 235-25.  One of the exhibits is a fourteen (14) page privilege log concerning Mike's disk and Mark's disk which lists 143 documents.  Doc. Ent. 235-2, 235-7.

On February 29, 2008, defendant filed seven (7) declarations: (1) Doc. Ent. 246 (John W. Allen No. 1 regarding withheld and "missing" evidence), (2)  Doc. Ent. 247 (Richard D. Fries), (3) Doc. Ent. 248 (Sean C. Maltbie No. 1), (4) Doc. Ent. 249 (Kathryn D. Soulier), (5) Doc. Ent. 250 (John P. O'Connor), (6) Doc. Ent. 251 (Pamela Woodruff), and (7) Doc. Ent. 252 (John W. Allen No. 2 regarding withheld and "missing" evidence and in response to professional responsibility allegations).

**On March 1, 2008, defendant filed a reply brief in support of Deere's motion to dismiss with prejudice for plaintiffs' discovery misconduct and for other relief and a response brief to plaintiffs' counter-motion for sealing all papers Deere filed with the Court wherein defense counsel quotes privileged material and for sanctions.  Doc. Ent. 254.** Attached to this filing are Exhibits A-H.  Doc. Entries 254-3 - 254-10.  Although Deere contends that several of its motions must be considered together, only two of those mentioned - the instant motion (Doc. Ent. 214) and the February 14, 2008 emergency motion (Doc. Ent. 223) - remain

pending before the Court. It is defendant's position that "[t]he delays caused by Plaintiffs' discovery misconduct should not be used to rush the process of curing that misconduct."[5]

Some relevant facts have occurred or related documents have been filed since Deere filed its reply. On March 7, 2008, the M&M Disks were produced by the vendor IVize, LLC. Doc. Ent. 284 at 1 ¶ 2. On March 21, 2008, plaintiffs filed the declaration of Francis J. O'Donnell (plaintiff's counsel). Doc. Ent. 265. On March 24, 2008, defendant filed the declaration of John W. Allen No. 3 regarding withheld and "missing" evidence and in response to professional responsibility allegations. Doc. Ent. 266.

On April 3, 2008, plaintiffs filed a data log "outlining the data on each media . . . secured by them that is related to the issues raised in the pleadings in this case." Doc. Ent. 271.[6] On April 9, 2008, Deere filed the April 8, 2008 declaration of Deere expert witness Richard Reahm, CPA. Doc. Ent. 275.[7] On April 18, 2008, defendant filed the April 14, 2008 declaration of Deere expert witness James Finley. Doc. Ent. 282. Reahm and Finley are the co-authors of Deere's December 28, 2007, expert witness report. Doc. Ent. 275 ¶ 1, Doc. Ent. 282 ¶ 1. Furthermore, on May 5, 2008, defendant filed the same-day declaration of O'Connor. Doc. Ent. 284.[8]

---

[5]On or about March 1, 2008, defendant served Interrogatory No. 26 upon plaintiffs. The interrogatory sought "the identity and location of all electronically stored information (ESI) generated by plaintiffs or within plaintiffs' control." Doc. Ent. 254-10.

[6]This log was filed pursuant to Judge Lawson's February 21, 2008 order concerning certain electronically stored information. Doc. Ent. 228.

[7]On April 14, 2008, Deere filed Tab A to Reahm's declaration under seal. Doc. Ent. 278.

[8]Also pending before the Court are Deere's February 14, 2008 emergency motion to secure withheld and "missing" evidence, suspend CMO, and other relief (Doc. Ent. 223); Deere's April 7, 2008 motion to compel (Doc. Ent. 274), and plaintiffs' July 14, 2008 emergency motion for order

**D.     Applicable Law**

**1.      Fed. R. Civ. P. 37(b)(2)**

Defendant's January 31, 2008, motion is filed pursuant to Fed. R. Civ. P. 37.  Doc. Ent. 214 at 1.  Rule 37(b)(2) provides, in pertinent part, that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include the following: . . . (v) dismissing the action or proceeding in whole or in part[.]"  Fed. R. Civ. P. 37(b)(2)(A)(v).  With respect to the payment of expenses, Rule 37(b)(2) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

"A district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of their lawsuit or entry of default judgment against them." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (referencing Fed. R. Civ. P. 37(b)(2)(C)).  "Rule 37(b)(2) authorizes a district court to enter a default judgment and dismiss a case where the sanctioned party failed to obey an order to provide or permit discovery."  *Wittman v. Wilson*, 95 Fed. Appx. 752, **2 (6th Cir. 2004) (unpublished).  *See also Maldonado v. Thomas M. Cooley Law School*, 65 Fed. Appx. 955, **2 (6th Cir. 2003) (unpublished).

**2.      Dismissal as a sanction for failure to cooperate in discovery**

---

compelling production of defendant's ESI and for status conference with the Honorable David M. Lawson (Doc. Ent. 298).

"In *Regional Refuse*[,] [the Sixth Circuit] discussed the factors a district court should evaluate in determining whether to impose sanctions under Rule 37(b)(2)(C) for noncompliance with discovery orders[.]" *Bank One of Cleveland, N.A.*, 916 F.2d at 1079.  The Sixth Circuit "has determined that four factors are to be considered when reviewing a decision by a district court to impose sanctions under Rule 37." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (citing *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154-155 (6th Cir.1988)).[9]  "The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered." *Freeland*, 103 F.3d at 1277. *See also Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 366-367 (6th Cir. 1997) (citing *Regional Refuse Systems, Inc.*, 842 F.2d at 153-155); *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) (citing *Bank One of Cleveland v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

"The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from such misconduct in the future." *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir.

---

[9]*Regional Refuse Systems, Inc.* was superseded by Fed. R. Civ. P. 37(c)(1) in 1993.  *See Vance, by and Through Hammons v. United States*, No. 98-5488, 1999 WL 455435, \*\*6 (6th Cir. June 25, 1999) (unpublished).  Fed. R. Civ. P. 37(c) governs a party's "failure to disclose; false or misleading disclosure; [or] refusal to admit."  However, *Vance* acknowledges that the *Regional Refuse Systems, Inc.* test does apply to cases in which sanctions are brought pursuant to Fed. R. Civ. P. 37(b) or Fed. R. Civ. P. 41(b).  *Vance*, 1999 WL 455435 at \*\*6.

1995) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-643 (1976)).

### 3. Fed. R. Civ. P. 41(b)

Fed. R. Civ. P. 41(b) governs involuntary dismissal and its effect. In part, it provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The Sixth Circuit "has stated that dismissal of an action is a harsh sanction which the court should order only in extreme situations where there is a showing of a clear record of delay or contumacious conduct by the plaintiff." *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993). "Absent a showing of a clear record of delay or contumacious conduct, the order of dismissal is an abuse of discretion, such that the district court is limited to lesser sanctions designed to achieve compliance." *Little*, 984 F.2d at 162 (citing *Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980)).

