UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY,
MARK E. LAETHEM and
MICHAEL T. LAETHEM,

                                  CASE NO. 2:05-CV-10113
              Plaintiffs,     JUDGE DAVID M. LAWSON
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DEERE AND COMPANY,

              Defendant,

_____/

## OPINION & ORDER ADDRESSING IN PART DEERE'S MOTION TO COMPEL PRODUCTION OF ALL ITEMS IN ESI IN PLAINTIFFS' DATA LOG (BEARING DOC. ENT. 271-2) AND FOR OTHER RELIEF (Doc. Ent. 274)

### Table of Contents

I.    OPINION ................................................................. 2
    A.    Background ........................................................ 2
    B.    Pending Motions ................................................... 2
    C.    Defendant's April 7, 2008 Motion to Compel and for Other Relief ..................... 3
    D.    Analysis ......................................................... 5
            1.    **Paragraph A:** Whether plaintiffs "should be required to produce all devices, ESI and data listed in Plaintiffs' Data Log[?]" ................................. 6
            2.    **Paragraph B:** Whether plaintiffs "should be ordered to account for the items on Plaintiffs' Data Log which have been spoliated, or are 'missing', or otherwise changed or altered from their status as originally created[?]" ............... 11
            3.    **Paragraph D:** Whether the Court "should order that all privilege has been waived by Plaintiffs misconduct[?]" .......................................... 15
            4.    **Paragraph E:** Whether the Court "should find Plaintiffs in violation of the Federal Rules of Civil Procedure, and its Orders, including February 21, 2008 (Doc. Ent. 228)[?]" ................................................................ 19

II.    ORDER: ................................................................. 24

# I.    OPINION:

## A.    Background

Plaintiffs Laethem Equipment Company (LEC), Laethem Farm Service Company (LFSC), Mark Laethem and Michael Laethem filed this lawsuit on April 19, 2005.  This Court's jurisdiction over the instant case is based upon diversity of citizenship.  28 U.S.C. § 1332(a); Doc. Ent. 1 ¶ 8.  Plaintiffs allege (I) breach of Michigan's Farm and Utility Equipment Act (MFUEA) (in favor of LEC and LFSC); (II) breach of contract (in favor of LEC and LFSC); (III) tortious interference with business relationships (in favor of LEC and LFSC); (IV) tortious interference with business relationships (in favor of plaintiffs Mark Laethem and Michael Laethem); (V) violation of Michigan's Uniform Trade Secrets Act (in favor of LEC and LFSC); (VI) aiding and abetting violation of fiduciary duty (in favor of all plaintiffs); and (VII) violation of Michigan's Franchise Investment Law (in favor of LEC and LFSC).  Doc. Ent. 1.  Defendant answered the complaint on May 10, 2005.  Doc. Ent. 3.

Pursuant to an October 1, 2007, amended case management and scheduling order, the discovery cutoff was January 31, 2008.  Doc. Ent. 172.  However, this order was vacated on May 15, 2008.  Doc. Ent. 291.

## B.    Pending Motions

Currently pending before the Court are four (4) motions:

Doc. Ent. 274  Deere's Motion to Compel (04/07/2008)

Doc. Ent. 298  Plaintiffs' Emergency Motion for Order Compelling Production of Defendant's ESI and for Status Conference with the Honorable David [M.] Lawson (07/14/2008)[1]

---

[1]Defendant's response to this motion includes the declaration of J. Buller.  Doc. Ent. 304-7.

Doc. Ent. 311  Plaintiffs' Motion to Compel and for Sanctions (08/29/2008)

Doc. Ent. 312  Deere's Motion to Compel Plaintiffs' ESI, Documents, Re
Privilege Claims and Other Relief (08/29/2008)[2]

A status conference before Judge Lawson took place on September 4, 2008.

Several declarations have been filed in this case.  To begin, there are three declarations by defense counsel (Allen) which are apparently related to defendant's emergency motion.  Doc. Entries 246, 252, 266.  It also appears defendant filed the declarations of Timothy J. Jordan (Doc. Ent. 252-13), Woodruff (Doc. Ent. 251),  Soulier (Doc. Ent. 249), Maltbie (Doc. Ent. 248), and Fries (Doc. Ent. 247) in conjunction with defendant's emergency motion.  Furthermore, defendant attached the declaration of plaintiffs' counsel (Andrews) to defendant's emergency motion.  Doc. Ent. 223-20.[3]  Additionally, defendant has filed six declarations by John O'Connor.  Doc. Entries 250, 284 (No. 2), 304-6 (No. 3), 308 (No. 4), 315-5 (No. 5), 317 (No. 6).[4]

C.      **Defendant's April 7, 2008 Motion to Compel and for Other Relief**

_____

[2]The declarations of Stinebiser (316-5), Foster (316-4), Mandel (316-3), Hendricks (315-4), Kim Brown (314-8), plaintiff Mark Laethem (314-7), plaintiff Michael Laethem (314-6), and Couzens (314-5) have been attached to the motion papers regarding the parties' August 29, 2008 motions.  Defendant also filed the declaration of Hendricks (321) in support of Deere's response (315) to plaintiff's motion (311).

[3]This declaration was also attached to plaintiff's response (Doc. Ent. 255-5) and defense counsel's declaration (Doc. Ent. 252-22).

