UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAETHEM EQUIPMENT COMPANY,
LAETHEM FARM SERVICE COMPANY
MICHAEL T. LAETHEM and MARK E.
LAETHEM,                                        Case Number 05-10113
                                                Honorable David M. Lawson

                        Plaintiffs,

v.

DEERE & COMPANY,

                        Defendant.
_____/

## MEMORANDUM ORDER ON PARTIES' RECIPROCAL MOTIONS TO COMPEL DISCOVERY OF ELECTRONICALLY STORED INFORMATION, OVERRULING  OBJECTIONS TO MAGISTRATE JUDGE'S ORDER, AND SETTING CASE MANAGEMENT DATES

The plaintiffs filed this lawsuit in 2005 alleging that the defendant, Deere & Company, unlawfully terminated franchise agreements with the Laetham businesses and effectuated the sale of those businesses to a favored competitor for the purpose of consolidating the defendant's regional farm implement dealerships.  The case has been vigorously and exhaustively litigated.  It was on track for a June 2008 trial until the defendant raised an issue in January 2008 over certain electronically stored information (ESI), which it claims the plaintiffs had withheld.  The plaintiffs quickly joined that scrum with demands of its own for the defendant's ESI.  In the eighteen months that this issue has been litigated, there has been little production of information.  The points of resistance that have developed are the costs of production and the assertion of attorney-client and work-product privileges.  The Court had appointed an ESI expert to advise the Court and the parties of the feasibility and cost of production of the ESI in each other's possession, but lack of cooperation by the defendant and co-opting of that expert by the plaintiffs resulted in the expert's

motion to withdraw, which the Court granted on March 5, 2009.  In the latest round of motions, the defendant seeks to overcome the plaintiffs' privilege assertion by arguing that a blanket waiver occurred through inadvertent disclosure and procedural irregularities.  The magistrate judge rejected that conclusion in an order, the defendant has objected to that order, and the plaintiffs have objected to other aspects of that order.  The Court had established a protocol for evaluating claims of privilege in orders dated October 28, 2008 [dkt #324] and November 26, 2008 [dkt #343], but the defendant claims that the plaintiffs have not complied with the orders' provisions.  The Court set out additional instructions, including procedures for assessing costs of production, in its order dated December 3, 2008 [dkt #346].  The defendant is in technical compliance with that order, but the substance of the information furnished is questionable, suggesting production costs that appear to be unreasonably high.

Given the state of the record, the Court will address the defendant's objection to the magistrate judge's order finding no blanket privilege waiver, the parties claims of privilege, and the compelled production of ESI in the possession of each side.  The Court also will set deadlines for completion of the final discovery and schedule the case for trial.

I.

As noted above, the Court set a "final" discovery cut-off date for January 31, 2008 and a trial date of June 10, 2008.  However, on January 31, 2008, the defendant filed a motion to dismiss with prejudice based on the plaintiffs' discovery misconduct, plus three other motions. The defendant complained that the plaintiffs had withheld two compact disks full of data, known as the "M&M disks" (designating Michael and Mark Laethem), and the defendant only obtained this information in January 2008. The plaintiffs contend that they offered the disks to the defendant during a

production session at the plaintiffs' attorney's offices on February 6, 2006, but the defendant did not identify the disks as something it wanted.

After the Court referred the defendant's motion to dismiss for discovery misconduct to the magistrate judge, the defendant filed an emergency motion requesting, among other things, that the Court enter an order requiring the plaintiffs to secure missing evidence and hold all other proceedings in abeyance until the issue of plaintiffs' discovery misconduct was resolved. The Court addressed that motion at a status conference and entered an order on February 21, 2008 that preserved the M&M disks, established a mechanism for the retention of a common computer expert to provide advice concerning the content of electronic storage media and feasibility of identifying privileged material, set deadlines and procedures for asserting claims of privilege, preserved all electronic data created by the parties since January 1993, and allowed the defendant to "submit one interrogatory to the plaintiffs requesting information on the identity and location of all electronically stored information generated by the plaintiffs or within the plaintiffs' control." Order Pursuant to Status Conference Concerning Certain Electronically Stored Information [dkt. #228]. The balance of the emergency motion to secure was referred to the magistrate judge for resolution to the extent not addressed by the Court. The magistrate judge filed a report and recommendation adopted by this Court over the defendant's objections.

In response to the February 21, 2008 order, the parties agreed to engage iVize LLC, a national provider of discovery services, to serve as the computer expert. Two weeks after the Court's order, the defendant filed a motion for clarification of the Court's order and a motion for adoption of its Rule 26(f) plan. Following a hearing on that motion, the Court entered an order on May 15, 2008 that reads:

It is further **ORDERED** that the parties may conduct discovery to identify and obtain the ESI in the other side's possession before July 31, 2008. Each side may submit up to twenty interrogatories (which includes subparts) to the other side. Each side may also submit document requests to the other side.

It is further **ORDERED** that the parties may file motions to compel production of discovery materials for the purpose of challenging the assertion of a privilege on or before August 29, 2008.

Order on Mot. for Clarification of ESI Order [dkt. #291] at 2.

As with other things in this litigation, the parties' relationship with iVize quickly soured. IVize was appointed to be a neutral expert, but the defendant did not sign onto its proposal and the plaintiffs co-opted iVize, which began to act as the plaintiff's expert. Consequently, iVize moved to withdraw, which the Court allowed after a hearing on March 4, 2009. IVize was disqualified from acting as either side's expert thereafter.

The defendant brought a motion to compel production of the plaintiffs' ESI on August 29, 2008. It asked that the plaintiffs be prohibited from further amending their privilege log; that the Court find that all privilege has been waived by the plaintiffs; that the Court conduct a document-by-document privilege review; and that a special master be appointed to assist the Court. On October 28, 2008, the Court entered an order denying the motion "to the extent that it requests the Court to consider the issues surrounding the data log in connection with the defendant's other motions for sanctions." [dkt. #324]. The motion was referred for hearing and determination to Magistrate Judge Paul Komives "on all other issues except to the extent that the motion requests a privilege review of all individual privilege claims made by the plaintiffs and to the extent that the motion requests in-court supervised testimony of the plaintiffs and others as to the completeness of the ESI in the plaintiffs' data log." *Ibid.* The Court also established a briefing schedule for a privilege review:

It is further **ORDERED** that unless the magistrate judge concludes that the plaintiffs have waived all claims of privilege on or before November 24, 2008, the

-4-

plaintiffs shall provide to the defendant and the Court a final privilege log that provides the information required by Fed. R. Civ. P. 26(b)(5) on or before December 1, 2008. The defendant then shall identify specifically, item by item, with reference to the privilege log, those items on the plaintiffs' privilege log for which the defendant challenges the assertion of privilege on or before December 15, 2008, stating with particularity and concisely the basis on which the challenge is made.

It is further **ORDERED** that the plaintiffs must submit to the Court and the defendant a one-paragraph summary justifying the assertion of privilege for each item challenged by the defendant on or before December 29, 2008. The plaintiffs shall also furnish the disputed documents, segregated and identified by reference to the privilege log, to the Court for *in camera* review on or before December 29, 2008. . . .

