UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAETHEM EQUIPMENT COMPANY, a Michigan
Corporation, LAETHEM FARM SERVICE CO., a
Michigan corporation, MICHAEL T. LAETHEM, and
MARK E. LAETHEM,

                                   Plaintiffs,                    Case No. 2:05CV10113

vs.                                              Hon. David M. Lawson,
                                              U.S. District Judge

DEERE & CO., a Delaware corporation,

                                              Magistrate Judge Komives
                                  Defendant.

---

## DEERE'S MOTION TO BAR THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS THOMAS J. SCHWARTZENBERGER

NOW COMES Deere & Company, by its attorneys, Varnum LLP, moving to bar the testimony of Plaintiffs' expert witness Thomas J. Schwartzenberger at the trial of this action for the reasons set forth in the memorandum of law submitted in connection with this motion. Further, Deere requests that the Court hold a pre-trial hearing on this motion pursuant to Federal Rule of Evidence 104. An earlier Motion (Doc. 56) was denied without prejudice (Doc. 110).

The undersigned certifies pursuant to Local Rule 7.1 of the United States District Court for the Eastern District of Michigan that the concurrence of opposing counsel to the relief sought in this motion has been requested, and opposing counsel has not agreed to the relief sought herein.

                                        Varnum LLP
                                        Attorneys for Defendant Deere

Dated: December 8, 2009                By:             */s John W. Allen*
                                          John W. Allen (P10120)
                                          Eric J. Guerin (P46142)
                                          251 North Rose Street, 4th Floor
                                          Kalamazoo, MI 49007-3823
                                          Phone: (269) 382-2300
                                          Fax: (269) 382-2382
                                          E-mail: jwallen@varnumlaw.com/
                                          E-mail: ejguerin@varnumlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAETHEM EQUIPMENT COMPANY, a Michigan
Corporation, LAETHEM FARM SERVICE CO., a
Michigan corporation, MICHAEL T. LAETHEM, and
MARK E. LAETHEM,

                              Plaintiffs,              Case No. 2:05CV10113

vs.                                          Hon. David M. Lawson,
                                                U.S. District Judge

DEERE & CO., a Delaware corporation,

                                   Magistrate Judge Paul J. Komives

                          Defendant.

---

## MEMORANDUM BRIEF IN SUPPORT OF DEERE'S MOTION TO BAR THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS THOMAS J. SCHWARTZENBERGER

## (ORAL ARGUMENT REQUESTED)

## STATEMENT OF THE ISSUE PRESENTED

Whether the testimony of Plaintiffs' proposed expert witness, Thomas J. Schwartzenberger, meets the reliability threshold for expert evidence where the proposed expert, without obtaining the specialized knowledge of Deere dealer accounting, and disregarding standards in the field of valuation, merely adopted the opinions of Plaintiff without verification or validation.

3099850_1.DOC

| Memorandum Brief in Support of Deere's | Laethem Equipment Company, et al. |
| Motion to Bar the Testimony | vs. |
| of Plaintiffs' Expert Witness | Deere & Co. |
| Thomas J. Schwartzenberger | Case No. 2:05CV10113 |

ii

## INTRODUCTION

This case, alleging wrongful termination of Deere Dealership Agreements concerning the Plaintiff corporations, is but another chapter in Plaintiffs' serial litigation of an intra-family dispute, including earlier litigation in which Defendant has not been a party and which Plaintiffs settled for $1.5 million and other consideration.  Plaintiffs were damaged, if at all, by themselves and by others, and now attempt to recover their alleged losses from Defendant, whose conduct was proper and authorized by law and by contracts between the parties.

John Deere dealers use a unique method of accounting, commonly referred to within the industry as "Deere Dealer Accounting."  The standards of Deere Dealer Accounting are detailed in a several hundred page manual written by Deere & Co.  The standards set forth in the manual provide the fundamental underpinnings of Deere Dealer Accounting.  If one does not possess the specialized knowledge of Deere Dealer Accounting standards, he is not in a position to provide an opinion or reports generated under such a method.