The factors to consider when determining whether to dismiss a case pursuant to Rule 41(b) mirror the factors to consider when determining whether to dismiss a case pursuant to Rule 37(b). "In reviewing a district court's dismissal under either Rule 37(b)(2) or Rule 41(b), we consider four factors: '(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal;[10] and (4) whether

---

[10]"[T]he absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing [does not] necessarily render such a dismissal void." *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962). "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Id.* Therefore, "when circumstances

less drastic sanctions were imposed or considered before dismissal was ordered.'" *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.1999)). *See also Bryant v. United States, ex rel. U.S. Postal Service*, 166 Fed. Appx. 207, 210 (6th Cir. 2006); *Southern Wabash Communications, Ltd. v. Union County Broadcasting Co., Inc.*, 69 Fed. Appx. 285, 290 (6th Cir. 2003).

**E.      Analysis**

**1.      Deere's Motion**

Defendant makes several claims in support of its motion. To begin, defendant claims that plaintiffs "have no privilege to claim[,]" and "[t]he amount of withheld evidence is massive." Doc. Ent. 214 at 4-5. Defendant asserts that "[a]ny claim of privilege by the Plaintiffs must be viewed with skepticism, since Plaintiffs have never filed a privilege log or made any claim of privilege in response to any of the many document requests by Deere." Defendant also asserts that plaintiffs "have never moved for protection." Doc. Ent. 214 at 5.

Next, defendant claims that "ESI is relevant and was requested." Doc. Ent. 214 at 5-6. According to defendant, "[t]he ESI on the two withheld disks . . . is directly responsive to a dozen or more of Deere's discovery requests." Yet, plaintiffs "responded that they 'have no responsive documents,' represented that 'all responsive documents have been produced,' or made no response at all." Doc. Ent. 214 at 5.

Next, defendant claims that "[p]laintiffs' withholding these disks is prejudicial to Deere." Defendant contends that the revelation that "Plaintiffs have withheld tens of thousands of pages

_____

make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting." *Id*. at 633.

of critical documents [makes] all of the work in those earlier motions, hearings, discovery requests, and a dozen or more depositions, useless." It is defendant's position that "[o]nce all of these documents are produced, all of that discovery will have to be repeated, and many of the motions re-filed an[d] re-briefed." Doc. Ent. 214 at 6-7. Furthermore, defendant contends that "[t]he withholding of ESI is also materially prejudicial, in that it taints the Plaintiffs own evidence as incomplete and invalid." It also maintains that the right to re-examine Schwartzenberger, Mark or Mike Laethem, or any other witnesses revealed by the ESI . . . is not an adequate remedy for the prejudice which has been caused." Defendants also contend that the timing of this revelation and assertion of privilege, two days before the close of discovery, is materially prejudicial. Doc. Ent. 214 at 7.

Next, defendant claims that "[p]laintiffs have been hiding this evidence for years[,]" explaining that "[t]hese disks and ESI were not recently acquired by Plaintiffs." Doc. Ent. 214 at 8. Defendant contends that plaintiffs created this evidence and "it has been in their possession, custody and control long before April, 2005[.]" Furthermore, defendant contends that "all of the records of these businesses . . . were returned to these Plaintiffs by Plante Moran (limited receiver) in 2004." Therefore, defendant contends, these disks and the ESI should have been included in plaintiffs' Rule 26 disclosures. Defendant avers that plaintiffs have waived their right to withhold this evidence, because they failed to disclose its existence and that they were intentionally withholding it. Doc. Ent. 214 at 8.

Next, defendant claims, "[t]he history of plaintiffs' discovery conduct in this case is not good." Doc. Ent. 214 at 8-9. Defendant asserts that one (1) of Deere's motions to compel was the result of documents withheld by plaintiffs at the February 6, 2006, document inspection.

Doc. Ent. 214 at 8-9, Doc. Ent. 28.  Defendant also asserts that six (6) of Deere's motions to compel were the result of other discovery misconduct by plaintiffs.  Doc. Ent. 214 at 9; Doc. Entries 53, 54, 179, 185, 188, 189.  Defendant contends that "the ESI on these 'Mike's Records' and 'Mark's Records' disks is still being withheld, without any proper privilege log or other reason recognized by the Federal Court Rules."  Defendant asserts that "[a]ny privilege log filed after the filing of this Motion should be disregarded."  Doc. Ent. 214 at 9.

Next, defendant claims that "[f]ederal and Michigan law does not permit this misconduct."  Doc. Ent. 214 at 9-11.  In support of this argument, defendant cites *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789 (E.D. La. 2007) (privilege was asserted as to 30,000 documents, totaling nearly 500,000 pages).[11]  Defendant contends that "any attempt by Plaintiffs to withhold documents on the ground of privilege must distinguish on a document by document basis, any non-legal type communications.  Merely asking the lawyer to review a non-legal communication before it is sent to others is **not** a protected attorney-client communication."  Doc. Ent. 214 at 10.  Defendants also note that "Plaintiffs have not provided any privilege log, much less one having the detail required by federal law.  Therefore, any claim to privilege has been waived."  Doc. Ent. 214 at 11.

Next, defendant claims that "neither federal law nor Michigan law recognizes privilege to protect communications which are in furtherance of a continuing crime or fraud."  Doc. Ent. 214 at 11-12.  In support of this argument, defendant cites *People v. Van Alstine*, 57 Mich. 69, 79, 23

---

[11]The Court found that "the sample resolution process faithfully implemented by Special Master Rice and Special Counsel Barriere has provided adequate procedural protections." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d at 813-814.

N.W. 594 (1885); *Ravary v. Reed*, 163 Mich.App. 447, 455, 415 N.W.2d 240 (1987); and *United States v. Collis*, 128 F.3d 313 (6th Cir. 1997). Defendant claims that Deposition Exhibit 164 (33 pages of documents extracted from the "Mike's Records" disk) repeatedly refer to or are suggestive of fraud and should be reviewed by the Court. Defendants also contend that "the withheld disks contain more than 7,900 **additional** e-mails, which are likely of similar quality and content." Doc. Ent. 214 at 12; Doc. Ent. 214-4. Defendant also contends that the information reflects a "potential for a danger to the public because of continuing environmental contamination[.]" Doc. Ent. 214 at 12.