[4]Declarations Nos. 3 and 5 (304-6, 315-5) were filed in conjunction with Deere's response to plaintiff's July 14, 2008 motion (Doc. Ent. 298) and Deere's response to plaintiff's August 29, 2008 motion (Doc. Ent. 311). The O'Connor declaration No. 6 was filed on September 29, 2008, and was submitted in support of all pending motions, including the two presently before the Court (Doc. Entries 214 and 223).  Doc. Ent. 317 at 1 ¶ 2.

On February 21, 2008, Judge Lawson entered an order concerning certain electronically stored information (ESI). Doc. Ent. 228. In part, Judge Lawson ordered:

> It is further ORDERED that on or before February 27, 2008, the defendant's attorneys must turn over to the plaintiffs' attorneys all documents, and delete or destroy any electronic copies thereof, that the plaintiffs have designated as privileged that were inadvertently disclosed at a document copying session at plaintiffs' attorneys' office. The defendant's attorneys may retain a screen image of the index of documents on the CD-ROMs.

Doc. Ent. 228. On February 26, 2008, Deere filed a certification of compliance with order. Doc. Ent. 238.

On April 3, 2008, plaintiffs filed a notice of filing data log pursuant to the Court's February 21, 2008 order. Doc. Ent. 271. Attached to the notice is a two-page chart which is 117 rows in length. Doc. Ent. 271-2.

On April 7, 2008, Deere filed a motion to compel production of all items in ESI in plaintiffs' data log (bearing Doc. Ent. 271-2) and for other relief. Doc. Ent. 274. Defendant's motion is filed pursuant to Fed. Rules Civ. P. 26 and 37. Doc. Ent. 274 at 1.

First, defendant takes issue with plaintiff's data log. Doc. Ent. 274 at 5-6. Second, defendant argues that "[p]laintiffs' data log proves items have been spoliated, not disclosed, or are otherwise 'missing'." Doc. Ent. 274 at 7-8. Third, defendant takes issue with "[o]ther discovery misconduct and plaintiffs' data log[.]" Doc. Ent. 274 at 8-12.

Plaintiffs filed a response on April 24, 2008. Doc. Ent. 283. They advance the following arguments:

A. The cost and burden of producing all electronically stored information far outweighs the value of producing cumulative electronically stored information.
B. Plaintiffs properly responded to each of Deere's discovery requests.
C. Item "O" on plaintiff's disclosure is properly made.

D.     Deere "spoliated" two of the devices disclosed on plaintiffs' log.
E.     Deere's motion to compel ESI is not timely[.]
F.     This Court should strike pages 6 through 12 of Deere's brief.

Doc. Ent. 283 at 5-13.

Defendant's May 5, 2008 reply contends that "[p]laintiffs have been untruthful in their

past discovery responses, and continue to be untruthful in their representations to the Court[;]"

"[a]ll of plaintiffs' electronic devices and ESI are 'relevant,' as shown by plaintiffs' own proofs,

as well as the defenses raised by Deere[;]" "[p]laintiffs are still withholding massive quantities of

email and other electronic communications[;]" and "[a]side from more 'diversions,' plaintiffs

offer no factual support regarding claims of privilege, allegations of criminal conduct and

wrongdoing, and 'gaps'/'missing' documents."  Doc. Ent. 285 at 3-6.

## D.     Analysis

At various points, Judge Lawson referred to me each of the four (4) motions currently

pending before the Court.  Doc. Entries 276, 299 and 313.  However, on October 28, 2008, Judge

Lawson vacated these orders of reference.  Doc. Ent. 324.

At the same time, Judge Lawson ordered that "the defendant's motion to compel [dkt.

#274] is DENIED in part as moot to the extent that it requests the Court to consider the issues

surrounding the data log in connection with the defendant's other motions for sanctions."  Doc.

Ent. 324 at 1.  Judge Lawson also ordered that "the defendant's motion to compel [dkt. #274] is

REFERRED in part to Magistrate Judge Komives for hearing and determination on all other

issues except to the extent that the motion requests a privilege review of all individual privilege

claims made by the plaintiffs and to the extent that the motion requests in-court supervised

testimony of the plaintiffs and others as to the completeness of the ESI in the plaintiffs' data

log." Additionally, Judge Lawson ordered that "the defendant's motion to compel plaintiffs' ESI [dkt. #312] and the portion of the defendant's motion to compel [dkt. #274] that addresses privilege issues are scheduled for hearing before the Honorable David M. Lawson on January 12, 2009, at 11 a.m." Doc. Ent. 324 at 2.

I interpret Judge Lawson's October 28, 2008 order as ruling upon Paragraph F of the "Relief Requested" portion of defendant's April 7, 2008 motion and as retaining jurisdiction over the relief sought by Paragraph C and a portion of the relief sought by Paragraph D. Doc. Ent. 274 at 12-14. On October 29, 2008, Judge Lawson entered an order denying in part defendant's motion to compel, which I interpret as ruling upon Paragraph C. Doc. Ent. 325.

Accordingly, I will set forth my rulings as delineated in defendants' requests for relief to the extent they have been referred back to me by Judge Lawson; in other words, I will render rulings with respect to the relief sought by Paragraphs A and B, the remaining portion of the relief sought by Paragraph D, and the relief sought by Paragraph E.