The parties are informed that the Court will impose sanctions for assertions of privileges or challenges to privileges that are not warranted by existing law or are made for an improper purpose. *See* Fed. R. Civ. P. 11; 26(g). The Court also will award attorney's fees to the prevailing party on each assertion of privilege or challenge thereto if the opposing party's position is not substantially justified. *See* Fed. R. Civ. P. 37(a)(5).

*Ibid.* The Court then extended these deadlines in a later order.

The magistrate judge entered an order finding that the plaintiffs had not waived all privilege. The defendant's objections to that order are now before the Court.

The plaintiffs' final privilege log contains 586 items, of which the defendant challenges 415 of them, 180 on multiple bases, including 20 that are challenged on four or more grounds. These challenges are contained in exhibits to the defendant's brief. The defendant's exhibit lists sixty-nine documents as challenged on the ground that they do not appear to be communications because they are not designated as to or from anyone (although the defendant asserts there are only fifty-six in that category on the list). The defendant challenges 142 items (or 139 according to the defendant's count) as not privileged because they appear to only involve communications by or between Mark and Mike Laethem and no attorneys. The defendant challenges 269 items because they contain the word "case" in the description, 18 with the word "dispute," and three have the word "settlement."

In its brief, the defendant suggests that the Court conduct a "sampling," and lists certain items.  Although the Court never approved that procedure, the plaintiffs have submitted *ex parte* thirty-one documents for *in camera* review.  The documents submitted for review are those identified in the defendant's brief as a "sampling."  These documents are briefly summarized as follows.

15: This document is a draft e-mail sent on August 12, 2002 by Michael Laethem to Mark Laethem for review and eventually to Jack Couzens in document number 144.  It discusses tax issues, issues with Kathryn Laethem, and possible litigation.

27: This document is a draft e-mail sent on May 29, 2002 by Michael Laethem to Mark Laethem for review and eventually to Jack Couzens in document number 168.  It discusses strategy for appraising value of real estate and terms regarding an unknown deal.

32: This document is an e-mail sent on May 9, 2002 from Mark Laethem to Michael Laethem with proposed changes to an e-mail to be sent to Jack Couzens.  It was thereafter sent as document number 416 to Jack Couzens on May 9, 2002 by Michael Laethem.

51: This document is addressed to Jack Couzens.  It is identical to document number 49, which is an e-mail of July 16, 2002 eventually sent to Couzens from Michael Laethem.  Document discusses effort to strike a deal regarding sale of Laethem business, and potential dispute with Kathryn Laethem.

70: This document is a blank e-mail sent by Michael Laethem to "Mark" on April 16, 2002.  The e-mail contains the subject line "What do you think?" and contains two attached files: "Jack Couzens.doc" and "Harmony tree.doc."

71: This document is addressed to Jack Couzens.  It discusses effort to purchase Laethem business.  It was apparently never sent to Mr. Couzens, but according to Michael Laethem the entire contents of the document were communicated to Mr. Couzens orally.

72: Document is entitled "Harmony tree."  It appears to discuss proposed plans for Laethem business.

73: Document is identical to 51.

74: Document is a letter addressed to "Jack."  A longer version of this document was e-mailed as an attachment to Jack Couzens in document number 324.  Author discusses recent conversations he had with others and his concerns about the viability of a proposed deal to obtain the business.

75: Document is addressed to "Jack," and was e-mailed on May 9, 2002 to "Jack" by Michael Laethem.  It appears to contain author's comments about a proposed deal.  An identical copy was emailed to "jack.couzens@couzens.com" in document number 344.

76: This document is dated May 29, 2002, and is addressed to "Jack" from "Michael."  It makes several comments and asks questions about a proposed deal.  A substantially similar writing (with an added material) was e-mailed to Jack Couzens by Michael Laethem.

78: This document was e-mailed on October 10, 2002 as an attachment to Jack Couzens by Michael Laethem.  It suggests certain modifications to a proposed agreement.

82:     This document appears to be identical to document number 72, with an additional page of questions.

179:    This document is identical to document 70.

180:    This document is similar to document 252, with small differences.

220:    This document is identical to document 51 and 73.  Its text was e-mailed to Jack Couzens on July 16, 2002, in document 218.

239:    This document is identical to 70.

252:    The document, dated April 24, 2002, is addressed to "Jack Couzens."  Provides update on developments with business, and asks "WHAT SHOULD WE DO?" as well as other questions.  It was apparently never sent to Mr. Couzens, but according to Michael Laethem the entire contents of the document were communicated to Mr. Couzens orally.

351:    This document (1/2/2008) is an e-mail conversation between Kim Brown, CPA at Brown & Kent, Michael Laethem, and Honigman attorneys Ann Andrews and Francis O'Donnell.  It notes that a subpoena was served on Kim Brown by Varnum on January 2, 2008.

505:    This document is a fax cover sheet from February 16, 2003, from Laethem Farm Service Company, addressed to Jack Couzens, with the subject "Stock Purchase Agreement.  It contains a note describing the faxed information as information believed by Kathryn Laethem to be evidence of self-dealing by the author.

517:    This document is an e-mail (12/5/2002) exchange between David Deutsch and Michael Laethem.  It discusses changes to some document.

On December 3, 2008, the Court ordered the plaintiffs to provide a report of the ESI that it sought from the defendant, which was to include an indication as to whether each item was previously requested. [dkt. #346].  The plaintiffs timely provided their report. [dkt. #351].  The defendant responded, arguing that the plaintiffs never requested ESI during their earlier discovery requests, and that the defendant produced some of the ESI requested.  [dkt. #354].  The defendant observed, correctly,[1] that the Court already ruled that the plaintiffs are not entitled to further

---

[1]On August 27, 2007, the Court held that "witness interview and investigation summaries are protected by the attorney-client privilege, since they parallel the type of information discussed in *Upjohn* and *In re Columbia/HCA Healthcare Corp.*  The other documents were kept in the ordinary course of business, and the defendant has failed to carry its burden of showing that they were assembled in anticipation of litigation, they contain the mental impressions of legal counsel, or they contain communications for the purpose of rendering legal advice," and ordered the defendant to "produce all documents except requested communications from counsel, witness interview summaries, and investigation summaries."  Order at 10 & 16 [dkt. #164].

discovery of Deere's internal investigation.   As to the cost of production, the defendant's retained electronic expert Rebecca Hendricks argued that it would cost $107,821 to harvest the requested ESI.  The methodology, it appears, contemplates locating the relevant document and then searching multiple other media to determine if other documents related to the targeted request might be relevant.  Additional costs would be incurred when attorneys review the documents for privilege and relevancy.   In its item-by-item response, Deere claims that every item of ESI requested by the plaintiffs may be located on its email server backup tapes.

The Court held a hearing on these motions on March 4, 2009.