To establish approximately $11 million in economic loss stemming from the alleged misconduct of Deere, Plaintiffs have given notice of their intent to rely on the testimony of Thomas J. Schwartzenberger, even though he does not possess the requisite specialized knowledge of Deere Dealer Accounting.  Mr. Schwartzenberger reported that Michael and Mark Laethem have incurred economic earnings loss of approximately $4,604,000 and Plaintiffs have incurred a loss of approximately $6,558,000 as a result of loss in value of the net assets of LEC and LFSC.

Mr. Schwartzenberger determined Michael and Mark Laethem's potential wage loss without considering the fact that their wages had severely decreased the previous two years. Rather than account for these decreases or otherwise acknowledging actual recent wage

information, Mr. Schwartzenberger applied a 4% annual wage increase to their 1991 wages. This method disregards the Laethems' actual wage information and the reasonableness of applying a 4% annual increase to wages for the type of work performed by Michael and Mark.

Mr. Schwartzenberger performed economic loss analysis based upon information received from Plaintiffs without regard to the accuracy of that information, to the industry standards for business valuation, or Deere Dealer Accounting standards. The CMD Letter, Doc. 56, Ex. 1 (009640-95).[1] *See also*, CMD rebuttal letter, Doc. 56, Ex. 2 (024850-72). As Mr. Schwartzenberger describes in his letter, **the value of the assets was determined by Michael Laethem**, with Mr. Schwartzenberger only testing **some** of the calculations performed by Michael. (See Doc. 185, Tab A, DRL 035971). This is not a verifiable valuation method.

As discussed below, Mr. Schwartzenberger's testimony, based on unsupported conjecture, fails to pass even the most fundamental tests of reliability. Mr. Schwartzenberger's testimony should therefore be barred.

## LAW AND ARGUMENT

### A.    Federal Rules of Evidence 702, 703; The *Daubert* Standard.

The admissibility of expert opinion testimony is governed by several rules of evidence, including Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, **if** (1) the testimony is **based upon sufficient facts or data**, (2) the testimony is **the product of reliable principles and methods, and** (3) the **witness has applied the principles and methods reliably to the facts of the case.**

---

[1] Unless otherwise stated, the serial numbers provided refer to "Deere re Laethem" documents.

3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

2

Fed. R. Evid. 702 (emphasis added).   Working in concert with Fed. R. Evid. 702 is Fed. R. Evid. 703, which states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.   If of **a type reasonably relied upon by experts in the particular field** in forming opinions of inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted....

Fed. R. Evid. 703 (emphasis added).

Under the Federal Rules of Evidence, the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).   The *Daubert* Court identified several factors to consider when evaluating the validity of expert testimony, notably: the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community.   *Id.* at 593-94. In *Kumho Tire*, the Court extended this "gatekeeping" function to non-scientific expert testimony based on "technical" and "other specialized" knowledge.   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

The court should consider the *Daubert* factors – testability, peer review, error rate, and general acceptance within the field - where they are reasonable measures of the reliability of the expert testimony at issue.   *Id.* at 152.   The test of reliability is a flexible one, though, and the court may also consider other factors relevant to the facts of the case, including:

3099850_1.DOC

| Memorandum Brief in Support of Deere's | Laethem Equipment Company, et al. |
| Motion to Bar the Testimony | vs. |
| of Plaintiffs' Expert Witness | Deere & Co. |
| Thomas J. Schwartzenberger | Case No. 2:05CV10113 |

- Whether the expert's proposed testimony concerns matters that naturally and directly stem from independent research he conducted outside of the litigation, or whether his opinions have been formed expressly for the purpose of testifying;

- Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

- Whether the expert has adequately accounted for obvious alternative explanations;

- Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and

- Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); see *Equal Opportunity Employment Commission v. Ethan Allen, Inc.*, 259 F. Supp.2d 625, 633-34 (N.D. Ohio 2003).

In addition, the expert's testimony must assist the trier of fact, meaning that there must be a "fit" between the facts of the case and the testimony being offered. Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001). In short, "the testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case." Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *See Nelson*, 243 F.3d at 251.