Next, defendant discusses "[a]ssisting false testimony." Doc. Ent. 214 at 13. Defendant claims that "[t]here is . . . compelling evidence that Plaintiffs have testified falsely regarding the evidence on the withheld disks." Defendant contends that plaintiffs' motive "is now confirmed by ESI on one of the withheld disks[.]" According to defendant, "the newly-revealed contents of the 'Mike's Records' disk [show] that Mike created this document and had possession of it as early as December 13, 2002, and kept it in his computer under the file title 'moneycircle.'" According to defendant, the "'Money Circle' exhibit is further demonstrative of the prejudice create by the withholding of evidence by Plaintiffs." Defendant predicts that the withheld disks contain impeachment evidence. Doc. Ent. 214 at 13.

Finally, defendant claims that "[t]he ESI on the withheld disks is also significant for what it does **not** contain." Defendant maintains that "[t]his lack of any allegation against Deere during the critical 2002 - 2003 time period is also material to Deere's defense of this case, and its theory that Plaintiffs' claims against Deere were 'afterthoughts,' formulated by Plaintiffs only

after November, 2004, when they orchestrated and forced a settlement with their sister, Kathryn, and their mother's Trust." Doc. Ent. 214 at 14.

**2.      Plaintiff's Response/Counter-Motion**

Plaintiffs contend that "[d]efense counsel surreptitiously downloaded two disks during Plaintiffs' January 18, 2008 production." Doc. Ent. 235 at 4. Nineteen of the documents, some of which were allegedly privileged on their face, were used as an exhibit at the Schwartzenberger deposition. Doc. Ent. 235 at 4-5. According to plaintiffs, their counsel "immediately claimed privilege and demanded that defense counsel return the privileged documents to Plaintiffs." They contend that defendant's motion brief should have been filed under seal, because it quotes from the privileged documents. Plaintiffs also contend that defense counsel used his knowledge of the privileged documents to conduct Mark and Michael's February 1, 2008 depositions. Doc. Ent. 235 at 5. Plaintiffs contend that defendant's motion is "baseless." Plaintiffs contend that "[t]he existence of the disks w[as] fully disclosed in discovery material that Deere has had in its possession since 2005." They claim there is no merit to the claim that they withheld the disks and defendant's motion should be denied. Doc. Ent. 235 at 6.

To begin, plaintiffs assert that Deere's request for *Laethem v Laethem* documents was informal. Doc. Ent. 235 at 8-9. On January 4, 2006, defense counsel electronically mailed plaintiffs' counsel seeking "to come to your offices to inspect the documents in your possession regarding any of Laethem businesses and the *Laethem v Laethem* lawsuit." Doc. Ent. 235-8 at 2. The February 6, 2006, production included "documents exchanged during the *Laethem v. Laethem* action and . . . *Laethem v. J & D* [action]." Doc. Ent. 235 at 8. "To [p]laintiffs'

counsel's knowledge, defense counsel did not mark either disk for production."  Doc. Ent. 235 at 9.

With respect to the Joe Laethem documents, plaintiffs explain that a filing error caused them to not be present at the February 6, 2006, production.  Doc. Ent. 235 at 9.  On February 20, 2006, defense counsel notified plaintiffs' counsel that Joseph Laethem documents were missing from plaintiffs' production.  That same day, plaintiffs' counsel suspected that they had been misfiled and offered to "call Dickinson Wright to see if they have duplicates."  Doc. Ent. 235-11.  Attorney Andrews electronically mailed Dickinson Wright on March 9, 2006.  Doc. Ent. 235-12.  A subpoena was issued on March 10, 2006 for "[d]ocuments related to the Laethem v Laethem matter (Case No. 03-21644) bearing the prefix KFL [Kathryn Laethem] and/or JL [Joe Laethem]."  Doc. Ent. 235-13.  The documents were apparently offered to defense counsel on March 19, 2006, and were offered again on March 22, 2006 in response to defense counsel's March 21, 2006 electronic mail.  Doc. Ent. 235-14.  Plaintiffs contend these documents were forwarded to defense counsel shortly thereafter.  Doc. Ent. 235 at 10.

As to the January 18, 2008, inspection, plaintiffs note that on December 21, 2007, in response to an alleged request by defense counsel to review certain documents, plaintiffs' counsel electronically mailed defense counsel, inviting him "to visit our Lansing offices on Friday, January 18, 2008, . . . to re-review all of the previously produced documents.  At that time, you may mark for copying any of the documents that, perhaps, you failed to mark for copying during your earlier inspection."  Doc. Ent. 235-16; Doc. Ent. 235 at 10-12.

Also, plaintiffs assert that "[d]efense counsel abuses privileged documents[,]" specifically explaining defense counsel's use of deposition Exhibit 164 during the January 29,

2008, deposition of Schwartzenberger, as well as the February 1, 2008, depositions of Michael and Mark Laethem. It appears that plaintiffs sought return of these documents on January 29, 2008, January 31, 2008, and February 1, 2008. Doc. Ent. 235 at 12-14; Doc. Ent. 235-20. Plaintiffs allege that defendant quoted from this material in the instant brief. Doc. Ent. 235 at 13.

Also, they assert that "[d]efense counsel took information from Mark's disk and Mike's disk during one of plaintiffs' document productions without telling anyone that he was doing so." Doc. Ent. 235 at 14. Further, they assert that "[d]efense counsel attempts to intimidate plaintiffs, plaintiffs' counsel and plaintiffs' retained expert by threatening to file frivolous lawsuits against them for defamation." Specifically, plaintiffs refer to defense counsel's February 4, 2008, letter, to which plaintiffs' counsel responded on February 12, 2008. Doc. Ent. 235 at 14-15; Doc. Ent. 235-22; Doc. Ent. 235-23.

Finally, they assert that they "properly responded to each of Deere's discovery requests[.]" Doc. Ent. 235 at 15-18. In support of this claim, plaintiffs have compiled a chart which allegedly compares "defense counsel's description of the request in his brief" with the "accurate description of the request" and "plaintiffs' response". Doc. Ent. 235 at 15-18. It is plaintiffs' position that "even if [they] had refrained from ever producing Mike's Disk and Mark's Disk (which they did not), [they] fulfilled their discovery obligations by producing hard-copies of salient documents responsive to discovery requests." Further, they contend, "[e]xcept for the privileged documents, which defense counsel knowingly downloaded and used, the difference between the hard-copy documents produced and the documents on the disks is minimal." Doc. Ent. 235 at 18.

Next, plaintiffs make several specific arguments. First, plaintiffs argue that "[c]ommunications between plaintiffs and their counsel Jack Couzens are privileged." Doc. Ent. 235 at 19.[12] In so doing, plaintiffs assert that Couzens' "legal advice was inextricably intertwined with his non-legal advice." In essence, they contend that *In re Vioxx Products Liability*, 501 F.Supp.2d at 798, does not support a conclusion that all of the documents/communications exchanged between Couzens and plaintiffs are not privileged. Doc. Ent. 235 at 19.