1.  **Paragraph A:  Whether plaintiffs "should be required to produce all devices, ESI and data listed in Plaintiffs' Data Log[?]"**

**a.**  Judge Lawson's February 21, 2008 order concerning certain electronically stored information provided in part that "all parties, both individual and corporate, shall immediately secure all electronically stored information and metadata created by the parties since January 4, 1993 relating to the issues raised in the pleadings in this case, in native format, including but not limited to all computers, computer hard drives that were present on any computer used by the plaintiffs, the defendants, or the agents of either, compact disks (CDs and CD-ROMs), digital video disks, flash drives, memory cards, floppy disks, external hard drives, network backup

tapes, and any other storage media used by the plaintiffs. A written log outlining the data on such media shall be filed with the court and provided to counsel of record." Doc. Ent. 228 at 3.

Plaintiffs filed a data log on April 3, 2008, "outlining the data on each media . . . secured by them that is related to the issues raised in the pleadings in this case." Doc. Ent. 271. Among the data on the two-page chart are columns labeled "Serial Number", "Name", "Users", "Type of Data related to case", "Privileged claim", "Approximate Data dates", "Location within 245 Columbia Street, Caro," "Style", "Former Plaintiff locations", "Previous owner", "Approximate Date Acquired", "Current owner Custodian" and "Style". Doc. Ent. 271-2.

**b.** According to defendant, "Plaintiffs' Data Log, on its face, provides further support that Plaintiffs have withheld massive quantities of relevant evidence, and that they continued to do so even after the February 21, 2008 Order[.]" Doc. Ent. 274 at 4. Based upon the contents of the M&M disks and the assumption that these disks represent only two of the items on the data log, defendant suspects that "the Data Log likely contains 100's of thousands [of] additional pages of undisclosed evidence." Doc. Ent. 274 at 4 n.1. Defendant contends that, in the wake of the April 3, 2008 data log, "[p]laintiffs have still refused to reveal any information regarding the volume of ESI, the paper page equivalent volume, what is privileged and what is not, what has been searched and what has not, and what has been produced and what was not." Doc. Ent. 274 at 4. Deere contends that the April 3, 2008 data log "provides further proof that . . . all of the items described in the Data Log should be produced immediately to Deere[.]" Doc. Ent. 274 at 5.

Specifically, Deere notes that relevance is shown in the fourth column of the data log titled "Type of Data related to case" and in the sixth column of the data log titled "Approximate

Data dates". Doc. Ent. 274 at 5. Claiming that this information would have been responsive to Deere's discovery requests (Doc. Entries 214-7 & 214-8), Deere contends that "there is no information from which Deere or the Court could determine whether any of the ESI has been earlier disclosed or produced by Plaintiffs." Doc. Ent. 274 at 5-6. Defendant contends that plaintiffs' discovery responses do not offer much help. Defendant further contends that "the contents of Plaintiffs' Data Log ha[ve] never been disclosed or produced, nor made part of any discovery supplementation by Plaintiff." Deere notes plaintiff's counsel's March 27, 2006 declaration that, with the exception of the Moore CD, the documents she agreed to produce during the February 24, 2006 hearing were produced (Doc. Entries 252-22 ¶¶ 2-3 and 252 at 26 ¶ 38(A)). Doc. Ent. 274 at 6.[5] Citing defense counsel's February 29, 2008 declaration (Doc. Ent. 252 at 26-34 ¶ 38), Deere also notes that "[t]here is no proof that the items listed on Plaintiffs' Data Log have ever been earlier searched or produced by Plaintiffs; Plaintiffs' testimony on that point is either contrary or equivocal." Doc. Ent. 274 at 6. *See also* Doc. Ent. 274 at 9.

Plaintiffs respond that Deere is asking the Court "to allow it to re-examine (in electronic format) thousands upon thousands of documents Plaintiffs have already produced to Deere in hard copy." Doc. Ent. 283 at 4. Specifically, plaintiffs argue that "[t]he cost and burden of segregating privileged information and non-relevant information is estimated to exceed $250,000 and is overly burdensome[.]" Doc. Ent. 283 at 5. In other words, plaintiffs argue, "[t]he cost and burden of producing all electronically stored information far outweighs the value of producing

---

[5]On February 24, 2006, I entered an order resolving defendant's motion to compel inspection of Honigman document depository and defendant's motion to compel discovery. Within that order, plaintiffs were to produce within thirty (30) days certain documents listed in a February 21, 2006 memorandum. Doc. Ent. 47 ¶ 1.

cumulative electronically stored information." Doc Ent. 283 at 5-6. Plaintiffs explain that they have produced certain hard copy and electronic information. Doc. Ent. 283 at 5-6. According to plaintiffs, "[t]he additional electronically stored information largely falls into two categories: (1) duplicative documents stored on servers, hard-drives and disks that have already been produced electronically or in hard-copy; and (2) privileged documents created after the salient events of this case occurred (after January 15, 2003)." They "estimate that segregating privileged and non-relevant information from the various media and preparing a privilege log identifying each email communication with their counsel that has occurred on or after January 15, 2003, would require the expenditure of well over $250,000 in legal fees and legal assistant time and present no additional information in this case." Furthermore, they contend they cannot reasonably rely upon Rule 26(b)(5)(B)'s clawback provision. Doc. Ent. 283 at 6.