## II.   Objections to Magistrate Judge's order re: blanket privilege waiver

### A.

In his order [dkt #341], the magistrate judge concluded that the plaintiffs did not waive all of their claims of privilege.  He first determined that Federal Rule of Evidence 502 applied to the matter, because it was "just and practicable" to do so.  *See* Pub. Law 110-322, 122 Stat. 3537, § 1(c) (Sept. 19, 2008).  The magistrate judge found that all three factors contained in Rule 502(b) were present, so there was no waiver.  First, he wrote that "there is no indication in the record, and defendants do not argue, that the disclosure was anything other than inadvertent."  Order at 17. Second, the plaintiffs appeared to have taken reasonable steps to prevent disclosure.  He noted that despite voluminous discovery, the allegedly privileged documents on the M&M disks were the only ones that had been disclosed, citing *Grace Community Church v. Lenox Township*, No. 06-13526, 2007 WL 2534179, at *4 (E.D. Mich. Aug. 31, 2007).  He also observed that defense counsel copied the disks outside of the procedures established by the parties.  Finally, he concluded that the plaintiffs took prompt remedial action, since the privilege issue came to light during a deposition

-8-

on January 31, 2008; an objection was immediately lodged; and a letter was sent that same day. Within three weeks, the plaintiffs had obtained a Court order requiring the defendant to return the privileged material.

The magistrate judge concluded that if Michigan law were to apply, a similar result would obtain because Michigan law provides even greater protection than does Rule 502, requiring an intentional act before a waiver can occur, *see Leibel v. General Motors Corp.*, 250 Mich. App. 229, 241, 646 N.W.2d 179, 186 (2002), which is not present in this case.

B.

The defendant objects on the ground that the magistrate judge did not correctly apply Rule 502. It argues that disclosure was not inadvertent. It recounts its general argument that the M&M disks were unfairly withheld during discovery, and the plaintiffs have not satisfied the third requirement of the Rule 502(b) test because they have not taken reasonable steps to secure the return of the privileged documents. The defendant also argues that the magistrate judge erred by not concluding that the plaintiffs' misconduct warrants a blanket waiver of privilege. It contends that the plaintiffs were willing to disclose the disks earlier without a privilege log, which compels the conclusion that the material on the disks must not be privileged. It also notes that the plaintiffs exerted privilege claims over a large number of documents during depositions. The defendant also argues that the plaintiffs have waived privilege by not providing a privilege log until years after the disks were allegedly first turned over.

The plaintiffs respond that Rule 502 is simply a codification of Michigan's view of attorney-client privilege waiver through inadvertent disclosure. They insists that their production of the M&M disks was inadvertent, and they suggest that if the defendant would have taken them up on

the opportunity to mark the disks for copying, the plaintiffs would not have turned them over until a privilege review could be conducted.

## C.

The district court reviews an order by a magistrate judge on a non-dispositive matter to determine whether the decision is "clearly erroneous." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). A decision is "clearly erroneous" if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Where there are two plausible views, a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985).

By not specifically objecting, the parties apparently agree that Rule 502 applies to the claim made by the plaintiffs that there was an inadvertent disclosure, instead of the general rule that parties before a federal court on diversity jurisdiction apply state law on the issue of privilege. *See* Fed. R. Evid. 501. As the magistrate correctly noted, the act of Congress that adopted the amendments to Rule 502 intended that "[t]he amendments made by this Act shall apply . . . insofar as is just and practicable, in all proceedings pending on such date of enactment." Attorney-Client Privilege and Work Product Claims; Limitations on Waiver, Pub. L. No. 110-322, 122 Stat. 3537. There is no claim made that application of the rule to this issue is anything but "just and practicable."

Rule 502 provides:

**(a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.–**When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
(1) the waiver is intentional;

> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.
>
> **(b) Inadvertent disclosure.–**When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>> (1) the disclosure is inadvertent;
>> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502. Applying this rule to the issue of waiver, ignoring for the moment whether the documents are in fact privileged, it quickly becomes apparent that the defendant's objections are without merit. In fact, it is the defendant who makes the strongest case for upholding the magistrate judge's conclusion that disclosure was inadvertent. It does this by arguing that the plaintiffs were seeking to "hide that evidence from Deere and this Court." Def.'s Obj. at 13 [dkt #349]. That accusation amounts to a concession that the plaintiffs endeavored *not* to disclose privileged information. Therefore, any disclosure of the information by a plaintiff so motivated necessarily would be inadvertent.

The defendant's arguments about disclosure in 2006 do not support overturning the magistrate judge's order rejecting a blanket waiver. First, the defendant denies ever receiving production of the M&M disks in the past. Not surprisingly, it has not pointed to any evidence establishing that the disks were produced without a privilege redaction. At most, the defendant could point to the fact that the plaintiffs offered the disks on a voluntary basis in 2006. But such an offer to provide the disks does not imply a promise that the disks would be copied immediately and without redacting the documents on which a privilege was claimed. According to the plaintiffs, no

one marked the disks for copying at that discovery session, they were not provided to the defendant, and there was no opportunity for the plaintiffs to claim *or* waive a privilege.

The defendant also claims that Rule 502(b)'s second and third elements are not met because the plaintiffs failed to take prompt action to remedy any inadvertent disclosure if the disclosure first occurred in 2006.  However, the defendant has not made any showing that there was any disclosure in 2006.  The magistrate judge's conclusion that the plaintiffs' prompt action following disclosure cannot be otherwise characterized as clearly erroneous.

The defendant does appear to argue that the privilege was waived on a basis other than inadvertent disclosure.  Rule 502(b) is not the sole source of law on the issue of waiver, and to the extent that the magistrate judge's order suggested otherwise, it is incorrect.  The advisory committee notes make this point, stating:

> [W]hile establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally. . . . The rule governs only certain waivers by disclosure.  Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product.

Fed. R. Evid. 502, Advisory Committee Notes.  Because Michigan law provides the rule of decision in this case, it controls the inquiry whether there is a waiver for misconduct.  *See* Fed. R. Evid. 501.  "'Michigan has long recognized the common-law privilege extending to communications between a client and an attorney.'"  *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (quoting *Sterling v. Keidan*, 162 Mich. App. 88, 412 N.W.2d 255, 256 (1987)).  This "mantle of secrecy is thrown upon communications between an attorney and his client on the ground of public policy, because they are regarded as essential to enable the attorney to properly advise his client in the matter under consideration."  *Watson v. Detroit Free Press*, 248 Mich. 237, 238, 226 N.W. 854, 854 (1929).

-12-

The defendant argues that there is waiver because the privilege log was not turned over in 2006. However, as discussed above, there has been no showing by the defendant that other documents on the disks or documents over which privilege is claimed were produced at the time. The authority cited by the defendant, therefore, is inapposite. *Bobbitt v. Academy of Court Reporting, Inc.*, 2008 WL 4056323 (E.D. Mich. Aug. 26, 2008), is unhelpful to the resolution of the issues here because it applied the federal common law and did not address the issue of waiver by misconduct. Similarly, *Large v. Our Lady of Mercy Medical Center*, 1998 WL 65995, at *4 (S.D.N.Y. Feb. 17, 1998), provides the defendant little help. It held that privilege was waived when no privilege log was provided, but in that case the allegedly privileged information actually was turned over.