3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

4

B.   **Mr. Schwartzenberger's opinion as to the value of the economic losses allegedly suffered by Plaintiffs fails to pass the *Daubert* standard.**

The CMD Letter dated November 30, 20070 alleges two categories of damages: 1) loss in economic earnings by Michael and Mark Laethem, and 2) loss in value of the net assets of LEC and LFSC.  (See Doc. 185, Tab A, DRL 035970).   As to the first damages category, Mr. Schwartzenberger arrived at a wage loss determination without current evidence of Michael and Mark Laethem's wages, extrapolating instead from their 1991 wages using a generic rate without analysis regarding the appropriateness of applying that rate to Michael and Mark's type of employment.  Regarding the second category of damages, Mr. Schwartzenberger determined the loss in value of the net assets of LEC and LFSC without performing any underlying valuation of the assets.

1.   **Mr. Schwartzenberger did not employ a reliable method for determining Michael and Mark Laethem's potential wage loss.**

Mr. Schwartzenberger determined Michael and Mark Laethem's potential wage loss without considering any current evidence of their wages.  Michael and Mark Laethem worked for LEC and LFSC until early 2003, yet Mr. Schwartzenberger determined their wage loss based solely on the income they received in 1991.  "To project the earnings of Michael and Mark from 2003 through age of retirement **I have projected their combined 1991 earnings** to 2003 and then through their assumed age of retirement **using a compound annual increase of 4%**." (See Doc. 185, Tab A, DRL 035970 (Emphasis added)).

Though he had current wage information available, Mr. Schwartzenberger did not use it. (See Doc. 56, Ex. 2 (024852)).  Instead, he extrapolated 1991 wages using a generic annual growth rate.  He did not perform any research to determine whether an annual growth rate of 4%

3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

5

accurately reflected the type of employment Mark and Michael Laethem had with LEC and LFSC. According to Mr. Schwartzenberger's analysis, as the chart prepared by him reveals, Mark and Michael Laethem received approximately $400,000 combined income in 2000. Doc. 56, Ex. 2 (024864). Their income decreased drastically in 2001 ($250,000-$300,000) and even farther in 2002 ($50,000-$100,000). *Id.* Yet, despite severe reductions in income in the two years immediately prior to 2003, Mr. Schwartzenberger assumed their combined income would rebound from $50,000-$100,000 in 2002 to more than $370,000 in 2003. (See Doc. 185, Tab A, DRL 035971.)

Rather than examine the actual earnings of Mark and Michael Laethem immediately prior to the alleged misconduct of Deere, Mr. Schwartzenberger applied a generic 4% annual increase to salaries received in 1991, ignoring the actual wages of the brothers immediately prior to their termination by Kathryn and whether 4% was appropriate for the field in which the Laethems worked.

    **2.**    **Mr. Schwartzenberger failed to follow peer-reviewed standards for valuation of a closely held corporation, or to properly determine the facts.**

IRS Revenue Ruling 59-60 outlines the general approach, method, and factors to consider in valuing a closely held corporation. The IRS Ruling acknowledges that a "sound valuation will be based upon all the relevant facts." IRS Revenue Ruling 59-60, § 3. Among the factors to consider in arriving at a business valuation are the financial condition and earning capacity of the business. *Id.* at § 4. For example, balance sheets should be obtained for the two or more years preceding the valuation; detailed profit-loss statements should be obtained for a representative period immediately prior to the valuation, preferably five or more years. *Id.*

3099850_1.DOC

| | |
|---|---|
| Memorandum Brief in Support of Deere's<br>Motion to Bar the Testimony<br>of Plaintiffs' Expert Witness<br>Thomas J. Schwartzenberger | Laethem Equipment Company, et al.<br>vs.<br>Deere & Co.<br>Case No. 2:05CV10113 |

Mr. Schwartzenberger described the asset-based valuation approach he employed as: "identifying all of the assets and liabilities, tangible and intangible, of the company and adjusting their book value to their current or market value." Doc. 56, Ex. 1 (009643). To perform this analysis, he explained that he would have to "determine the value of each of the assets offset by the value of the liabilities at the time the assets were misappropriated . . . [and then] an adjustment needs to be made for consideration of assets recovered due to the efforts of Mark and Michael [Laethem] offset by liabilities assumed." *Id.*

Mr. Schwartzenberger did not make any independent attempt to uncover the values of the assets, the liabilities, the recovered assets, or the assumed liabilities as required by professional standards. Instead, he blindly applied the **facts provided by Plaintiff Michael Laethem**. Mr. Schwartzenberger's entire "analysis" is merely a recitation of Plaintiff Michael Laethem's own unfounded assertions:

- The CMD Letter states that "[t]he original loss of value of the assets was computed by Michael under my direction." (Doc. 185, Tab A, 035971.) Plaintiff himself determined the loss of value of the assets, not the proposed expert.