Second, plaintiffs argue that "[t]he documents were inadvertently produced. Thus, the absence of a privilege log does not waive the privilege." Doc. Ent. 235 at 19-20. Plaintiff claims that defendant has not identified "a single case that stands for the proposition that a privilege log must be in place in order to retrieve inadvertently produced privileged documents." Plaintiffs rely upon *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) and *Holland v. Gordy Co.*, Nos. 231183, 231184, 231185, 2003 WL 1985800, *6 (Mich.App. Apr. 29, 2003) (citing *Franzel v. Kerr Mfg. Co.*, 234 Mich. App. 600, 614, 600 N.W.2d 66 (1999) and *Sterling v. Keidan*, 162 Mich. App. 88, 96, 412 N.W.2d 255 (1987)). Plaintiffs contend that no case "stands for the proposition that 'true waiver' exists because the party that inadvertently produces privileged documents waived the privilege because she did not include the privileged documents on a log." Plaintiff also notes that "including the documents on a privilege log would . . . not have been possible because counsel was not aware that privileged documents existed among the non-privileged documents." Doc. Ent. 235 at 20.

---

[12]Attorney Couzens "represented Mark and Michael during the 2001 and 2002 family dispute over ownership of LEC and LFSC." Doc. Ent. 235 at 4.

Third, plaintiffs argue that "[t]he privileged documents do not fall within the crime-fraud exception[.]" Doc. Ent. 235 at 20-21. Here, plaintiffs rely upon *People v. Paasche*, 207 Mich. App. 698, 705, 525 N.W.2d 914 (1994). They claim that defendant "has pointed to no evidence that Attorney Couzens' advice 'advanced' a criminal enterprise or fraud." Plaintiffs offer to submit the purportedly privileged documents *in camera*. They contend that the "abuse of privileged information in the hope that Plaintiffs will discuss the contents in its response brief is the height of unethical conduct." Doc. Ent. 235 at 21.

Finally, plaintiffs argue that "[n]o attorney has assisted false testimony[.]" Doc. Ent. 235 at 21. Within this argument, plaintiffs contend that "[t]o the extent that defense counsel is insinuating that his current review of the information on the disks is the first opportunity he has had to review Plaintiffs' financial data . . . [d]efense counsel has had access to Plaintiffs' financial data through his client since 1992 and, in the context of this litigation, through the JDIS backup tapes produced in 2006." Doc. Ent. 235 at 21.

### 3. Deere's Reply/Response

**a.** First, defendant argues that "[t]he Court must conduct an evidentiary hearing to resolve all issues related to plaintiffs' discovery misconduct." Doc. Ent. 254 at 3-17. Within this argument, defendant asserts that "[t]he M&M disks were not at plaintiffs' February 6, 2006 document production." Doc. Ent. 254 at 3-4. In his February 29, 2008, declaration, attorney Allen represents that "no computer disk, no hard drives and no computers were present in the conference room during the February 6, 2006 inspection." Doc. Ent. 252 at 5 ¶ 11. *See also* Doc. Ent. 246 at 1 ¶ 2. Defendants also cite the Fries, Maltbie, Soulier and O'Connor No. 1 declarations in support of the statement that "the disks were not at the February 6, 2006

Document Production." Doc. Ent. 254 at 3. Citing the Fries (Doc. Ent. 247) and Allen No. 2 (Doc. Ent. 252) declarations, defendant contends that its counsel "contemporaneously compiled and forwarded to Plaintiffs' Counsel an inventory of the documents reviewed during the February 6, 2006 Document Production." Doc. Ent. 254 at 4, Doc. Ent. 247 ¶ 8, Doc. Ent. 247-4. Defendant further contends that the disks were not disclosed in plaintiffs' June 29, 2005, Rule 26(a)(1) disclosures or in any supplements. Doc. Ent. 254 at 4; Doc. Ent. 179-3. It is defendant's position that "[t]he M&M Disks were purposefully, and in bad faith, hidden from production and disclosure." Doc. Ent. 254 at 4.

Also, defendant asserts that "[a]n evidentiary hearing is required to resolve all claims of privilege." Doc. Ent. 254 at 5-17. It is defendant's position that an "[e]videntiary hearing [is] required to discover all foundational facts relating to plaintiffs' privilege claims." Doc. Ent. 254 at 5-7. Defendant also points to "a few obvious examples of how the privilege does not apply to the ESI on the disks." Doc. Ent. 254 at 6-7.[13]

It is also defendant's position that an "[e]videntiary hearing [is] required to discover all foundational facts relevant to privilege waiver analysis." Doc. Ent. 254 at 7-17. It is defendant's position that "[p]laintiffs have waived the privilege over the entire subject matter of the allegedly privileged documents." Doc. Ent. 254 at 7. According to defendant, plaintiff's "intent to hide this evidence from Deere," is shown by the delay from the date of acquisition of the disks to the provision of a privilege log for the M&M disks. Doc. Ent. 254 at 7-8. Defendant contends that

---

[13]Within this argument, defendants rely upon *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355-1356 (4th Cir. 1984); *House v. House*, 61 Mich. 69, 72; 27 N.W. 858 (1886); *United States v. Evans*, 113 F.3d 1457 (7th Cir. 1997); *United States v. Betinsky*, No. 88-198, 1988 WL 97673 (E.D. Pa. Sept. 20, 1988); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1992); *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509; 309 N.W.2d 645 (1981).

"[t]he reason no privilege log exists is because Plaintiffs were hiding evidence. The motive for that is clear, the ESI on the disks takes the legs out from under Plaintiffs' theories of recovery." Doc. Ent. 254 at 8.