Plaintiffs also respond that they "properly responded to each of Deere's discovery requests." Doc. Ent. 283 at 7-11. Within their brief is a chart for eleven (11) discovery requests which purports to compare "Defense Counsel's Description of the Request in His Brief", the "Accurate Description of the Request," and "Plaintiffs' Response." Doc. Ent. 283 at 8-10. According to plaintiffs, it was "prepared in the order the underlying requests appear in Deere's Tab E to Docket No. 214 [Doc. Entries 214-7 & 214-8] and reference the Bates number of the page within Tab E." Doc. Ent. 283 at 7. Plaintiffs conclude that "even if [they] had refrained from ever producing Mike's Disk and Mark's Disk (which they did not), Plaintiffs fulfilled their discovery obligations by producing hard-copies of salient documents responsive to discovery requests." Doc. Ent. 283 at 11.

Defendant replies that "[p]laintiffs have been untruthful in their past discovery responses, and continue to be untruthful in their representations to the Court." Doc. Ent. 285 at 3-4. Based upon its own assessment of plaintiff's discovery responses (Doc. Ent. 285-5), defendant contends, "[i]t is now clear that the documents were not 'already produced,' and that 'Plaintiffs have no responsive documents,' was not, and is not, true." Doc. Ent. 285 at 4. Defendant replies that "[a]ll of plaintiffs' electronic devices and ESI are 'relevant,' as shown by plaintiffs' own proofs, as well as the defenses raised by Deere." Doc. Ent. 285 at 4-5.

**c.** Paragraph A of the relief requested asserts that "[p]laintiff should be required to produce all devices, ESI and data listed in Plaintiffs' Data Log[.]" It is defendant's position that "[t]his should include all non-content metadata for all items, whether or not alleged as privileged." Doc. Ent. 274 at 12 ¶ A. As defendant points out, there are more than thirty (30) assertions of privilege on the data log. Doc. Ent. 271-2 (Column 5); Doc. Ent. 274 at 11.

Defendant's request as framed in Paragraph A is denied. However, in lieu of the relief sought in this portion of defendant's motion, ***plaintiffs shall serve upon defendant an amended data log which explains whether the information contained in the ESI underlying the data log has been previously produced.*** If so, the amended log should indicate where this has been accomplished. If not, the amended log should state a reason why the material has not been produced. Any claims of privilege should comply with Fed. R. Civ. P. 26(b)(5). The amended data log should be served upon defendant within fourteen (14) days of the date of this order.[6]

---

[6]Deere argues that there are "[e]-mails and other documents [were] not earlier disclosed or produced[.]" Doc. Ent. 274 at 8-9. Within this argument, defendant claims that the data log "contains numerous references to e-mail and other electronic communications, not earlier disclosed[,]" and, relying upon defense counsel's February 29, 2008 declaration, defendant asserts "[t]here is no evidence that any of these devices or media have been searched or produced by

**2.** **Paragraph B:** Whether plaintiffs "should be ordered to account for the items on Plaintiffs' Data Log which have been spoliated, or are 'missing', or otherwise changed or altered from their status as originally created[?]"

**a.** Judge Lawson's February 21, 2008 order concerning certain electronically stored information provided in part that "the defendant may submit one interrogatory to the plaintiffs requesting information on the identity and location of all electronically stored information generated by the plaintiffs or within the plaintiffs' control." Doc. Ent. 228 at 3.

On March 1, 2008, defendant served Interrogatory No. 26, which asked, "Pursuant to the Order (Doc. 228), please state the identity and location of all electronically stored information (ESI) generated by plaintiffs or within plaintiffs' control." Doc. Ent. 274-3 at 4. On April 3,

---

Plaintiffs[.]" Doc. Ent. 274 at 9. The amended data log I have ordered should address this concern.

Additionally, within its argument that "[p]laintiffs' data log proves that earlier representations regarding produced evidence are false[,]" defendant claims that "[t]here is no proof that any of the items on the Plaintiffs' Data Log have been earlier produced." Also, within its argument that "[h]ard drives and servers, and their ESI content, have not been produced[,]" defendant claims that the data log "proves that earlier discovery responses and statements were untrue." Doc. Ent. 274 at 10. The amended data log I have ordered should address defendant's concerns that (a) "118 disks, CDs and DVDs on the Plaintiffs' Data Log have not been produced, disclosed or logged[,]" and (b) there is no evidence that the eleven (11) hard drives and five (5) servers were searched, disclosed or produced. Doc. Ent. 274 at 10.

Furthermore, defendant notes that "[s]erial numbered items [were] not earlier produced." Specifically, defendant contends that serial numbers 82 (LEC DE 19342) and 98 (LEC DE 19344) were not earlier produced. Deere points out that these Bates numbers were within the range of "gap" documents mentioned in a December 5, 2007 electronic mail between O'Connor and defense counsel attached to Deere's February 14, 2008 emergency motion (Doc. Ent. 223-22 at 38). Doc. Ent. 274 at 11. Here, too, the amended data log I have ordered should address defendant's concern by requiring plaintiff to either refer to when/where this document was produced or to explain why it has not been produced.

Finally, my direction that any assertion of privilege should comply with Rule 26(b)(5) will address defendant's argument that plaintiffs "over claim privilege without foundation or proper Rule 26 log." Doc. Ent. 274 at 11.

2008, plaintiffs responded.  They set forth several objections, but also attached a copy of the two-page data log.  Doc. Ent. 274-4.