The only legal authority cited by the defendant that arguably helps its case is *Glidden Co. v. Jandernoa*, 173 F.R.D. 459 (W.D. Mich. 1997), in which the court noted that "[w]here . . . a privilege log does not provide enough information to support the privilege claim, the assertion of privilege may be rejected on that basis." *Id.* at 483. However, the defendant's objections do not point to any deficiency other than the plaintiffs' claimed tardiness.

The defendant arguably points to two additional types of alleged misconduct, without explicitly arguing that either supports waiver: the assertion of privilege during depositions and the plaintiffs' alleged misconduct by not turning over the M&M disks earlier in the litigation. Because it never made the argument that these constituted grounds for waiver before the magistrate judge, the defendant has forfeited any such claim. *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (holding that parties may not raise new arguments or issues at the district court stage that were not presented to the magistrate judge).

The Court finds that the magistrate judge's conclusion that the plaintiffs did not effectuate a blanket privilege waiver by inadvertent disclosure or otherwise by their conduct is not clearly erroneous. The defendant's objections to that part of the magistrate judge's order will be overruled.

### III. Parties's other objections to Magistrate Judge's order

#### A.

In the same order [dkt #341], the magistrate judge also considered the issue of the plaintiffs' data log. The magistrate judge denied the defendant's demand for all ESI listed on the plaintiffs' April 2008 ESI log. However, he ordered the plaintiffs to "serve upon defendant an amended data log which explains whether the information contained in the ESI underlying the data log has been previously produced" within fourteen days of the order. He also concluded that the April 2008 data log is not incomplete on its face. Although the schedule provided on the list is not entirely sequential in that certain numbers are omitted, the magistrate judge concluded that the mere fact that the numbers used to designate certain disks are not sequential does not provide a basis, in itself, for disbelieving the log's completeness. However, he ordered that "plaintiffs shall provide 'proof as to what, if any, attempts have been made to access the devices listed on the Data Log Items A and B'" within fourteen days of the order. He also concluded that the plaintiffs' violation of Rule 26 or 37 "has not been clearly established."

#### B.

Both parties have objected. The plaintiffs object on the ground that they should not be required to provide a data log before the deadline established by the Court, and they also argue that

the order may require them to produce ESI, which would be premature until the Court allocates the cost of production. The plaintiffs also object on the ground that the defendant has made unduly broad discovery requests and it should be required to narrow them.

The defendant argues that the magistrate judge clearly erred on two counts. First, it argues that the plaintiffs' numbered list is otherwise sequential between 1 and 118, except for its inexplicable omission of fifteen numbers. Second, it argues that the failure to provide a privilege log when withholding information is a violation of the federal rules.

## C.

The magistrate judge's order was not clearly erroneous. The magistrate judge considered and rejected the defendant's argument that the plaintiffs' ESI log was sufficiently suspicious to warrant further inquiry. Although the omission of certain numbers from the list may raise questions, the Court presumes the truthfulness of representations made to the Court by attorneys. *See Smith v. Anderson*, 689 F.2d 59, 64 (6th Cir. 1982) (holding that attorney was to be "viewed in his capacity as an officer of the court and his statements . . . though conclusory, are made as if upon oath"); *see also Guy v. Lexington-Fayette Urban County Gov't*, 57 F. App'x 217, 225 (6th Cir. Jan. 15, 2003). The plaintiffs' log is such a representation. Certainly there is no basis for upsetting the magistrate judge's belief in the plaintiffs' attorneys representations without any evidence from the defendant contradicting them.

The magistrate judge also concluded that the defendant has not "clearly established" that the plaintiffs violated the federal rules of civil procedure. The defendant does not dispute the magistrate judge's articulation of the law; it takes issue only with his factual conclusion. In its objections, the defendant argues simply the following facts: the plaintiffs had the disk at least as early as 2003, and

-15-

no privilege log was turned over that identified the disks until February 2008. It relies on these factual observations to conclude that the plaintiffs' failure to turn over a privilege log regarding the disks violates Rule 26's requirement that a privilege log be produced before information is withheld from a discovery request. Missing from the defendant's objections is any showing that the information was requested formally under the federal rules (although this issue has certainly been briefed by the defendant – and rejected by the Court – before). The defendant has not shown any clear error in the magistrate judge's ruling on this issue. The defendant's objections on these grounds will be overruled.

Nor have the plaintiffs established that the magistrate judge's order is clearly erroneous. A data log identifying whether the plaintiffs previously produced the information might have been helpful to resolve the ESI issue, since the Court intended to conduct an item-by-item examination had the parties submitted more than a sampling of documents. The timing issues are now moot. The plaintiffs' objections will be overruled.

IV.  Defendant's motion to compel

The defendant argues in its motion [dkt #372] that the plaintiffs failed to provide the Court for *in camera* review all the documents that it challenged, as the Court ordered. The defendant challenged the plaintiffs' assertion of privilege on the full set of documents it identified in exhibits, but the defendant selected a "sampling" in order to facilitate resolution of the claims. The plaintiffs argue that the defendant proposed only to "sample" 21 documents, so that is all it chose to furnish for inspection. The plaintiffs maintain that they were not required to provide electronic versions of the files, since doing so would require additional work to match the electronic versions to their paper counterparts. However, in its October 28, 2009 order, the Court specifically ordered:

-16-

The defendant then shall identify specifically, item by item, with reference to the privilege log, those items on the plaintiffs' privilege log for which the defendant challenges the assertion of privilege on or before December 15, 2008, stating with particularity and concisely the basis on which the challenge is made.

It is further **ORDERED** that the plaintiffs must submit to the Court and the defendant a one-paragraph summary justifying the assertion of privilege for each item challenged by the defendant on or before December 29, 2008. The plaintiffs shall also furnish the disputed documents, segregated and identified by reference to the privilege log, to the Court for in camera review on or before December 29, 2008.

[dkt. #324].

Here, it is the plaintiffs who have disregarded the Court's direction. The defendant plainly identified challenges to a whole host of documents on the privilege log. It appears that the defendant offered its "sampling" approach as a way to streamline the review, but if the Court disagreed with its legal argument in the abstract, the defendant still wanted a few items to be considered first to put the dispute in a specific factual setting. That approach would have allowed the Court to reject the remainder of the defendant's challenges on that issue, suggesting a conditional waiver of the remaining challenges. The Court did not accept the defendant's invitation, nor did it suggest that the plaintiffs' obligation under the prior order was suspended.

The defendant's brief made clear that it challenged a large number of documents, "item by item." It stated, "with particularity and concisely the basis on which the challenge is made," although it did so on a global basis, and not with reference to each individual item. The plaintiffs only provided the Court with a small fraction of those items challenged by the defendant. Therefore, the plaintiffs have failed to comply with the order.