- There is no reference to referring to any balance sheet of either company for consideration. Mr. Schwartzenberger did not consider, or even apparently attempt to obtain for consideration, the two or more years of balance sheets that should have been considered according to the IRS standard. Instead, he relied entirely upon Michael Laethem's account of lost value.

- "I reviewed this information, tested certain of the calculations and assumptions, discussed the amounts with Michael, and made adjustments to the asset values

3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

7

and incremental expenses where I deemed appropriate." (See Doc. 185, Tab A, DRL 035971.) This sentence in the CMD letter highlights the fundamental flaws in his letter. He did not verify that the calculations performed by Plaintiff Michael Laethem were all correct. Instead, he examined **some** of Michael's calculations. He did not perform the analysis himself as would be expected of a professional, he did not even confirm (much less document) the bases for his valuations and underlying assumptions, and he did not perform the necessary analysis and calculations himself. Instead, he acted as an uninformed rubber stamp for Plaintiff's own undocumented determination of damages.

- The narrative of the November 30, 2007 CMD Letter does not include a specific reference to the lost value of customer data. However, the underlying schedules show a $480,000 loss which is unsubstantiated. (See Doc. 185, Tab A, DRL 036000.) Yet again, Plaintiff Michael Laethem is himself, without any supporting documentation whatsoever, assigning a value to an asset. This "method" is especially egregious here where the alleged asset is an intangible. Assigning a value to an undocumented asset akin to goodwill without so much as a word regarding the basis for that value is not reflective of acceptable professional valuation standards.

It is improper for an expert to rely on "the self-serving statement of an interested party." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006) (economist excluded for this reason). In several cases, experts have been excluded where their testimony was simply their adoption of a party's view of the case. *See, e.g., In re Connolly North*

3099850_1.DOC

<table>
<tr><td>Memorandum Brief in Support of Deere's<br>Motion to Bar the Testimony<br>of Plaintiffs' Expert Witness<br>Thomas J. Schwartzenberger</td><td>Laethem Equipment Company, et al.<br>vs.<br>Deere & Co.<br>Case No. 2:05CV10113</td></tr>
</table>

8

*America, LLC*, 398 B.R. 564, 476 (E.D. Mich. 2008) determining proposed expert's testimony to be inadmissible because it was based "upon several assumed facts given to him" by a bankruptcy trustee and the trustee's counsel). "Experts are not to be 'hired guns' employed merely to support a party's position." *Lantec, Inc. v. Novell, Inc.*, No. 2:95-CV-97-51, 2001 U.S. Dist. LEXIS 24816, at *22-23, 27-28 (D. Utah Feb. 3, 2001); *aff'd*, 306 F.3d 1003 (10th Cir. 2002); *Marting v. Crawford & Co.*, No. 00-C-7132, 2004 WL 305724, 15 *3 (N.D. Ill. Jan. 9, 2004) (expert testimony that "merely parrots" a party's position in the action without engaging in any independent analysis is inadmissible); *SEC v. Lipson*, 46 F.Supp. 2d 758, 763-64 (N.D. Ill. 1999); *Mercedes-Benz U.S.A. LLC v. Coast Automotive Group, Ltd.*, 2006 WL 2830962, at *12 (D. N.J., Sept. 29, 2006).