According to defendants, plaintiffs "voluntarily disclosed M&M disks, waiving any privilege for anything contained on the disks[,]" and "[i]nadvertent disclosure does not prevent destruction of the attorney-client privilege." Doc. Ent. 254 at 9-17. Defendant also mentions the continuing crime or fraud exception. Doc. Ent. 254 at 9.[14] As to its inadvertent disclosure argument, defendant suggests application of the "objective" view of waiver. Doc. Ent. 254 at 14. Alternatively, defendant suggests, "the aggravating circumstances of this case require a conclusion of implied waiver, even under the 'balancing factors' under the more lenient 'intermediate approach.'" Doc. Ent. 254 at 15. Defendant then analyzes five factors, concluding that (1) "[p]laintiffs took no precautions to protect privilege[,]" (2) "the number of inadvertent disclosures . . . will support a finding of waiver[,]" (3) "the disclosure is complete[,]" (4) "[p]laintiffs did not timely act to mitigate the disclosure[,]" and (5) "the 'overriding interests of justice,' support waiver of any privilege as to the M&M Disks." Doc. Ent. 254 at 15-17. Defendant concludes that "[w]hether under the 'objective' test endorsed by *Pogue*, or under the

_____

[14]Within defendant's argument that an evidentiary hearing is necessary to discover foundational facts relevant to waiver of the privilege, defendants rely upon *Large v. Our Lady of Mercy Medical Center*, No. 94 Civ. 5986(JGK)THK, 1998 WL 65995, *5 (S.D.N.Y. Feb. 17, 1998); *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 483 (W.D. Mich. 1997); *Iverson Industries, Inc. v. Metal Management Ohio, Inc.*, 525 F.Supp.2d 911, 916 (E.D. Mich. 2007) (Lawson, J.); *People v. Dunnigan*, 163 Mich. 349, 128 N.W. 180 (1910); *People v. Fisher*, 442 Mich. 560, 503 N.W.2d 50 (1993); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 477-478 (6th Cir. 2006); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 302 (6th Cir. 2002); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 292-293 (D. Mass. 2000). Doc. Ent. 254 at 7-17.

'balancing test,' Plaintiffs waived any privilege, not only as to all materials on the four (4) Disks, but also as to the entire subject matter of those materials." Doc. Ent. 254 at 17.

**b.**     Second, defendant argues, "Deere counsel acted in accordance with all applicable law in dealing with the materials plaintiffs' belatedly claim are privileged." Doc. Ent. 254 at 17-19. To begin, defendant contends that plaintiffs have not cited any law for the implied proposition that Deere "committed misconduct by refusing to return documents they belatedly claim [are] privileged[.]" Doc. Ent. 254 at 17. Furthermore, defendant criticizes the continued validity of ABA Formal Opinion 92-368, *Resolution Trust Corp. v. First of America Bank*, 868 F.Supp. 217 (W.D. Mich. 1994) (granting in part and denying in part defendant's motion for protective order and denying plaintiff's motions to strike and for sanctions), and *Holland*. Doc. Ent. 254 at 17-18. Defendant claims that it "properly followed the applicable law, ABA Formal Opinion 05-437[,]" as well as Fed. R. Civ. P. 26(b)(5)(B).[15] Doc. Ent. 254 at 18-19; Doc. Ent. 254-24. According to defendant, "[p]laintiffs' counsel personnel were immediately notified at the time of the January 18, 2008 inspection that the disks had been reviewed, and full copies were requested. After that , it was Plaintiffs counsel (as producing party) who did not perform their duties under the law." Doc. Ent. 254 at 19.

---

[15]Fed. R. Civ. P. 26(b)(5)(B) provides: "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

**c.**     Third, defendant argues, "[p]laintiffs['] misconduct merits dismissal with prejudice."

Doc. Ent. 254 at 19-20.  Defendant claims that "[p]laintiffs' gamesmanship in this case has

produced a fraud upon this Court and caused irreparable harm to Deere."  Doc. Ent. 254 at 19.

Here, defendant relies upon *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428-429 (6ᵗʰ Cir.

1996) ("Our system of discovery was designed to increase the likelihood that justice will be

served in each case, not to promote principles of gamesmanship and deception in which the

person who hides the ball most effectively wins the case.") and *Chambers v. NASCO, Inc.*, 501

U.S. 32, 44 (1991) ("the inherent power . . . allows a federal court to vacate its own judgment

upon proof that a fraud has been perpetrated upon the court.").[16]  Citing Fed. R. Civ. P. 37(c),

defendant lists eleven (11) cases which purportedly support the "[e]-discovery sanction of

dismissal imposed (without violation of earlier court order)[.]"  Doc. Ent. 254 at 19-20; Doc.

Ent. 254-9.  According to defendant, "'[p]rivilege is frequently attempted as a sanctuary by the

party hiding evidence."  Doc. Ent. 254 at 20.

        Defendant contends that plaintiffs "made intentional decisions not to disclose the

existence of this evidence at the outset of this litigation in their Rule 26(a) disclosures[;]"

"continued to hide the disks by not disclosing their existence in response to narrowly tailored

and repeated discovery requests[;]" and "failed to comply with Rule 26(b)(5)(A) by failing to

provide a privilege log for information that they claimed to be privileged as early as June 2003."

---

[16]"This case requires us to explore the scope of the inherent power of a federal court to
sanction a litigant for bad-faith conduct. Specifically, we are asked to determine whether the District
Court, sitting in diversity, properly invoked its inherent power in assessing as a sanction for a party's
bad-faith conduct attorney's fees and related expenses paid by the party's opponent to its attorneys.
We hold that the District Court acted within its discretion, and we therefore affirm the judgment of
the Court of Appeals."  *Chambers*, 501 U.S. at 35.

Defendant contends that "[t]hese failures are inexcusable and were in furtherance of Plaintiffs' continued fraud upon Deere, this Court, and others." Doc. Ent. 254 at 20. In support of its statement that "Deere has been irreparably prejudiced by this misconduct[,]" defendant refers to the February 29, 2008, declaration of John W. Allen No. 2. Doc. Ent. 254 at 20; 252 ¶¶ 79-82. It is defendant's position that "[t]he appropriate sanction is Dismissal of Plaintiffs' claims with prejudice and an award of all Deere's reasonable expenses, including attorneys fees, incurred in defending this matter." Doc. Ent. 254 at 20.

**4.      The Court should deny defendant's motion to the extent it seeks dismissal of plaintiffs' complaint.**

Defendant contends that "since the commencement of this litigation in April, 2005, Plaintiffs have intentionally withheld a massive quantity of relevant and material evidence, in spite of repeated motion practice, hearings and orders to compel the production of that same evidence. The only equitable remedy is for all of [plaintiffs'] claims to be dismissed with prejudice." Doc. Ent. 214 at 2. At the conclusion of its motion, defendant repeats its assertion that "[t]he only sufficient remedy for [plaintiffs'] misconduct is dismissal of the Plaintiffs' claims with prejudice." Defendant contends that "[i]f the claims are allowed to remain pending, virtually the entire case must be relitigated, once the mass of documents on the withheld disks are fully disclosed. Most all the discovery must be repeated, the witnesses re-deposed, and the motions re-briefed. The burden and responsibility of this lies squarely upon the Plaintiffs, and no one else. It is a material abuse of the justice system, and the most severe sanction is warranted." Doc. Ent. 214 at 14.