**b.**      Deere argues that "Plaintiffs' data log proves items have been spoliated, not disclosed, or are otherwise 'missing'."  Doc. Ent. 274 at 7-8.  Defendant takes issue with Item K (HP 9000 E25 Unix), described as containing "[a]ll accounting for LEC and LFSC" from "1990 to present"; Item L (Toshiba notebook), described as containing "Mark's docs" from "2000 to 1/15/2003"; Item A [serial number 30] (BKUP 12-31-99 LEC PD Mike's cd) allegedly located in the Caro, Michigan conference room; Item B [serial number 119] (Used log 4-14-95 diskette), allegedly located in the Caro, Michigan conference room; and Item O (Mike's personal desktop), allegedly located in Mike's home.  Doc. Ent. 274 at 7-8.

**c.**      Plaintiffs respond that Item O "on plaintiffs' disclosure is properly made."  Doc. Ent. 283 at 11.  Plaintiffs further respond that "Deere 'spoliated' two of the devices [Items K and L] disclosed on plaintiffs' log."  Doc. Ent. 283 at 11.

**d.**      Defendant replies that "[p]laintiffs are still withholding massive quantities of email and other electronic communications."  Doc. Ent. 285 at 5-6.  Defendant contends that plaintiffs' data log "contains 26 references to email and other electronic communications storage not earlier disclosed."  Doc. Ent. 285 at 6.

Defendant also replies that "[a]side from more 'diversions,' plaintiffs offer no factual support regarding claims of privilege, allegations of criminal conduct and wrongdoing, and 'Gaps'/'Missing' documents."  Doc. Ent. 285 at 6.

**e.**      In its requested relief, defendant contends that "Plaintiffs should be ordered to account for the items on Plaintiffs' Data Log which have been spoliated, or are 'missing', or otherwise

changed or altered from their status originally created.  Although the information [in] the Log is not complete, those items would include, at a minimum, items A, B, K, L, and O-7, 8, 9, 14, 15, 23, 30,[7] 31, 61, 65, 73, 79, 81, 96, and 97."  Doc. Ent. 274 at 12 ¶ B.  Defendant asserts that "[t]his accounting was requested by Deere Interrogatory No. 26[,] but ignored by Plaintiffs."  It is Deere's position that "[t]he accounting should include specific facts (who, what, where, when, why), under oath, and supported by all relevant documents, ESI and metadata."  Doc. Ent. 274 at 13 ¶ B.

Defendant's motion is granted in part and denied in part to the extent it seeks an accounting with respect to certain items on the data log.  Doc. Ent. 274 at 12-13 ¶ B.  As for Items A and B, Column 6 of the data log ("Approximate Data Dates") reads "Cannot open" and "Not accessible", respectively.  Defendant contends that "[n]o information is given as to any attempt to access or open the device."  Doc. Ent. 274 at 7.  ***As suggested in defendant's brief, plaintiffs shall provide "proof as to what, if any, attempts have been made to access the devices listed on the Data Log Items A and B."***  Doc. Ent. 274 at 7 n.4.  This shall be done within fourteen (14) days of the date of this order.

However, plaintiffs need not provide a further accounting for Items K, L or those listed after Item O.  The chart alleges that Item K was taken on January 15, 2003 and its current owner/custodian is unknown.  The chart also alleges that Item L was broken by Deere, discarded in 2005 and its current owner/custodian is unknown.  It is defendant's position that "there is no fact evidence, declaration or other proof that Deere ever had possession of [Item L], or ever

---

[7]It appears that serial number 30 is Item A and that the fifteenth "missing" serial number is 71.  Doc. Ent. 271-2.

13

'broke' anything[,]" Doc. Ent. 274 at 7 n.3, and that there is no factual support for the allegation that Deere broke Item L, Doc. Ent. 274 at 12.[8]

However, plaintiffs have explained that "Deere engineered the purported 'sale' of the Unix Computer [Item K] to Jeff Mitchell[,]" and "Deere is also responsible for breaking Mark's Toshiba computer [Item L]." Doc. Ent. 283 at 11-12. With respect to the Unix computer, plaintiffs rely upon an undated bill of sale from LEC (signed by President Kathryn M. Laethem) to J&D Implement, Inc. Doc. Ent. 283-3. With respect to Mark's Toshiba computer, plaintiffs rely upon the October 14, 2003 deposition of Christopher Vasold, described by plaintiffs as a security agent, wherein Vasold describes the events of January 15, 2003, states that he took Mike's desk top to and retrieved it from NetSource One, and states that at least two compact discs of information were made. Doc. Ent. 283-4; Doc. Ent. 283 at 11-12.[9]

As for the fifteen (15) "missing" items listed after Item O (Mike's personal desktop),[10] defendant questions the significance of the numbered designations and supposes these designations correspond to media onto which the contents of the hard drive were downloaded. Doc. Ent. 274 at 7-8. Defendant takes the position that "[n]o explanation is given for these omissions and further withholding; disclosure to Deere or to the Court. No log is provided under

_____

[8]This statement is made within defendant's argument that plaintiffs have made "[a]llegations of criminal conduct with no factual support." Defendant argues that such allegations, allegedly made to harass and embarrass defendant and others, are "a bad faith use of the Court's procedures, and should not be permitted." Doc. Ent. 274 at 12.

[9]Plaintiffs also mention that Item L was inoperable when it was returned to Mark at the conclusion of *Laethem v. Laethem* but that "Deere caused a copy of the hard-drive to be made[.]" Doc. Ent. 283 at 11.

[10]*See* serial numbers 7, 8, 9, 14, 15, 23, 31, 61, 65, 71, 73, 79, 81, 96 and 97. Doc. Ent. 271-2.