At this point in the case, however, the Court sees little utility in affording the defendant the relief it requests in the form of compelled production by the plaintiffs. Instead, where the Court finds that any of the defendant's categorical challenges have merit, and the sampling suggested and

-17-

provided to the Court confirms the defendant's challenge, then it will deem that the plaintiffs have

waived their claim of privilege on the remainder of the unsubmitted documents so challenged.

V.  Review of privilege log claims and challenges

The plaintiffs' resistance to the production of their ESI founded on privilege (and the

defendant's challenges thereto) focuses on the attorney-client privilege.  Because Michigan law

provides the rule for decision in this case, it also controls the elements of the attorney-client

privilege.  *See* Fed. R. Evid. 501.

It is universally recognized that "[t]he attorney-client privilege is the oldest of the privileges

for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S.

383, 389 (1981).  The purpose behind the attorney-client privilege "is the protection of interests and

relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify

some sacrifice of availability of evidence relevant to the administration of justice. . . .  The rationale

traditionally advanced for these privileges is that public policy requires the encouragement of the

communications without which these relationships cannot be effective."  *Howe v. Detroit Free*

*Press, Inc.*, 440 Mich. 203, 211, 487 N.W.2d 374, 377 (1992) (internal quotation omitted); *see also*

*Co-Jo, Inc. v. Strand*, 226 Mich. App. 108, 572 N.W.2d 251, 253 (1997) ("The purpose of the

attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the

communications are safe from disclosure.").  "The scope of the privilege is narrow: it attaches only

to confidential communications by the client to its adviser that are made for the purpose of obtaining

legal advice."  *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 450, 528 N.W.2d 778,

780 (1995); *see also Alderman v. People*, 4 Mich. 414, 422 (1857) (holding that "to make the

communication a privileged one, . . . where the relation of attorney and client exists, it must have

-18-

been made to the attorney by the party, or client, as his legal adviser, and for the purpose of obtaining his legal advice and opinion, relative to some legal right or obligation"). "Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice." *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 239, 646 N.W.2d 179, 185 (2002).

With these basic principles in mind, the Court will turn to the specific claims and challenges.

### A. Documents not designated as sent "to" or received "from" anyone

The defendant challenges a number of documents by alleging that they cannot be privileged because they were never sent to or received from anyone. The defendant designated ten items as a sampling to test this argument, and it argues that if the sampling shows non-privileged items (such as elements of privilege not met, or the crime-fraud exception applies), then there is reason to review the remainder of the challenged items. The documents the defendant identified (referring to the list set forth earlier in this opinion) are documents 51, 71, 72, 73, 74, 75, 76, 78, 82, and 252.

The plaintiffs argue that these items are clearly privileged: the communications to Jack Couzens, an attorney, are protected by the attorney-client privilege; most of these documents were word documents that were either copied and pasted into an e-mail to Mr. Couzens or were e-mailed as an attachment to Mr. Couzens; and some of the documents were earlier drafts of the communication that was finally sent to Mr. Couzens.

The defendant's challenge to these documents rests solely on the basis that they fail the "communication" aspect of the privilege inquiry. And the defendant apparently agrees that if the Court finds that the documents it identifies as a sampling are not privileged, there is no need to review the remainder. Of the 10 documents, 4 were sent in identical form to Mr. Couzens. The

-19-

documents that were sent to attorney Couzens, albeit in another medium, clearly qualify as "communication." The electronic version of a document prepared on a word processor is no less privileged than its paper version that is printed and mailed to an attorney. Similarly, a document that is copied from one type of file format (a word processing document) to another (e-mail) retains any privilege it might otherwise have had. Document numbers 51 and 73 are identical to document 49, which was sent as an e-mail to attorney Jack Couzens. Document 75 is identical to 344, an e-mail sent by Michael Laethem to Jack Couzens. Document number 78 was attached to an e-mail and mailed by Michael Laethem to Mr. Couzens. The plaintiffs have established that these documents qualify as "communication" to counsel.

Likewise, preliminary drafts of a document that is ultimately sent to counsel, and documents serving as outlines for oral conversations with counsel, amount to "communications." Communication can be defined as "any expression through which a privileged person . . . undertakes to convey information to another privileged person and any document or other record revealing such an expression." Restatement (Third) of Law Governing Lawyers § 69; Weinstein's Evidence § 503.14. But "[t]he communication need not in fact succeed" to be privileged. *Id.* at comment c; 24 Fed. Prac. & Proc. Evid. § 5484 ("The general rule seems to be that a 'communication' need not succeed in order to qualify for the privilege."). Thus, communication that is intercepted by an adversary before it can reach the attorney is protected by the attorney-client privilege. *See People v. Gardner*, 106 Cal. App. 3d 882, 887, 165 Cal. Rptr. 415, 417 (1980) (holding that letter drafted by criminal defendant to an attorney who had not yet been appointed was covered by privilege); 24 Fed. Prac. & Proc. Evid. § 5491 (noting that "if [a prisoner] writes a letter to his attorney, no one would suppose that the privilege should not apply merely because the letter has been seized by a

-20-

guard before it could be transmitted to the attorney"); *cf. Bishop v. Rose*, 701 F.2d 1150, 1156-57 (6th Cir. 1983) (holding that Sixth Amendment prohibits prosecutor from copying and using at trial a letter sent by a jailed inmate to his attorney).  The Second Circuit, applying federal law, held that "drafts of communications" that "reflect . . . confidential requests for legal advice" were privileged. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984). That court also held that a journal prepared by a client which was intended to, and did, "serve as an outline for an attorney-client conversation" was privileged.  *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006).

Document number 76 is an earlier draft of a document that was e-mailed to Mr. Couzens in document number 337, and document 74 is an earlier version of the document e-mailed to Mr. Couzens in document number 324.  These documents are protected under the attorney-client privilege as discussed above.

Documents numbered 71 and 252 are the same document in different stages of development, and are addressed to Mr. Couzens, although it is unclear whether either was ever given to Mr. Couzens in writing.  Documents numbered 72 and 82 appear to be different versions of the same document.  According to a declaration submitted by plaintiff Michael Laethem, he "communicated the entirety of the subject matter of the documents to Mr. Couzens for his legal advice."  Pl.s' Resp., Ex. A, Michael Laethem Decl. ¶ 10.  These documents, therefore, "serve[d] as an outline for an attorney-client conversation," and are privileged on that basis.  *See DeFonte*, 441 F.3d at 96.

The defendant appears to invite the Court to perform a general review of the documents, without asserting any additional basis for finding that the documents are not privileged, in case the Court discovers that they are not privileged for a reason other than that advanced by the defendant.

-21-

However, the Court ordered that the defendant "stat[e] with particularity and concisely the basis on which the challenge is made."  Order [dkt. # 343] at 2.  A general challenge is not sufficient.  "This Court should not be expected to make defendant's arguments for [it]."  *See United States v. Watkins*, 179 F.3d 489, 501 (6th Cir. 1999).