Mr. Schwartzenberger's entire loss of value of the assets analysis, outlined above, is actually a narrative of Plaintiff's own analysis, completely void of any independent thought or supporting documentation. The "expert" adds nothing more than simple arithmetic, which can properly be performed by the jury. When confronted with the fact that the values asserted in his letter did not have documented independent support, Mr. Schwartzenberger explained that the values "were based upon **reasonable estimates** of values, on a line item by line item basis, **by the owners of LEC and LFSC,** the people who were involved in the day to day operation of the businesses." Doc. 56, Ex. 2. (024859). He admits that the values he adopted for the assets are determined solely by Plaintiffs Mark and Michael Laethem and have no independent basis.

The November 30, 2007 CMD Letter represents multiple material changes from the December 1, 2005 CMD Letter. The Comparative Chart (Doc. 202, Tab B; also Doc. 202-3) illustrates the many changes Mr. Schwartzenberger made in his November 30, 2007 CMD

3099850_1.DOC

| Memorandum Brief in Support of Deere's Motion to Bar the Testimony of Plaintiffs' Expert Witness Thomas J. Schwartzenberger | Laethem Equipment Company, et al. vs. Deere & Co. Case No. 2:05CV10113 |

9

Letters, without explanation. In addition, his entire theory and approach changed from one of comparing the Asset Sales Proceed to the Entity Values of the Plaintiffs Businesses, to one comparing Asset Sale Values to hypothetical asset values manufactured by Michael Laethem.

The CMD Letters do not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), which require an expert report to contain "a complete statement of all opinions" of the expert, and to be "prepared and signed by the witness." The CMD Letters are actually the opinions of Michael Laethem, who did not sign the letters and is not properly endorsed as an expert witness. The CMD Letters fail to meet the reliability standard of *Daubert* and progeny. They do not follow a recognizable method and they do not establish any validated facts that could be "fit" to the proffered testimony. Thus, his opinions should be excluded.

      **3.**      **Mr. Schwartzenberger's testimony confirms that his opinions are merely repetitions of Michael Laethem's opinions, that he failed to validate or verify Michael Laethem's opinions, that his opinions fail to conform with applicable standards for business valuation, and that his opinions were formed expressly for the purpose of litigation.**

Under Fed. R. Evid. 702, the trial court has an obligation to ensure that any expert testimony admitted at trial is reliable. Mr. Schwartzenberger's opinions are unreliable, constituting unjustifiable extrapolation from an accepted premise to an unfounded conclusion, and an absolute failure to account for obvious alternative explanations, in conflict with the standards set forth in *Daubert* and its progeny. Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *see Ethan Allen,* 259 F.Supp.2d at 633-34. In *Lippe v. Bairnco Corp.,* 288 B.R. 678, 697-98 (S.D.N.Y. 2003), plaintiff's proposed valuation expert was deemed unreliable for relying upon information provided by plaintiff's counsel without performing independent analysis to verify that information. Mr. Schwartzenberger similarly relied uncritically upon

3099850_1.DOC

Memorandum Brief in Support of Deere's                         Laethem Equipment Company, et al.
Motion to Bar the Testimony                                            vs.
of Plaintiffs' Expert Witness                                       Deere & Co.
Thomas J. Schwartzenberger                              Case No. 2:05CV10113

10

information provided by Plaintiff Michael Laethem without any attempt to determine whether that information was valid, and without attempting to determine if the information conformed with the fundamental accounting principles used by Mr. Schwartzenberger in his non-litigation engagements.

In his October, 2004 deposition, Mr. Schwartzenberger repeatedly deferred to Michael Laethem as the source of underlying valuation information and resulting opinions, relying entirely upon Michael rather than forming his own independent opinions. (See Doc. 56, Ex. 3, Deposition of Thomas J. Schwartzenberger dated October 8, 2004, p.109:22-110:15 (LEC-DE 08667)[2]; p.115:14-22 (08669); p.117:13-21 (08669); p.123:8-124:1 (08671); p.127:14-128:1 (08672); p.128:11-15 (08672); p.129:9-20 (08672); p.131:5-8 (08673); p. 132:20-23 (08673); p.145:1-8 (08676); p.150:8-22 (08677); p.152:10-20 (08678); p.154:4-16 (08678); p.159:21-25 (08680); p.163:2-21 (08681); p.166:13-16 (08681); p.166:19-24 (08681); p.169:20-170:10 (08682); p.171:13-17 (08683); p.173:8-12 (08683); p.177:7-16 (08684); p.179:1-5 (08685); p.184:19-25 (08686).