It is defendant's position that "[t]he resolution of this motion turns on one key fact, 'Were the M&M Disks present at Plaintiffs February 6, 2006 document production?'" In

defendant's own words, "[t]his motion is about whether Plaintiffs **concealed evidence**."  It is

defendant's position that plaintiffs did and "that misconduct deserves the most severe sanction

available - **Dismissal of Plaintiffs' Claims with Prejudice**."  Doc. Ent. 254 at 2.

Evaluating the criteria set forth in *Freeland* and *Reyes*, the Court should conclude that

dismissal is not warranted at this time.  "The first factor is whether the party's failure to

cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the

adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is

whether the party was warned that failure to cooperate could lead to the sanction; and the fourth

factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered."

*Freeland*, 103 F.3d at 1277.  Evaluation of these factors leads to the conclusion that dismissal in

this instance would be premature.

a.        **Willfulness, bad faith or fault:** Within its argument that plaintiffs voluntarily disclosed

the M&M disks, defendant contends "[t]here are only two possible conclusions: (1) Plaintiffs

intentionally withheld evidence; or (2) Plaintiffs intended to voluntarily disclose the disks.  The

truth is Plaintiffs intentionally withheld evidence."  Defendant contends that "[t]he M&M disks

and their contents were not inadvertently disclosed.  The only 'inadvertent' aspect of the January

18, 2008 Document Production was that Plaintiffs[] produced disks [containing information]

they intended to continue hiding.  When they were found out, massively overbroad privilege

claims (for both lawyer and CPA documents) were made in order to prohibit Deere from using

those documents in upcoming depositions of Plaintiffs and their expert, as well as in preparation

of Deere's witnesses, other trial preparation matters, and pursuit of other hidden evidence."  Doc.

Ent. 254 at 10.

However, the delineation proposed by defendant does not take into consideration the possibility that plaintiffs inadvertently omitted the disks from the February 6, 2006 production and/or intended to disclose the disks only to the extent they contained non-privileged information. Thus, it is not clear that plaintiffs *concealed* evidence.

In this regard, the Court should look to the February 25, 2008 affidavit of plaintiffs' counsel (attorney Andrews). Doc. Ent. 235-6. Andrews represents that she apparently received the two disks sometime after October 15, 2003 from Kathryn Laethem's counsel (Dickinson Wright). Doc. Ent. 235-6 ¶ 2. With respect to the first inspection, Andrews represents that "[o]n February 6, 2006, Plaintiffs hosted a production of documents exchanged during the *Laethem v Laethem* action and *Laethem v J & D* matters." Counsel claims that she "instructed that a series of tapes and disks be produced to Deere from [these] matters." Doc. Ent. 235-6 ¶ 6. She states that "[b]efore the appointed day, [she]

> gathered all of the documents and placed them on tables in the production room. Based on a review of Plaintiffs' counsel's files, it is apparent that two disks, one marked 'Mike's documents' and the other 'Mark's documents' were placed in a red-rope file, along with other disks and tapes, and placed on a table in the production room. [She says] this because the files containing the disk are included in the main collection of *Laethem v Laethem* documents, without any designations that would lead [her] to believe that the disks were not produced.

Doc. Ent. 235-6 ¶ 7.

With respect to the second inspection, Attorney Andrews states that on January 18, 2008, defense counsel "had marked a number of documents for copying including the disk marked 'Mike's documents.' They did not mark for production the disk identified as 'Mark's document.'" Doc. Ent. 235-6 ¶ 9. Counsel claims she "was not aware that the disks included privileged information." Doc. Ent. 235-6 ¶ 11. She further states:

By January 29, 2008, the only item Plaintiffs had not copied and turned over to defense counsel from the January 18, 2008 production was the disk identified as Mike's Documents. *Except for the production of the disks in February 2006, the disks had not been used as a source for discovery in this case because the material information contained therein was available from a variety of sources.* As a result, Plaintiffs' counsel had not reviewed any of the information on the disks for two years and thought it wise to review the contents more throughly before making the final production. That review was not complete by February 29, 2008.

Doc. Ent. 235-6 ¶ 12 (emphasis added).

Citing the February 1, 2008 deposition of Mark Laethem, defendant contends that "Plaintiffs' counsel has also said that the materials were 'never produced.'" Doc. Ent. 254 at 8 n.8. Also, defendant claims that plaintiffs' counsel's February 25, 2008, representation that she was not aware the M&M disks contained privileged information, is belied by the June 16, 2003, Tuscola County Circuit Court transcript in *Laethem v. Laethem*, wherein attorney Andrews stated: "We understand that Kathryn has not respected the attorney-client privilege. They communicated with their counsel Mr. Jack Cousins on those pieces of equipment. The pieces of equipment we believe all contain, or do contain attorney-client privileged matters." Doc. Ent. 254 at 9; Doc. Ent. 254-7 at 6. Judge Joslyn stated, "I think your right to protect attorney-client interest privilege is long gone[,]" and attorney Andrews disagreed. Doc. Ent. 254-7 at 29. Defendant maintains that "[f]ive years ago, Plaintiffs **knew** what was on the disks, that is why they have never been previously disclosed in any fashion." In addition to the original absence of a privilege log and the failure to mention the disks on the Rule 26(a) disclosures, defendant notes that "[p]laintiffs never assigned serial numbers to the disks, because the 'gaps' would have been noticed and pursued by Deere." Doc. Ent. 254 at 10.

Perhaps attorney Andrews' prior representation slipped her mind. This is not to say that she should not have been aware of her previous representation to the state court; however, the statement was made several years prior to plaintiffs' counsel's declaration, and it is not conclusive evidence of bad faith on the part of plaintiffs' counsel. A conclusion that plaintiffs' counsel was not acting in bad faith is buttressed by her statements that "[a]lthough not required by the Court Rules, [she] agreed to a pre-production of Plaintiffs' expert's documents as a courtesy to defense counsel[,]" and "[a]s a courtesy, Plaintiffs' counsel copied and forwarded Plaintiffs' expert's documents to defense counsel immediately so that defense counsel could prepare for Mr. Schwartzenberger's [January 29, 2008] deposition[.]" Doc. Ent. 235-6 at 4 ¶¶ 8, 10. *See also* Doc. Ent. 235 at 11. Plaintiffs' counsel has represented that she does not have reason to believe that the Mike and Mark disks were not at the February 6, 2006, inspection, and she has also represented that the material information on the disks was available on other sources. Doc. Ent. 235-6 ¶ 12.

Dismissal of a case is appropriate if plaintiff's failure to respond to discovery ordered by the court manifests "flagrant bad faith" and "callous disregard". *National Hockey League*, 427 U.S. at 642-643. In light of plaintiffs' counsel's declaration, the Court should conclude that such is not the case here.