Rule 26 for any further withheld evidence or ESI. There is no way to determine what else is **not** there." Defendant asserts that the use of these unexplained "gaps" constitutes a violation of Judge Lawson's February 21, 2008 order and "a further act of discovery misconduct[.]" Doc. Ent. 274 at 8.

In response, plaintiffs have explained that "column no. 1 provides 'serial numbers,' if any, for the electronic information disclosed. Entries 1 through 118 are numbers used to designate the various disks, Unix back-up tapes, and videos Plaintiffs have in their possession or control. They have nothing to do with Item O. Thus, there is no 'gap' in Plaintiffs' disclosure." Doc. Ent. 283 at 11.

**3.**      **Paragraph D: Whether the Court "should order that all privilege has been waived by Plaintiffs misconduct[?]"**

Pursuant to Judge Lawson's October 28, 2008 order, I need only decide the first question posed by Paragraph D of Deere's Relief Requested - whether "[t]he Court should order that all privilege has been waived by Plaintiffs['] misconduct." Doc. Ent. 274 at 13.

Defendants contend that plaintiffs have waived any attorney-client privilege with respect to any documents or information on the "M&M" disks based on plaintiffs' disclosure of those disks to defendant, and its subsequent delay in objecting to the disclosure. The parties filed supplemental briefs on this issue on November 14, 2008 (Doc. Entries 328 and 330), which were re-filed on November 18, 2008 (Doc. Entries 335 and 336). For the reasons that follow, the Court concludes that the disclosure of the "M&M" disks did not cause a blanket waiver of plaintiffs' attorney-client privilege with respect to the matters disclosed.[11]

---

[11]Defendants also argue that plaintiffs' privilege logs are insufficient, and that many of the documents claimed to be privileged do not come within the scope of the attorney-client privilege.

Congress recently adopted new Federal Rule of Evidence 502, which as relevant here provides:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.
>
> (a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.–When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.
>
> (b) Inadvertent disclosure.--When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).
>
>     * * * *
>
> (f) Controlling effect of this rule.--Notwithstanding Rules 101 and 1101, this rule applies to State proceedings and to Federal court-annexed and Federal court-mandated arbitration proceedings, in the circumstances set out in the rule. And notwithstanding Rule 501, this rule applies even if State law provides the rule of decision.

FED. R. EVID. 502. The statute enacting Rule 502 provides that "[t]he amendments made by this Act shall apply in all proceedings commenced after the date of enactment of this Act [Sept. 19, 2008] and, insofar as is just and practicable, in all proceedings pending on such date of enactment [Sept. 19, 2008]." Pub. Law 110-322, 122 Stat. 3537, § 1(c) (Sept. 19, 2008.). By its terms, Rule 502 applies even though state law provides the rule of decision in this case. *See*

---

Judge Lawson's order referring this matter to me reserves those issues to himself, and are the subject of the upcoming hearing before Judge Lawson. Accordingly, they are not addressed here.

FED. R. EVID. 502(f). Further, the parties have not suggested that it would be unjust or impracticable to apply Rule 502 here. Accordingly, the Court applies Rule 502 here.

Here, there is no suggestion that the disclosure of the "M&M" disks was anything other than inadvertent. Thus, whether the disclosure resulted in a waiver of the privilege is determined by Rule 502(b), which provides that disclosure does not waive the privilege if (1) the disclosure was inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder took reasonable steps to rectify the error after discovering the inadvertent disclosure. At the outset, defendants' arguments concerning the sufficiency of plaintiffs' privilege logs or plaintiffs' alleged gamesmanship are irrelevant. Rule 502(b) sets forth explicit factors for the court to consider, and those factors relate only to the disclosure of the privileged information itself. Plaintiffs's discovery conduct in general has no bearing on whether those factors are satisfied with respect to the particular privileged communication at issue.

Turning to the Rule 502(b) factors, the Court concludes that each element is satisfied, and thus the disclosure of the "M&M" disks does not operate as a waiver of the attorney-client privilege. First, there is no indication in the record, and defendants do not argue, that the disclosure was anything other than inadvertent. Second, it appears that plaintiffs' took reasonable steps to prevent disclosure. Plaintiffs assert, without contradiction, that the "M&M" disks are the only privileged matters that have been inadvertently disclosed, despite the voluminous discovery that has taken place in this case. *Cf. Grace Community Church v. Lenox Township*, No. 06-13526, 2007 WL 2534179, at *4 (E.D. Mich. Aug. 31, 2007) (Borman, J.). Further, plaintiffs claim and defendants have not refuted that the materials were copied by defense counsel outside of the "inspect and copy" procedure established by the parties, which

would have given counsel for plaintiffs the opportunity to conduct a privilege review of the data on the disks prior to turning that data over to defendants. Thus, the Court finds that plaintiffs took reasonable steps to protect the confidentiality of the information.

Finally, under the third Rule 502(b) factor, plaintiffs took prompt action to secure return of the privileged matter. Plaintiffs' counsel first discovered the inadvertent disclosure at the January 31, 2008, deposition of plaintiffs' expert Thomas Schwartzenberger. Counsel lodged an objection based on privilege at that deposition, sent a letter to defense counsel demanding return of the information on the same day, and lodged repeated objections and requests for return at subsequent depositions. And, by February 21, three weeks after learning of the inadvertent disclosure, plaintiffs had secured from the Court an order compelling defendants to return the inadvertently disclosed disks. In these circumstances, plaintiffs diligently attempted to rectify the inadvertent disclosure. Accordingly, under Rule 502(b), the disclosure of the "M&M" disks did not result in a waiver of the attorney-client privilege with respect to any of the information on the disks.