### B. Documents found on the authored by J.D. Vision server

The defendant argues that those documents in which the author is designated as "jdvision" were prepared on the "jdvision" computer.  Michael Laethem apparently testified that this computer was available to any employee of the plaintiffs' business and could communicate only with Deere.  Therefore, the defendant argues, the computer could not have been used to communicate with an attorney, nor could any documents found on it be considered confidential.

The plaintiffs contend that storing documents on the jdvision server does not render the privilege inapplicable.  According to Michael Laetham, the files were saved in password protected folders.  Pl.s' Resp., Ex. A, Michael Laethem Decl. ¶ 10 ("Each individual folder on the 'jdvision' server was password-protected, and accessible only by that user.  All documents within a folder were therefore confidential to the individual user.").  Michael Laethem testified that he would save drafted documents to the jdvision computer, then pull them up and e-mail them as attachments to Jack Couzens.

Both parties cite the following testimony given by Michael Laethem to support their positions:

> Q. Did the JD Vision computer contain e-mails?
> A. The JD Vision computer was used as a server by us and it contained e-mail backups.
> Q. But it did not act as a machine which you sent or received e-mails directly?
> A. Well, okay, it received communications, I don't know if they qualify as e-mail or not from Deere.

-22-

Q. But only from Deere?

A. I think that's true.

Q. All right. And the only communications you could send on the JD Vision were communications to Deere, isn't that right?

A. No. Can you ask that again using different words?

Q. Yeah. You said that the JD Vision computer was used as a server and it was used to contain e-mail backups?

A. Those statements are true.

Q. And then I asked you, well, okay, did it act as a machine which you sent or received e-mail directly from that machine and I thought you said only from Deere?

A. We received – that computer received communications from Deere, and then as a server it could do attachments that were located on that server could be e-mailed to anyone.

Q. You could go into the server, pull them out and attach them, but you did not create e-mails on the JD Vision machine?

A. I don't think so. If Deere would give us back our computer we could answer your questions more completely.

Def.'s Mot. for Sanctions [dkt. #355], Ex. H, Michael Laethem Dep. 120-21.  Michael Laethem's testimony therefore is that he *could* send documents from that computer to outside counsel.

What is less obvious is whether the plaintiffs actually sent any of the documents to counsel. Of the 52 items challenged by the defendant on this basis, the plaintiffs submitted only a handful to the Court for *in camera* review. Documents numbered 71 through 76, as discussed above, were communicated to counsel. Document number 82 is identical to document number 72. Document 220 was e-mailed to Jack Couzens on July 16, 2002. Documents numbered 180 and 252 are substantially similar to one another. They are addressed to "Jack Couzens." These documents are apparently never sent to Mr. Couzens, but according to Michael Laethem the entire contents of the document were communicated to Mr. Couzens orally. As discussed above, because the document was created for the sole purpose of communicating with Mr. Couzens for the purpose of legal advice, it is privileged. The privilege challenges to the documents provided to the Court will be

-23-

rejected.  The plaintiffs are deemed to have waived the privilege for documents they have failed to submit.

### C. Documents sent from one plaintiff to the other

The defendant challenges a number of documents identified on the privilege log as having been sent from one of the Laethem brothers to the other.  These documents are not on Jack Couzens's privilege log.  The defendant believes that the mere fact that a document is ultimately sent to an attorney does not render it privileged.  The defendant challenges items 15, 27, 32, 70, 179-180, 220, 239, 351, 505 and 517.

The plaintiffs rely on their argument that drafts of communications ultimately sent to their attorney qualify for the protection of the attorney-client privilege.  Turning to the specific challenges, they argue:

> No. 15: This is a draft email to Couzens. The email was sent in its entirety to Couzens on August 12, 2002 (No. 144 in Plaintiffs' Final Privilege Log).
> No. 27: This is a draft letter to Couzens. The letter was cut-and-pasted in its entirety into an email to Couzens on May 29, 2002 (No. 168 on Plaintiffs' Final Privilege Log).
> No. 32: This is a draft letter to Couzens. The letter was sent in its entirety to Couzens on May 9, 2002 (No. 416 on Plaintiffs' Final Privilege Log).
> No. 70: This item is a document addressed to Couzens and used to obtain legal advice. The entirety of this document's contents was communicated to Couzens. See Declaration of Michael Laethem, attached hereto as Exhibit A; and section B, *supra*, regarding privilege of oral communications.
> No. 179: This item is a document addressed to Couzens and used to obtain legal advice. The entirety of this document's contents was communicated to Couzens. See Declaration of Michael Laethem, attached hereto as Exhibit A; and section B, *supra*, regarding privilege of oral communications.
> No. 180: This item is a document addressed to Couzens and used to obtain legal advice. The entirety of this document's contents was communicated to Couzens. See Declaration of Michael Laethem, attached hereto as Exhibit A; and section B, *supra*, regarding privilege of oral communications.
> No. 220: This is several identical copies of a draft letter to Couzens. The letter was cut-and-pasted in its entirety into an email to Couzens on July 16, 2002 (No. 218 on Plaintiffs' Final Privilege Log).

No. 239: This item is a document addressed to Couzens and used to obtain legal advice. The entirety of this document's contents was communicated to Couzens. See Declaration of Michael Laethem, attached hereto as Exhibit A; and section B, *supra*, regarding privilege of oral communications.

No. 351: . . . The entry on Plaintiffs' Final Privilege Log makes clear that this is an email from Kim Brown of Brown & Kent, P.C. to Frank O'Donnell of Honigman Miller Schwartz and Cohn LLP regarding a subpoena. Honigman represented Brown & Kent, P.C., via separate engagement with Honigman, to assist Brown and Kent in responding to the subpoena sent to it by Defendant Deere. The item was clearly sent to an attorney, Frank O'Donnell. There is no basis for challenging this item, and especially not on the grounds Defendant has stated.

No. 505: There is no basis for Defendant to challenge this item, which is a fax from Plaintiffs, sent from the LFSC fax machine, to Couzens on February 16, 2003. These details are clear from Plaintiffs' Final Privilege Log.

No. 517: There is no basis for Defendant to challenge this item, which is an email from David Deutsch, an attorney with Couzens' law firm, to Michael Laethem. This is clear from Plaintiffs' Final Privilege Log.

As discussed above, drafts of a communication to an attorney are privileged. Moreover, "'[t]he attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents.'" *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 236, 646 N.W.2d 179, 183 (2002) (quoting *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich. App. 614, 618, 576 N.W.2d 709, 711 (1998)). The fact that a communication went from one plaintiff to the other, and then to counsel for legal advice does not render the communication unprivileged. The defendant's challenge on this ground is rejected.