Furthermore, the purported expert did not perform any validating or verifying procedures to confirm the validity of Michael Laethem's opinions, including his opinions on the value of the assets, or even whether the assets actually existed. Doc. 56, Ex. 3, p.117:24-118:20 (08669); p.120:2-12 (08670); p.123:8-124:1 (08671); p.127:19-128:1 (08672); p.133:13-134:5 (08673); p.138:20-139:8 (08674-75); p.142:8-13 (08675); p.154:4-16 (08678); p.155:2-9 (08679); p.155:24-156:10 (08679); p.159:8-17 (08680); p.160:1-3 (08680); p.162:22-163:4 (08680-81); p.163:5-21 (08681); p.164:25-165:5 (08681); p.166:19-167:8 (08681-82); p.169:20-170:10

---

[2] Exhibit 3 serial number references refer to "LEC-DE" documents.
3099850_1.DOC

| Memorandum Brief in Support of Deere's Motion to Bar the Testimony of Plaintiffs' Expert Witness Thomas J. Schwartzenberger | Laethem Equipment Company, et al. vs. Deere & Co. Case No. 2:05CV10113 |

11

(08682); p.170:16-20 (08682); p.171:18-172:7 (08683); p.172:24-173:1 (08683); p.174:10-20 (08683); p.178:8-179:5 (08684-85); p.179:8-181:13 (08685); p.184:19-25.

Mr. Schwartzenberger's March 2006 deposition reinforces his blind reliance on opinions provided by Michael Laethem, without validation or verification. Doc. 56, Ex. 4, Deposition of Thomas J. Schwartzenberger dated March 24, 2006, p.67:14-25; p.77:3-8; p.79:11-19; p.80:21-81:10; p.88:3-5; p.89:24-90:25; p.91:10-16; p.93:14-25; p.95:7-19; p.96:13-22; p.100:6-25; p.103:21-104:3; p.113:20-23; p.115:5-11; p.116:1-21; p.117:2-12; p.117:13-21; p.181:17-22; p.183:6-15; p.186:7-9; p.207:6-17; p.208:8-17. **Mr. Schwartzenberger also admitted that he has no experience valuing Farm Equipment Dealerships, and he has no experience with Deere Dealerships and their unique accounting system.  Doc. 56, Ex. 4, p.29:10-16; p.205:20-22; p.206:17-207:25.**

Mr. Schwartzenberger's January, 2008 deposition simply confirmed his blind reliance on Michael Laethem's opinions without validation or verification.  (See Doc. 223, Tab D, p. 50:2-19; 55:20-56:7; 69:10-12; 94:6-7; 94:19-24; 143:12-20; 143:22-143:1; 144:9-14; 145:15-22; 152:14-21; 153:11-14; 155:3-6; 159:10-18; 160:18-23.)[3]

As his deposition testimony illustrates time and again, Mr. Schwartzenberger relied exclusively upon Michael Laethem's opinions.  The attachments to the December 2005 CMD Letter were supplied by Michael Laethem, both the substance and the format, and Mr. Schwartzenberger accepted them at face value without alteration.

> Q.    Turn with me to Exhibit 1, your December 1, 2005 report, page 9649 is the serial number.  Laethem Equipment Company balance sheet.  And I think that goes on to 9650.  And I would like you to look at 9651 and 9652 looks like the same thing

---

[3] Mr. Schwartzenberger's January 2008 deposition transcript was filed under seal.
3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

12

for Laethem Farm Service Company.  When you are done looking at them, my question to you is going to be:  How did you come up with those?

A.    On the left-hand column we have the book value, which came from the financial statements that I was provided approximately January 3.

Q.    Let me back up.  I take it you actually put these pages together yourself as opposed to receiving them from somebody else?

A.    **These I received from Michael.**

Q.    He put these together?

A .    Correct.