**b.** **Prejudice:** Defendant contends that "[t]he whole case must be done over." Once the Court resolves the discovery misconduct and privilege issues, defendant believes it "must then review and reevaluate every piece of evidence thus far collected in this and all related litigation. Witnesses in this matter and the twenty-three deposition sessions in the underlying *Laethem v. Laethem* matter will likely need to be re-done. These witness' memories will have faded, and

their testimony inaccurate, as compared to three years ago (when the M&M Disks should have been in Plaintiffs' Rule 26 Disclosures). Nothing can repair that." Doc. Ent. 254 at 20.

Whether "[t]he whole case must be done over[,]" is a melodramatic or accurate characterization of the events at hand, such a question need not be answered at this time. It appears that there may be some prejudice to defendant in its handling of this case as a result of the timing of the disclosure of the M&M disks. If, in fact, a substantial amount of the discovery must be reconducted, the defendant may apply for expenses at that time by justifying the necessity of repetition. However, the extent of the prejudice in this case, at this point, is better addressed by assessment of expense which can be fairly attributed to the timing of the disclosure, rather than dismissal of the lawsuit.

c.     **Warning and less drastic sanction:** Plaintiffs' counsel is experienced. Attorneys are expected to abide by the rules and to be aware of the consequences for the failure to do so. Nonetheless, in addition to the fact that plaintiffs do not appear to have acted flagrantly and in callous disregard, it does not appear that plaintiffs in this case have been warned that they risk dismissal of the lawsuit for failure to cooperate in discovery. It would be more prudent to impose the less drastic sanction of an assessment of expenses where discovery must be repeated as a result of the timing of the disks' disclosure than to impose the severe sanction of dismissal at this time.

d.     "Dismissal is the sanction of last resort. It should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." *Beil v. Lakewood Engineering and Manufacturing Company*, 15 F.3d 546, 551-552 (6th Cir. 1994) (citing *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir. 1988)). If the Court agrees

with my conclusion that the first factor has not been satisfied, then it should enter an order

denying defendant's motion to the extent it seeks dismissal of plaintiff's claims.

**5.      The Court should hold in abeyance defendant's motion to the extent it requests a Court inquiry and examination, the appointment of a special master, and the assessment of expenses against plaintiff.**

Aside from seeking dismissal of plaintiff's case, defendant contends that "[t]he Court

should conduct an extensive inquiry and examination of all evidence in Plaintiffs' custody and

control (possibly using a Special Master, at the expense of Plaintiffs) to produce a report and

make preliminary determinations regarding any further tardy objections raised by Plaintiffs (as to

privilege or otherwise) attempting to explain why this massive evidence was not produced long

ago." Doc. Ent. 214 at 2. Furthermore, Deere contends, all of its "expenses for earlier discovery

and motion practice, as well as the expense of this motion, should be assessed against Plaintiffs."

Doc. Ent. 214 at 3.

Defendant contends that "[a]ny further investigation of the evidence on the withheld

disks should be conducted by someone independent of the Plaintiffs. It is an unfair burden for

Deere, or for the Court and the people of the United States to expend taxpayer's monies to do so.

A special master should be appointed, at the expense of the Plaintiffs. Plaintiffs should be

required to produce a detailed, document by document [privilege log] and further required to

meet the burden which Plaintiffs have demanded from Deere, and to which Deere has complied."

Doc. Ent. 214 at 14-15. Defendant contends this should be done at plaintiffs' direct expense.

Furthermore, defendant contends, its expenses "in this litigation, and in regard to this motion and

any process of assessing the evidence on the withheld disks, should also be assessed to Plaintiffs."  Doc. Ent. 214 at 15.[17]

At the time the instant motion was filed, defendant represented that neither the "Mike's Records" and "Mark's Records," disks nor the "copies of the documents and ESI on them have been copied and transmitted to Deere counsel."  Doc. Ent. 214 at 3.  As noted above, defense counsel received the "missing" Jeff Moore Disk on February 22, 2008 from plaintiffs, and the M&M disks from vendor IVize, LLC on March 7, 2008.  Doc. Ent. 284 at ¶¶ 2, 4.  On April 3, 2008, plaintiffs filed a data log.  Doc. Ent. 271.

Plaintiffs contend that "[c]ontrary to defense counsel's insinuations, Mike's Disk does not contain mountains of information related to the lawsuit."  Doc. Ent. 235 at 7.  Among other things, the Mike Disk "contains a small number of privileged communications between attorney Jack Couzens and Michael and Mark Laethem."  Doc. Ent. 235-6 at 3 ¶ 3.  According to Andrews, "[w]hile occasional downloads from the JDIS system appear [on] Mike's Disc, the actual financial information, including inventory records, cash accounting, accounts receivable, accounts payable, check writing, balance sheets, fixed asset records and customer information resides on the JDIS back-up tapes Plaintiffs produced to Deere in 2006."  Doc. Ent. 235-6 ¶ 4. According to Andrews, "[t]he actual number of directly relevant documents is quite limited and fit[s] within one red-rope file."  Doc. Ent. 235-6 at 3 ¶ 5.  Plaintiffs also dispute the propriety of defendant's January 24, 2006, discovery motion.  Doc. Ent. 235 at 8, Doc. Ent. 28.

---

[17]To the extent defendant's motion seeks entry of an amended case management order and the scheduling of another status conference, Doc. Ent. 215 at 15-16, I note that a status conference before Judge Lawson has been scheduled for September 4, 2008.

In its reply, defendant contends that "[t]his is about Plaintiffs' discovery misconduct. To determine the appropriate resolution, the Court must conduct an in-depth inquiry, including an extensive in-person evidentiary hearing complete with witness testimony subject to cross-examination." Doc. Ent. 254 at 2. In conclusion, defendant requests that "the Court conduct an in-depth inquiry through the procedures outlined in Tab A." Doc. Ent. 254 at 20; Doc. Ent. 254-3. Defendant requests that the Court find:

(1)   Plaintiffs committed serious misconduct by withholding and hiding evidence;
(2)   Plaintiffs' misconduct has irreparably harmed Deere;
(3)   Dismissal of Plaintiff's Complaint with Prejudice is warranted; and
(4)   Deere is entitled to recovery of its reasonable expenses, including attorneys fees, expended in defending this matter.

Doc. Ent. 254 at 20-21. Defendant also contends that the Court should appoint a Fed. R. Civ. P. 53 master. Doc. Ent. 254 at 21.[18]

In his May 5, 2008 declaration, O'Connor explains what is slowing the initial review process of the M&M disks. Doc. Ent. 284 at 1-2 ¶ 2a. He also claims that "[f]urther delay results because Plaintiffs have refused to provide evidence or specification of which of the items on the M&M Disks have been earlier disclosed or produced." Doc. Ent. 284 at 2 ¶ 2b.