Further, even were the Court to conclude that Rule 502 should not be applied here, the result would be the same. Defendants rely on federal cases discussing federal law relating to waiver by inadvertent disclosure, but those cases are not controlling. Plaintiffs' claims are all state law claims, and "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." FED. R. EVID. 501. This choice of law rule applies to the issue of waiver by inadvertent disclosure. *See In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003); *Continental Casualty Co.*

*v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 766 (D. Md. 2008); *Federal Deposit Ins. Corp. v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 380 (S.D. Cal. 2000).

Michigan law provides for even greater protection of the attorney-client privilege than does Rule 502.  Under Michigan law, "the fact that confidential information has been published does not automatically waive the attorney-client privilege. . . . [T]o constitute a valid waiver, there must be an intentional, voluntary act or 'true waiver.'  Thus, a document inadvertently produced that is otherwise protected by the attorney-client privilege remains protected." *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 241, 646 N.W.2d 179, 186 (2002).  Thus rule applies even if the party claiming the privilege failed to take adequate precautions to prevent inadvertent disclosure.  *See Holland v. Gordy Co.*, No. 231183, 2003 WL 1985800, at *6 (Apr. 29, 2003); *Leibel v. General Motors Corp.*, No. 240971, 2002 WL 31953810, at *3 (Dec. 13, 2002) (after remand to trial court by *Leibel*, *supra*).  Here, there is no evidence that the disclosure of the "M&M" disk was anything other than inadvertent.  Thus, under Michigan law no waiver of the privilege occurred.

4.      **Paragraph E:  Whether the Court "should find Plaintiffs in violation of the Federal Rules of Civil Procedure, and its Orders, including February 21, 2008 (Doc. Ent. 228)[?]"**

**a.**      On May 22, 2006, plaintiffs served the following responses to defendant's March 6, 2006 fourth request for production of documents:

> 108.      Exact copies (i.e., bit-by-bit mirror image copies) of all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, and other electronic media related to this action from 1992 - present."

> Response:      Plaintiffs object to Request No. 108 for the reason that it is overbroad, highly intrusive, and is posed for the purpose of harassing Plaintiffs.

109. Exact copies of all relevant disks, CDs, DVDs and other removable media related to this action from 1992 - present.

Response: Plaintiffs object to Request No. 10[9] for the reason that it is overbroad, highly intrusive, and is posed for the purpose of harassing Plaintiffs.

Doc. Entries 283 at 12, 283-5. The instant motion was filed on April 7, 2008. Doc. Ent. 274. In support of their argument that the instant motion to compel ESI is untimely, plaintiffs state that "[t]wo years have passed since Plaintiffs served their responses and Defendants failed to bring any Motion to Compel." Doc. Ent. 283 at 12.[12]

**b.** At the outset, defendant seeks "a finding by the Court that the Plaintiffs are in violation of the February 21, 2008 Order (Doc. Ent. 228) for contents of log items not disclosed, items omitted or 'gaps' on the log, spoliated items, and Plaintiffs' refusal to produce all items in the log and their contents in response to earlier discovery and the requirements of Rule 26." Doc. Ent. 274 at 1. Later, Deere contends that plaintiffs' April 3, 2008 data log "provides further proof that Plaintiffs should be found in violation of the Court's February 21, 2008 Order[.]" Doc. Ent. 274 at 5. Also, Deere states that plaintiffs' omission of serial numbered items violates the Court's orders, including Judge Lawson's February 21, 2008 order. Doc. Ent. 274 at 11. In the end, defendant requests that the Court "find Plaintiffs in violation of the Federal Rules of Civil Procedure, and its Orders, including February 21, 2008[.]" Defendant specifically takes issue with (1) Items A and B of the data log; (2) the fifteen (15) missing items from Item O; (3) the

---

[12]In reply, defendant notes that plaintiff's response to Request No. 107 ("Backup tapes containing email and other electronic data related to this action from 9192 - present.") was "Plaintiffs have no responsive documents." Doc. Ent. 283-5 at 2; Doc. Ent. 285 at 2.

spoliation of Items K and L; and (4) "[r]efusing to reveal, disclose or produce the items and contents on the Data Log in response to earlier discovery[.]"  Doc. Ent. 274 at 13-14.

The first three of these items (Doc. Ent. 274 at 13-14 ¶¶ E(1)-E(3)) were addressed in Section I.D.2.e of this opinion.  I assume that these items represent the extent to which ¶E challenges plaintiff's compliance with the Court's February 21, 2008 order.

Therefore, it follows that Paragraph E(4) seeks a finding that plaintiffs are in violation of the Federal Rules of Civil Procedure and the Court's orders, in a more general sense, for "refusing to reveal, disclose or produce the items and contents on the Data Log in response to earlier discovery, including but not limited to, those described in Doc. Ent. 252, ¶38, subparagraphs A-H."  Doc. Ent. 274 at 14 ¶ 4.  Paragraph 38 mentions (A) plaintiffs' June 29, 2005 Rule 26(a)(1) initial disclosures (Doc. Ent. 179-3); (B) plaintiffs' written discovery responses (Doc. Entries 214-7 & 214-8); (C) plaintiff Michael Laethem's April 26, 2006 deposition (Doc. Entries 223-8 & 223-9) answers and counsel statements; (D) Michael Laethem February 1, 2008 deposition (Doc. Ent. 223-5); (E) Mark E. Laethem's April 21, 2006 deposition (Doc. Entries 223-14 & 223-15); (F) Mark Laethem February 1, 2008 deposition (Doc. Ent. 223-4); (G) plaintiffs' March 15, 2006, March 16, 2006, February 25, 2006 and April 2006 responses to Rule 30(b)(6) requests; and (H) "Tab O, Plaintiffs' misrepresentations, as reflected in the [Court's April 26, 2006] Orders [Doc. Entries 78 and 79] [denying Deere's March 21, 2006 Motions to Compel] [Doc. Entries 53 and 54] [.]"  Doc. Ent. 252 at 26-34 ¶ 38.[13]