### D.  Documents sent before June 6, 2002

The defendant challenges a number of documents on the ground that before June 6, 2002, there was group representation between the Laethem brothers and other members of their family. Only when Kathryn Laethem signed a waiver of conflict on June 6, 2002, contends the defendant, could Jack Couzens's representation of Michael and Mark Laethem on matters regarding their sister

-25-

and mother begin.  Moreover, attorney Couzens was not involved in any "dispute" or "case" with

the Laethems, so the defendant believes that documents with those words in the privilege log

description line are not privileged.   The defendant identifies a host of documents in this category,

listed in Tab D of its challenges to the privilege log.  The defendant makes much of the following

testimony from attorney Couzens:

> Q. So if a dispute developed, you were going to bow out for everybody and
> everybody would have to make other arrangements for legal counsel?
> A. Correct.
> Q. Did a dispute ever develop?
> A. Not while I represented them.
> Q. When did your representation of Mike and Mark stop?
> A. From a practical standpoint it stopped when Kathryn sold the business to, I don't
> know who she sold it to, but to somebody else.

Def.'s Mot. for Sanctions [dkt. #355], Ex. E, Couzens's Dep. 34-35.  Mr. Couzens testified that he

was not involved with the *Laethem v. Laethem* case when it settled in 2004.  He specifically

disclaimed that he ever saw a copy of the settlement agreement and did not provide any legal

services in relation to that agreement.  *Id.* at 79, 109.

The plaintiffs assert that Couzens began representing them on September 13, 2001.  There

was no group representation, as Couzens testified:

> Q: In this matter were you representing more than just Mike and Mark?
> A: No.
> . . .
> Q: And [the consent letter] says, quote: "Each of the parties acknowledge that this
> firm may represent any or all of them on a separate and individual basis in related
> matters now or at any time in the future herein, quote, group representation, unquote.
> Each of the parties consents to this group representation as it may exist now or as it
> may evolve in the future, notwithstanding anything to the contrary." Unquote. What
> did you intend by that?
> A: For example, if Anne Laethem, Mrs. Laethem had come to me after I had hoped
> what would be an amicable resolution of this issue to have me update her estate plan,
> I didn't want to have to go through another conflict issue with her. She would say
> Jack go ahead and amend my statement.

Def.'s Mot for Sanctions [dkt. #355], Ex. E, Couzens Dep. at 31-32.  The plaintiffs argue that even if no attorney-client relationship was formed, they reasonably believed there was, which is enough, citing *Alderman v. People*, 4 Mich. 414 (1857) ("A communication made to an attorney, under the impression that the attorney had consented to act as such for the party making it, is privileged.").

The defendant's challenge appears to be that the items listed in its Tab D could not have been communications for the purpose of obtaining legal advice.  To the extent that the argument is based on a belief that any such communications are not privileged due to joint representation, it must fail.  Group representation by itself, if there was such here, does not defeat a claim of privilege asserted by one client as to that client's communication to the attorney.  *See* Restatement (Third) of Law Governing Lawyers § 75(a) ("If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged . . . and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.").  Whether there was joint representation or not, any communication from the plaintiffs to their attorney is privileged.

Although it is not quite clear, the defendant also may be arguing that it has a good faith basis for believing that the documents are not privileged because they were not actually sent for the purpose of obtaining legal advice.  An examination of the documents themselves is necessary to resolve that question.  The plaintiffs only submitted a few of the many documents challenged on this basis for *in camera* review.  Those documents were challenged by the defendant on another ground and addressed elsewhere in this opinion.  The plaintiffs are deemed to have waived the privilege for the documents they have failed to submit.

The documents that were submitted plainly involve the pursuit of legal advice under the standard set forth by the state court in *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 239, 646 N.W.2d 179, 185 (2002):  "Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice."  Each of the submitted documents contain the plaintiffs' impressions about the state of negotiations, their family members, and the feasibility of certain proposals.  They contain ideas on what an agreement with their sister should look like.  The plaintiffs communicated these things to their attorney for the purpose of obtaining his opinion on them.  Therefore, they are protected by the attorney-client privilege.

E. Crime-Fraud exception

The defendant also tacks on to the end of its challenge a request that "all" of the documents challenged on other grounds be reviewed to see if the crime-fraud exception applies.  It relies on the following excerpt from a magistrate judge's order:

> For example, in a December 10, 2001, electronic mail to Joe, Mike stated, "In order to avoid the losses incurred by not having a JD contract, we had to say that Mark and Mike owned the LEC stock." On December 15, 2001, Mike electronically mailed Joe a letter that stated in part, "In order to preserve the business, and because we agreed that Mark and I were going to buy the business based on the formula, we made the decision to tell the IRS, Deere and everyone else that Mark and I owned LEC." In a March 24, 2002, electronic mail to Joe, Mike stated, "[t]his proposal best reduces tax and criminal liabilities to all concerned and has the be[s]t chance of keeping the IRS out of the loop." In a June 11, 2002, electronic mail to Joe, Mike stated, "Mom said I lied when I repeatedly told, filled out papers[,] filed tax forms and did all legal work saying th[at] Mark and I owned LEC." In a July 31, 2002, electronic mail to Joe, Mike stated, "Mike Allen knows and understands the tremendous legal problem potential we have if we do not get this settled." In an August 14, 2002, electronic mail to Joe, Mike stated, "no one would be fined, penalized or jailed for any tax or other offense." Doc. Ent. 224-3.

-28-

Order [dkt. #286] at 18-19.  The defendant contends that these discovery excerpts establish a criminal purpose behind the legal advice sought by the plaintiffs.

The plaintiffs argue that the defendant has failed to show that the crime-fraud exception applies to these documents.

"All reasons for the attorney-client privilege are completely eviscerated when a client consults an attorney . . . for legal assistance in carrying out a contemplated or ongoing crime or fraud."  *In re Antitrust Grand Jury*, 805 F.2d 155, 162-63 (6th Cir. 1986).  "In order for the crime-fraud exception to apply to the privileges, the [challenging party] must show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof.  This showing must be made without reference to the allegedly privileged material."  *People v. Paasche*, 207 Mich. App. 698, 707, 525 N.W.2d 914, 918 (1994) (citations omitted).  "The crime-fraud exception applies even where the attorney or the accountant is unaware that advice is sought in furtherance of the improper purpose."  *Id.* at 708 n.6, 525 N.W.2d at 918 n.6.  This exception to the attorney-client privilege does not apply when advice is sought regarding past wrongdoing.  *Id.* at 705, 525 N.W.2d at 917.

The defendant has not made the requisite showing that the crime-fraud exception applies. It has not pointed to the existence of any crime or fraud that post-dated the consultation with Jack Couzens, or that Michael or Mark Laetham consulted Couzens in relation to any such crime or fraud. The emails quoted by the magistrate judge hardly show the existence of a crime or fraud.  Nor has the defendant asserted with particularity which of the documents it genuinely believes fall within the crime-fraud exception.  This challenge is rejected.

### F.  Waiver by communication to third parties

-29-

In a reply brief on an unrelated motion, the defendant offers a new justification for finding that the privilege was waived. It argues that the plaintiffs have waived their privilege by disclosing it to a third party, citing *United States v. Textron Inc. and Subsidiaries*, 553 F.3d 87 (1st Cir. 2009). It does not elaborate to whom the documents were disclosed, or which documents would fall within that waiver.