Q.    **Were the numbers already on them when you received them?**

A.    **They would have been.**

Q.    I notice there is a column, adjusted value, and then going down right beside that sort of a middle column is a list of letters.  **Were those already on there when you received it?**

A.    **I believe they were.**

Q.    And those letters are intended to refer, are they not, to the other lettered exhibits in your report, A through W?

A.    Yes.

Q.    **And were the sheets A through W already with these when Michael gave them to you?**

A.    **They would have been.**

Q.    **So these sheets were not made up on your or Conway Mackenzie Machinery, they were made up on Michael's machinery?**

A.    **Correct.**

Doc. 56, Ex. 4, p.90:6-91:16 (emphasis added).  Mr. Schwartzenberger's "report" does nothing

more than carry forward the numbers.  He allegedly tested certain calculations and assumptions

provided by Michael Laethem, however, he did not document any testing.

3099850_1.DOC

| Memorandum Brief in Support of Deere's | Laethem Equipment Company, et al. |
|---|---|
| Motion to Bar the Testimony | vs. |
| of Plaintiffs' Expert Witness | Deere & Co. |
| Thomas J. Schwartzenberger | Case No. 2:05CV10113 |

13

Thus, in terms of *Daubert* factors, Mr. Schwartzenberger has unjustifiably extrapolated from an accepted premise – of asset-based valuation – to an unfounded conclusion devoid of analysis or support. Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *see Ethan Allen,* 259 F.Supp.2d at 633-34. He has also failed to adequately account for obvious alternative explanations as to the value of any of the assets he was ostensibly retained to evaluate. Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *see Ethan Allen,* 259 F.Supp.2d at 633-34. His opinion is not even an expert opinion, but rather a repetition of the opinion of a party. Even if the opinion of Michael Laethem, as a party and former CPA, would be admissible, the "opinion" of the additional expert is not.

In addition to failing to comply generally with the *Daubert* standards for admission of expert evidence, Mr. Schwartzenberger's opinions fail to conform with the standards of the field. Mr. Schwartzenberger admitted that he does not have specialized knowledge of Deere dealer accounting.

As Michael Laethem and Kathy Laethem wrote: "our financials are not GAAP, but prepared using a combination of tax accounting and John Deere's management accounting system." It is admitted that "the [LEC/LFSC] accounting has not been independently reviewed in 15 years [as of 2002]." LEC 5092, Part of Doc. 216-4, Harmony 2, 8/20/01, Dep. Ex. 105 (attached **Tab** A), 4/26/06 Michael Laethem Deposition, 175:24-176:2, (attached **Tab B**). LEC/LFSC did not follow Generally Accepted Accounting Principles [GAAP], but rather the Deere Dealer Accounting Standards – the only accounting principles used by LEC/LFSC – and the very same Deere Dealer Accounting system with which Mr. Schwartzenberger admits he has

---

3099850_1.DOC

| | |
|---|---|
| Memorandum Brief in Support of Deere's | Laethem Equipment Company, et al. |
| Motion to Bar the Testimony | vs. |
| of Plaintiffs' Expert Witness | Deere & Co. |
| Thomas J. Schwartzenberger | Case No. 2:05CV10113 |

no experience and did not apply.  See Doc. 56, p. 29:10-16; p. 205:20-22; p. 206:17-207:25. (Also attached **Tab C**.)

The Deere Accounting System required special training.  See Doc. 96-7, Michael Laethem testimony.  Mr. Schwartzenberger does not have that training.  Since he had no knowledge of Deere dealer accounting standards, Mr. Schwartzenberger could not have applied those principles, even though they are the only principles applied to formulate the LEC/LFSC records which allegedly form the bases of his opinions.

In addition to failing to follow Deere dealer accounting standards, Mr. Schwartzenberger's adoption of Michael Laethem's assertions is not in line with generally accepted certified public accounting standards.  Doc. 56, Ex. 4, p.11:23-23:3.  Reports of certified public accountants fall within one of three quality categories: Audit, Review, or Compilation.  Doc. 56, Ex. 4, p.14:3-7.  A compilation is the lowest level of quality.  Doc. 56, Ex. 4, p.17:18-21.  Even though the data and analysis supplied by Michael Laethem and adopted by Mr. Schwartzenberger did not meet even the minimal quality standards of a Compilation, Mr. Schwartzenberger did not place any less reliance on that information.  Doc. 56, Ex. 4, p.68:6-17. Relying on material that does not even meet the requirements for a compilation without validating or verifying any of the data, does not constitute acting as carefully as the expert would act in his regular professional work outside his paid litigation consulting, as required for reliable, admissible expert testimony.  Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *see Ethan Allen,* 259 F.Supp.2d at 633-34.