---

[18]Fed. R. Civ. P. 53(a) governs the appointment of masters. This Court may appoint a master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). "In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). Compensation of a master is governed by Fed. R. Civ. P. 53(g). The rule provides that "[t]he compensation must be paid either . . . by a party or parties; or . . . from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(2). The rule further provides that "[t]he court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits." Fed. R. Civ. P. 53(g)(3).

O'Connor estimates that "completion of initial review of just the 5,000+ pages on the M&M Disks will require at least an additional 8- to 10 weeks, or until approximately July 15, 2008. Doc. Ent. 284 at 2 ¶ 2c. He states that further time will be required to review other items - likely multiple months. Doc. Ent. 284 at 2 ¶¶ 2d, 2e. O'Connor contends that "[t]his partial initial review of the M&M Disks is already revealing documents relevant to the issues of this case," which were not produced before January 18, 2008. Doc. Ent. 284 at 3 ¶ 3.

O'Connor alleges deficiencies regarding the production of Jeff Moore's electronic information. Doc. Ent. 284 at 3 ¶¶ 4a, 4b. O'Connor predicts that "more 'missing' Jeff Moore emails exist." Doc. Ent. 284 at 4 ¶ 4c. O'Connor contends that, although emails to and from Moore on the M&M disks suggest the existence of an email exchange server, "[n]o email server, or its contents, has ever been produced by plaintiffs." Doc. Ent. 284 at 4 ¶ 5. He also contends that the M&M disks "do not contain any .pst files for Mark Laethem's e-mails." Doc. Ent. 284 at 4 ¶ 7. He also suggests that QuickBooks information is missing from the ESI log. Doc. Ent. 284 at 4-5 ¶ 8a.

It is clear from the aforementioned filings that there are a myriad of issues raised by the instant motion, aside from defendant's request that the Court dismiss plaintiffs' claims. For example, in its reply defendant states:

> Plaintiffs' belated claims of privilege are "diversions." But they will also require a thorough inquiry into all the facts and circumstances surrounding the creation and subsequent use and distribution of all documents on the disks, because many non-privileged documents reflect on foundational facts necessary to the privilege claims. The Court must also determine whether any privilege has ben waived by disclosure of the allegedly privileged matters in other, nonprivileged communications. The Court must review everything on the disks, and any other ESI Plaintiffs produce.

Doc. Ent. 254 at 5.  Defendant also contends that "[e]ach document must be reviewed, 'document-by-document,' **with all the other evidence in this case**, so these exceptions to the attorney-client privilege can be fully explored.  Only by considering each document in the context of all the other evidence, can the Court conduct a complete analysis regarding claims privileges.  The Court must consider how each document is potentially relevant to the claims and defenses in this case in order to accomplish that task."  Doc. Ent. 254 at 6.  Defendant further contends "[t]he Court must review each and every document (not just those on the logs) in a similar fashion and conduct a full evidentiary hearing with direct and cross-examination of witnesses, to explore all evidence which prevents the attorney-client privilege from applying as Plaintiffs claim."  Doc. Ent. 254 at 7.  Later, defendant states, "[a]s this Court reviews each act of misconduct and privilege claim, the Court must keep [plaintiffs'] motive in mind. . . . even if an item first appears to meet the foundation requirements for privilege, the analysis must go on in its document-by-document review of all the documents, to determine whether or not the privilege has been destroyed o[r] waived.  It has."  Doc. Ent. 254 at 8.

It would be best to tackle these issues step by step.  If the Court agrees with my conclusion that defendant's motion should be denied to the extent it seeks dismissal of plaintiff's lawsuit, it should then (1) refer the issues raised by defendant's motion (such as the need for court inquiry & examination, the propriety of appointment of a special master, and the propriety of an assessment of expenses against plaintiff) back to me for hearing and determination or (2) appoint a special master under Rule 53 to address these issues.

In this regard, it is worth noting that defendant's February 14, 2008 emergency motion to secure withheld and "missing" evidence, suspend CMO, and other relief (Doc. Ent. 223) is still

before the Court. One of the issues in that motion was whether the Court should appoint and empower a special master "to investigate and report Plaintiff's discovery misconduct and unlogged privilege claims?" Doc. Ent. 232 at 3. This motion was addressed in part by Judge Lawson's February 21, 2008 order pursuant to status conference concerning certain electronically stored information. Doc. Ent. 228. It appears that some of the issues left open by this report and recommendation were addressed in Judge Lawson's order filed three weeks after the instant motion was filed. For example, Judge Lawson's order discussed a privilege log for the M&M disks; written data logs for ESI and metadata relating to this case; and the handling of plaintiffs' inadvertently disclosed and designated as privileged information from the January 18, 2008, document copying session. Doc. Ent. 228. The remainder of defendant's motion was referred to me for hearing and determination. Doc. Ent. 234.[19]

6.      **The Court should hold in abeyance plaintiffs' counter-motion.**

Plaintiffs contend that the Court should act to "remove from PACER all motions and briefs defense counsel filed wherein he quotes from privileged documents." They also ask the Court to "invoke severe sanctions for defense counsel's conduct, including a declaration that Deere is liable to Plaintiffs on all claims asserted against them, monetary sanctions to repay Plaintiffs for the legal fees defense counsel has needlessly caused Plaintiffs to incur, and the disqualification of defense counsel from this case for abuse of privileged material." Doc. Ent. 235 at 5.

---

[19]Plaintiffs filed a response to the motion on March 3, 2008 (Doc. Ent. 255), and defendant filed a reply on March 13, 2008 (Doc. Ent. 260). A separate order regarding the remainder of defendant's February 14, 2008, motion will be entered.

Plaintiffs contend that "this Court should remove all of Deere's Briefs from PACER and place them under seal. This Court should sanction Deere by finding that all of Plaintiffs' allegations against Deere are true as a matter of law and require Deere and its counsel to pay the legal fees and costs Plaintiffs' have incurred in this matter as a result of Deere's conduct. Based on defense counsel's bad faith conduct, this Court should severely sanction defense counsel for his conduct, including disqualifying defense counsel from further participation in this case." Doc. Ent. 235 at 21-22.

If the Court agrees with my conclusion that defendant's motion should be denied to the extent it seeks dismissal of plaintiff's lawsuit, then it should either (1) refer the issues raised by plaintiff's counter-motion back to me for hearing and determination or (2) appoint a special master under Rule 53 to address the remaining issues.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE


Dated 8/6/08


The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on August 6, 2008.

s/Eddrey Butts
Case Manager