_____

[13]Deere's January 31, 2008 motion for reconsideration (Doc. Ent. 216) of my April 26, 2006 order (Doc. Ent. 78) was denied on March 25, 2008 (Doc. Ent. 267).

In response to the instant motion, plaintiffs argue that the Court "should strike pages 6 through 12 of Deere's brief." Doc. Ent. 283 at 12-13. These pages correspond to the section of Deere's brief titled, "[o]ther discovery misconduct and plaintiffs' data log[.]" Doc. Ent. 274 at 8-12. Within this section, Deere mentions (1) "[e]-mails and other documents not earlier disclosed or produced[;]" (2) "[p]laintiffs' data log proves that earlier representations regarding produced evidence are false[;]" (3) "[h]ard drives and servers, and their ESI content, have not been produced[;]" (4) "[s]erial numbered items not earlier produced[;]" (5) "[p]laintiffs' over claim privilege without foundation or proper Rule 26 log[;]" and (6) "[a]llegations of criminal conduct with no factual support." Doc. Ent. 274 at 8-12. In plaintiffs' opinion, "Pages 6 through 12 of Deere's brief is yet another rehash of the numerous motions and declarations Deere has already filed with this Court. See Docket[] Nos. 214, 223, 236, 238, 247, 238, 249, 250, 251, 252, 256, 257, 260, 266, 268, 269, and now 274." Doc. Ent. 283 at 12.

Perhaps this is true. To begin, the instant motion states that it is "based upon the accompanying Memorandum Brief and its attachments, and earlier papers filed with the Court including Doc. Ents. 214-271." Doc. Ent. 274 at 1.

Also, defense counsel's February 29, 2008 declaration regarding withheld and "missing" evidence and in response to professional responsibility allegations alleges that "[i]n multiple discovery response[s], and in deposition answers and objections, and in briefs, at Court hearings and other representations to the Court, Plaintiffs and their counsel gave false or misleading responses, misrepresenting that such ESI did not exist[.]" Doc. Ent. 252 at 26-34 ¶ 38. This declaration was filed in conjunction with several of Deere's motions (Doc. Entries 194, 214, 215,

216 and 223), Doc. Ent. 252 at 1 ¶ 1, each of which has already been addressed by this Court. It is this declaration on which the remaining item is based.

However, some of the items cited in ¶¶ 38(A)-(H) of the declaration were attached to matters which have been addressed by the Court since the instant motion was filed. For example, the January 31, 2008 motion to dismiss (Doc. Ent. 214) was ruled upon on August 26, 2008 (Doc. Ent. 309), September 30, 2008 (Doc. Ent. 319) and November 3, 2008 (Doc. Ent. 326). Also, defendant's February 14, 2008 emergency motion (Doc. Ent. 223) was ruled upon on September 30, 2008 (Doc. Ent. 319)[14] and again on November 3, 2008 (Doc. Ent. 326).

In any event, to the extent paragraph E(4) of defendant's April 7, 2008 prayer for relief requests that the Court find plaintiffs in violation of the Federal Rules of Civil Procedure and this Court's orders, it is denied. Plaintiff's motion is based upon Fed. Rules of Civ. P. 26 and 37. Doc. Ent. 274 at 1. Perhaps this request for relief is based upon Rule 26(b)(5) ("Claiming Privilege or Protecting Trial-Preparation Materials."), Rule 26(e) ("Supplementing Disclosures and Responses."), Rule 37(b) ("Failure to Comply with a Court Order."), and/or Rule 37(c) ("Failure to Disclose, to supplement an Earlier Response, or to Admit."). Whatever the case, I conclude that a determination at this stage of the litigation that plaintiffs have violated Federal Rules of Civil Procedure 26 and/or 37 has not been clearly established. The Court is in the process of determining what discovery should be had so that discovery may proceed and this case move forward.

---

[14]In the November 3, 2008 order (Doc. Ent. 326) overruling objections to my September 30, 2008 opinion and order (Doc. Ent. 319), Judge Lawson provided that "[t]he Court expects the parties to furnish a full report as to the status of this issue at the hearing now scheduled for November 19, 2008, where the defendant's non-production of ESI will be discussed." Doc. Ent. 326 at 4. These reports were filed on November 18, 2008. Doc. Entries 337 and 338.

**II.** **ORDER:**

In accordance with the foregoing opinion, defendant's motion to compel production of all items in ESI in plaintiffs' data log (Bearing Doc. Ent. 271-2) and for other relief (Doc. Ent. 274) is GRANTED IN PART and DENIED IN PART to the extent it has been referred back to me.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

                                s/Paul J. Komives
                                PAUL J. KOMIVES
Dated: Nov 21, 2008            UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 21, 2008.

                   s/Eddrey Butts
                   Case Manager