The defendant's contention is undermined by its failure to raise this argument in its initial privilege challenge, or identify with particularity those privileged items against which this challenge is directed. Nor does the case it cites, *Textron*, 553 F.3d at 87, support its challenge. Even if it did, the opinion has been vacated and rehearing en banc has been granted. *United States v. Textron Inc.*, 560 F.3d 513 (1st Cir. 2009). Finally, without any showing that the plaintiffs disclosed the document to a third party, the defendant's challenge on this ground must fail.

## VI.  Allocation of costs of production

Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, the district court has the discretion to "condition[] discovery on the requesting party's payment of the costs of discovery." *Ibid.*; *see also* Commentary to the 2006 Amendments to Fed. R. Civ. P. 26(b)(2). Both the plaintiffs and the defendant have advocated for cost-shifting, at least when it comes to the other side's discovery requests. Pl.s' Supp. Br. in Supp. of Pl.'s Request to Deny Def.'s ESI Requests [dkt. #345] at 9-12; Def.'s Resp. to Pl.'s Mot. to Compel [dkt. #315] at 19-20. At this point in the case, it is apparent that by bearing the cost of production, each party will have an incentive to tailor its ESI request to that which is genuinely relevant to the issues that remain. Therefore, the Court finds that conditioning discovery on the

requesting party's payment of the costs of production is warranted to expedite the resolution of this issue and facilitate a just conclusion to this case. *See* Fed. R. Civ. P. 1.

The defendant has asserted that it will cost $107,821 to harvest the requested ESI, plus additional costs for privilege review. The plaintiffs likewise have stated that the costs associated with the production of their ESI (as estimated by iVize personnel) would be substantial, amounting to $77,255.

The Federal Rules of Civil Procedure state that the Court has the discretion to "specify conditions for the discovery" of ESI. Fed. R. Civ. P. 26(b)(2)(B). One such condition is requiring "payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible." Advisory Committee Notes to 2006 Amendment to Rule 26. The Sedona Principles, which have been cited favorably by the parties and the Sixth Circuit, *see John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008), specifically identify such backup tapes as an example of devices that are not reasonably accessible. The Sedona Principles, Second Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production at 46 (The Sedona Conference Working Group Series, 2007), available at http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf.; *see also* 8 Wright, Miller, & Marcus, Fed. Prac. & Proc. Civ.2d § 2008.2 ("a major source of concerns about burdensome access has been 'backup tapes'"). As a general proposition, which is supported by the report of Rebecca Hendricks, it appears that the defendant's backup tapes are not reasonably accessible devices in this case. The court in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 319-20, 323-24 (S.D.N.Y. 2003), which is cited favorably by the Sedona principles, allowed discovery of backup tapes, but required the requesting party to pay the costs of discovery. In

reaching this conclusion, the court noted that the search of the backup tapes could lead to some relevant material, but was unlikely to be a "gold mine." *Id.* at 323. After comparing the modest benefits of production to the significant costs, the court ruled that requiring payment by the requesting party was appropriate.

In this case, the Court determines that the traditional custom of requiring each party to bear its own costs of production is not practical. Much of the ESI appears to be stored on marginally accessible media, and given the extensive paper discovery that already has occurred in this case, many of the documents sought may be duplicative. In addition, the Court is convinced that both sides have broadened their demands for ESI to include not only information that they believe is valuable, but also marginal information whose primary utility would be found in the burden and cost of production to the other side. The most practical way to curb that bilateral tendency toward excess is to require the party seeking discovery to pay for the cost of finding and producing it.

### VII. Conclusion

The Court has conducted a thorough review of the submissions of the parties in light of the protocols established in earlier orders. The Court also has considered the parties' objections to the magistrate judge's order on the disputed discovery issues. The Court believes that an additional but brief period of discovery is warranted to permit the parties to secure the ESI for which they are willing to bear the production expense, and the matter should then proceed to trial.

Accordingly, it is **ORDERED** that the parties' objections to the magistrate judge's order regarding the defendant's motion to compel [dkt #s 348, 349] are **OVERRULED**.

It is further **ORDERED** that the defendant's motion to compel compliance with the Court's prior orders regarding the plaintiffs' final privilege log [dkt #372] is **DENIED**.

-32-

It is further **ORDERED** that the defendant's motion to compel production of the plaintiff's electronically stored information and challenge to the plaintiffs' assertion of the attorney-client privilege [dkt #312] is **GRANTED IN PART AND DENIED IN PART**.  The defendant's challenges to the assertion of privilege on items 15, 27, 32, 51, 70, 71, 72, 73, 74, 75, 76, 78, 82, 179, 180, 220, 239, 252, 351, 505, and 517 as designated on the plaintiff's final privilege log are **OVERRULED**.  The assertion of the attorney-client privilege as to other documents stored on the J.D. Vision server, and as to other documents listed in Tab D of the defendant's challenges to the privilege log sent before June 2, 2002 and not otherwise discussed herein, is deemed waived.

It is further **ORDERED** that the parties shall produce all ESI within their possession that has been requested by the other side and for which the other side has tendered payment for the cost of production unless a privilege has been asserted and not overruled.

It is further **ORDERED** that the parties shall proceed in good faith to limit the expense of production to that which is reasonably necessary to accomplish the instructions in this Order.

It is further **ORDERED** that nothing in this Order requires the production of any document over which a privilege is claimed and not overruled by this Court, and that the cost of production does not include the cost of attorneys or their staff in reviewing the documents for privilege.

It is further **ORDERED** that discovery of electronically stored information shall be completed on or before **October 31, 2009**.  The Court will not order discovery to take place subsequent to the discovery cutoff date.  Discovery may be conducted both before and after the discovery cutoff date by stipulation only if the extension of time does not affect the final pretrial conference or trial dates.

It is further **ORDERED** that a list in the form required by Fed. R. Civ. P. 26(a)(3) of the witnesses (both lay and expert) whom a party may call to testify, and exhibits, shall be filed with the Clerk of the Court and served on opposing counsel on or before **November 18, 2009**.

It is further **ORDERED** that motions *in limine* must be filed by **December 8, 2009**.  It is the intention of the Court that all responses to motions *in limine* shall have been filed in advance of the final pretrial conference date; therefore counsel must strictly adhere to the deadlines set forth in LR 7.1(d)(2).  Counsel should be prepared to address motions *in limine* at the final pretrial conference.

It is further **ORDERED** that the final pretrial conference shall take place on **January 5, 2010** at **2:30 p.m.**  The Proposed Joint Final Pretrial Order must be submitted to chambers (and not e-filed) before the close of business on **December 29, 2009**.  Counsel must follow the procedure outlined in the Case Management and Scheduling Order to prepare for the final pretrial conference and the Proposed Joint Final Pretrial Order.

It is further **ORDERED** that trial shall commence on **January 19, 2010** at **8:30 a.m.**

                               s/David M. Lawson
                               DAVID M. LAWSON
                               United States District Judge

Dated:  August 27, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 27, 2009.

                s/Lisa M. Ware
                LISA M. WARE

-34-