Mr. Schwartzenberger admitted that his opinions were formed without regard to the applicable accounting standards because he was acting "in a litigation context and only for

3099850_1.DOC

| Memorandum Brief in Support of Deere's | Laethem Equipment Company, et al. |
| Motion to Bar the Testimony | vs. |
| of Plaintiffs' Expert Witness | Deere & Co. |
| Thomas J. Schwartzenberger | Case No. 2:05CV10113 |

15

purposes of litigation." Doc. 56, Ex. 4, p.204:3-19. Thus, his proposed testimony does not concern matters that naturally and directly stem from independent research conducted outside litigation, but instead his opinions have been formed expressly for the purpose of testifying, which flies in the face of the reliability test for expert witnesses. Advisory Committee Note to Fed. R. Evid. 702 (2000 Amendments); *see Ethan Allen,* 259 F.Supp.2d at 633-34.

Beyond questionable decisions, like his decision not to include any value reduction for known environmental contamination because the extent of the contamination could not be determined without a $40,000 study (Doc. 56, Ex. 3, p.192:13-193:21; Doc. 56, Ex. 4, p.59:2-64:9), The CMD Letter demonstrates undeniable disregard of reliable principles, and a failure to reliably apply the only principles – Deere Dealer Accounting – used to compile the LEC/LFSC accounting Records. It is peppered with references that clearly show that the information he relied upon came from Plaintiff Michael Laethem, that his "calculations" and analysis were merely recitations of Michael Laethem's calculations and analysis, and that he incorporated all of Michael Laethem's opinions without verification or validation. Thus, Mr. Schwartzenberger's opinions, which fail to comply with standards in the field and do not constitute reliable independent opinions, should be excluded.

3099850_1.DOC

| Memorandum Brief in Support of Deere's Motion to Bar the Testimony of Plaintiffs' Expert Witness Thomas J. Schwartzenberger | Laethem Equipment Company, et al. vs. Deere & Co. Case No. 2:05CV10113 |

16

## CONCLUSION

For the reasons set for above, Deere requests the entry of an order barring the proposed testimony of Plaintiff's expert witness, Thomas J. Schwartzenberger, pursuant to Federal Rule of Evidence 104, 402, 403, 702 and 703, together with such other relief as may be appropriate.

Varnum LLP
Attorneys for Defendant Deere

Dated: December 8, 2009          By: _____ */s John W. Allen* _____
                                          John W. Allen (P10120)
                                          Eric J. Guerin (P46142)
                                          251 North Rose Street, 4th Floor
                                          Kalamazoo, MI 49007-3823
                                          Phone: (269) 382-2300
                                          Fax: (269) 382-2382
                                          E-mail: jwallen@varnumlaw.com
                                          E-mail: ejguerin@varnumlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON DECEMBER 8, 2009, I CAUSED TO BE ELECTRONICALLY FILED THE FOREGOING DOCUMENT(S) **DEERE'S MOTION TO BAR THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS THOMAS J. SCHWARTZENBERGER AND MEMORANDUM OF LAW IN SUPPORT** WITH THE CLERK OF THE COURT USING THE ECF SYSTEM WHICH WILL SEND NOTIFICATION OF SUCH FILING TO THE FOLLOWING:

Francis J. O'Donnell at fodonnell@honigman.com.
Ann L. Andrews at AAndrews@honigman.com.
Norman C. Ankers at nankers@honigman.com.

Dated: December 8, 2009          By: _____ */s/ John W. Allen* _____
                                          John W. Allen (P10120)

3099850_1.DOC

Memorandum Brief in Support of Deere's
Motion to Bar the Testimony
of Plaintiffs' Expert Witness
Thomas J. Schwartzenberger

Laethem Equipment Company, et al.
vs.
Deere & Co.
Case No. 2:05CV10113

17